UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROCA LABS, INC., et al.,<br><br>Defendants. | Case No: 8:15-cv-02231-MSS-TBM |

## BRIEF OF *AMICI CURIAE*

*Amici* Yelp Inc., AVVO, Inc., and Mediolex, Ltd. hereby submit their brief as *amicus curiae* relative to Plaintiff's Motion for Noticed Temporary Restraining Order and Memorandum in Support (Doc. # 6). Hearing on Plaintiff's motion is scheduled for October 22, 2015.

In its Complaint (Doc. #1) and motion, Plaintiff Federal Trade Commission ("FTC") alleges that, collectively, Defendants have engaged in a series of unfair and deceptive practices in violation of Sections 5 and 12 of the Federal Trade Commission Act ("FTC Act", 15 U.S.C. §§ 45(a) and 52. Parts III(C)(2) (pp. 11-15) and IV(B) (pp. 22-28) of the motion specifically address the use of a "gag clause." This gag clause purports to prohibit Roca Labs' customers from disclosing any non-flattering information about the company or its products. The FTC has taken the position that this constitutes an unfair practice in violation of Section 5. Defendants have utilized this contractual clause to pursue claims and lodge threats against former customers, a consumer review website, and even against parties who testified in court proceedings against Roca Labs. (*See* Doc. # 15 in *Roca Labs, Inc. v. Opinion Corp.*, Case No. 8:14-cv-02096, Middle District of Florida (the "Opinion Case"), Opinion Corp.'s Motion for an Emergency Temporary Restraining Order and for an Order to Show Cause as to Why Roca Labs Should Not be Sanctioned for Witness Intimidation, attached as **Exhibit 1**; *see also* Doc. # 19, Opinion Corp.'s

- 1 -
Brief of *Amici Curiae*

Motion for a Temporary Restraining Order in Opinion Case, attached as **Exhibit 2**.) Based upon the concessions in Defendants' opposition (Doc. # 18), this appears to be the primary issue remaining to be decided; Roca Labs claims that there is no public policy interest in the Court finding that such consumer gag clauses are unfair practices. *Amici* take the position that such clauses are unfair trade practices and should be **unenforceable**. However, even if the Court is not prepared to make such a ruling, it should at the least be fully informed as to how Roca Labs has used, or tried to use, its gag clause, and proclaim that even if gag clauses are permissible, Roca Labs has demonstrated an inability to maintain one without misusing it.

The President of the Better Business Bureau of West Michigan was quoted as saying, "[t]here's a number of businesses around the country that are starting to put this language in their agreements; where they say 'if you post anything detrimental there's a cost to be paid…' Whether it's legal or not is a different issue." Martha Neil, *Customer zapped with $3.5K charge for critique of Web retailer; its terms of use ban 'disparagement'*, ABA JOURNAL (Nov. 20, 2013).

Until Roca Labs came under the public spotlight, the most infamous gag clauses were those perpetrated by a company known as "Medical Justice."[1] Medical Justice was a company that purported to help medical doctors avoid negative reviews, but it was a little more creative than Roca Labs. Medical Justice's plan was that patients would agree to assign the copyright to any reviews to the doctor. *Id.* at 302. The idea was to allow the doctor to use copyright law to suppress the reviews. *Id.* However, consumers put up resistance to Medical Justice, and at least one judge openly questioned the enforceability of the contract. *See, e.g.*, *Lee v. Makhnevich*, 2013 U.S. Dist. LEXIS 43760 (S.D.N.Y. Mar. 27, 2013). "In another case, The U.S. Department of Health & Human Service's Office of Civil Rights required a doctor to stop using Medical

---

[1] See Goldman, Eric, The Regulation of Reputational Information (2010). THE NEXT DIGITAL DECADE: ESSAYS ON THE FUTURE OF THE INTERNET, Berin Szoka, Adam Marcus, eds., TechFreedom, Washington, D.C., 2010; Santa Clara Univ. Legal Studies Research Paper No. 1754628. Available at SSRN: http://ssrn.com/abstract=1754628

Justice's anti-review form." Eric Goldman, *How Doctors Should Respond to Negative Online Reviews*, FORBES (Nov. 21, 2014).[2]  Under scrutiny, Medical Justice has ceased this practice.  *See* Timothy B. Lee, *Patient sues dentist over gag order, gets Medical Justice to backtrack*, ARS TECHNICA (Nov. 30, 2011)[3] (quoting Medical Justice CEO Jeffrey Segal as stating "[w]hile we believe these agreements are honest, ethical, and legal, we are going to use this situation as an opportunity to retire these written agreements used since 2007").

Gag clauses violate public policy on several levels.  Our profound national commitment to wide-open and robust debate abhors restraints on speech without justification.  One might argue that private contracts are outside the First Amendment, but there is still a strong policy of protecting consumers and the marketplace of ideas by courts declining to grace such contracts with an imprimatur of approval.  The FTC's Policy Statement on Unfairness provides us with significant guidance on this issue.  Letter from the Fed. Trade Comm'n to Hon. Wendell H. Ford & Hon. John C. Danford, S. Comm. On Commerce, Sci., & Transp. (Dec. 17, 1980), reprinted in In re Int'l Harvester Co., 104 F.T.C. 949 app. at 1070-76 (1984).[4]  While all gag clauses are problematic, Roca's gag clause chills speech and diminishes the ability of its customers to make informed decisions about a medical and nutritional product – this is particularly egregious, and the strong policy considerations against enforceability should be resolved in favor of consumers maintaining the utmost freedom to share their experiences with other consumers.

---

[2] Found at http://www.forbes.com/sites/ericgoldman/2013/11/21/how-doctors-should-respond-to-negative-online-reviews/ (Citing to:  Health Information Privacy: Private Practice Ceases Conditioning of Compliance with the Privacy Rule, U.S. Dep't. of Health & Human Services, Office of Civil Rights, Health Information Privacy: Private Practice Ceases Conditioning of Compliance with the Privacy Rule,
http://www.hhs.gov/ocr/privacy/hipaa/enforcement/examples/allcases.html#case29     (last visited Oct. 16, 2015).
[3] Found at http://arstechnica.com/tech-policy/2011/11/patient-sues-dentist-over-gag-order-causing-medical-justice-to-drop-it/ (last visited Oct. 16, 2015).
[4] Found at http://www.ftc.gov/bcp/policystmt/ad-unfair.htm (last visited Oct. 16, 2015).

RANDAZZA | LEGAL GROUP

Despite the rise of companies trying to use gag clauses as a proxy for good customer service, this appears to be the first case where the Federal Trade Commission has sought to preclude the use of such a one-sided nondisclosure agreement. The Commission should be lauded for setting this example, which should provide additional support to state agencies seeking to protect their citizens as well. Many states, including Florida, have statutes that track the broad language of the FTC Act; in fact, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") requires that "in construing" FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2001." Fla. Stat. § 501.204(2). Thus, the decision here may have far-reaching application in Federal and state courts throughout the country.

Injunctive relief enjoining the gag clause is in the public interest. Consumer gag clauses are, in themselves, unconscionable. If the free market is to function properly, it must also have a free, uninhibited expression of ideas. Consumer markets cannot function properly if prospective customers see only positive reviews, even though actual customers may be far more dissatisfied than satisfied. Gag clauses violate our cherished constitutional ideals, state statutes, and case law in direct contravention of established public policy. Indeed,

> [T]hese clauses squelch all forms of negative commentary, including truthful and/or opinion speech . . . . These clauses prohibit critiques, regardless of veracity . . . [and] other consumers' speech will be discouraged over concerns about aggressive business tactics in enforcing these gag contracts against negative reviews and ratings and fear of litigation based in defamation for expressing one's views. Overall, consumer speech will be lessened and available information is reduced about product and service quality and harms informed decision-making by other customers. Customers will also be deceived because these clauses will skew ratings and reviews towards positive feedback with little or no criticism available for consumer consideration . . . . [N]ot only are consumers harmed, but other competitors will also be unfairly disadvantaged on crowdsourced review sites. Many businesses invite consumer dialogue, positive and negative, as a way to learn about the customer experience and to determine areas for needed improvement.

> Merchants and professionals who utilize nondisparagment clauses falsely inflate their rankings and reviews over businesses seeking candid consumer feedback. This approach provides an unfair advantage for businesses trying to squelch consumer speech.

Lucille M. Ponte, *Protecting Brand Image or Gaming the System?  Consumer 'Gag' Contracts in an Age of Crowdsourced Ratings and Reviews*, 7 WM. & MARY BUS. L. REV ___ (2015, Forthcoming) at 16-17 (Mar. 16, 2015).

**1.0     Waivers of First Amendment Rights Should be Narrowly Construed**

Postings intended to aid consumers in choosing among service providers, are "directly connected to an issue of public concern." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004). Consumer protection and review sites are of the utmost constitutional importance. *See, e.g.*, *Neumont Univ., LLC v. Little Bizzy, LLC*, 2014 U.S. Dist. LEXIS 69168 (D. Nev. May 20, 2014) ("Critical speech lies at the heart of First Amendment protections"); *Carver v. Bonds*, 135 Cal. App. 4th 328, 343 (2005) ("[T]he statements in question here were in the nature of consumer protection information, and as such involved a matter of public concern under the First Amendment"); *People v. Network Assocs.*, 195 Misc. 2d 384, 385, 758 N.Y.S.2d 466, 470 (N.Y. Sup. Ct. 2003); *Baker v. Burlington Coat Factory Warehouse*, 175 Misc.2d 951, 956 (Yonkers City Ct. 1998) (unfairly chilling consumers' willingness to engage in a statutory right may be a deceptive trade practice); *Garrison Contractors, Inc. v. Liberty Mutual Ins. Co.*, 927 S.W.2d 296, 300 (Tex. Ct. App. 1996) (an agreement that confers illusory benefits is unconscionable); *New York v. Network Associates, Inc.*, 758 N.Y.S.2d 466, 470 (Sup. Ct. 2003); Carol Bast, *At What Price Silence: Are Confidentiality Agreements Enforceable*, 25 WM. MITCHELL L. REV. 627 (1999).

A gag clause acts as a prior restraint; nothing in the provision prevents Defendants from seeking to restrain a known dissatisfied customer from posting a negative review before it is written.  In *Organization for a Better Austin v. Keefe* the Court proclaimed there is a "heavy presumption" against constitutional validity of any prior restraint.  402 U.S. 415, 419 (1971). Members of OBA distributed pamphlets describing the racist activities of a real estate agent

attempting to prevent African Americans from moving into the neighborhood. *Id.* Just as is the case with online consumer criticism, "[n]o prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices . . . warrants use of the injunctive power of a court." *Id.* at 420. The Supreme Court has *roundly rejected* prior restraints in a multitude of cases. *See, e.g., Kinney v. Barnes*, 57 Tex. Sup. J. 1428 at n.7, 2014 Tex. LEXIS 764 (Tex. 2014) (citing SOBCHAK, W., THE BIG LEBOWSKI, 1998); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (holding that prior restraints are "the most serious and least tolerable infringement on First Amendment rights"). Thus, even where Defendants might otherwise be permitted injunctive relief, it is intolerable to abide enforcement of a one-sided provision that purports to restrict First Amendment rights to share consumer experiences. While the gag clauses themselves might not be *per se* prior restraints, they offend the First Amendment in the same manner – they stifle speech, depriving the marketplace of ideas of the benefit of the expression to the detriment of writer and reader alike.

It is generally recognized that judicial enforcement of a nondisclosure agreement conflicts with a citizen's right to free speech. *See, e.g., National Federation of Federal Employees v. United States*, 695 F. Supp. 1196, 1199 (D.D.C. 1988) (upholding validity of a nondisclosure agreement against free speech rights of federal employees in matters of classified information). Generally, "courts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (U.S. 1938) (internal quotations omitted). "Florida courts deem a waiver of a constitutional right voluntary if the totality of the circumstances shows 'that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.'" *Petersen v. Fla. Bar*, 720 F. Supp. 2d 1351, 1360 (M.D. Fla. 2010) (quoting *Sliney v. State*, 699 So. 2d 662, 668 (Fla. 1997)).

Here, the waiver of negative reviews is not the product of free and deliberate choice. Consumers, especially those deceived by advertising, alter-ego websites, and puffed-up scientific claims, do not know when they waive their right to criticize that they will have something to be critical of. Consumers enter the transaction with hope; when there have been misrepresentations and deceptions, by omission or by affirmative statements, they cannot be said to have voluntarily waived their rights. They should not, then, face monetary and injunctive claims arising from an invalid waiver; this argument is even more compelling when such claims are brought against a neutral platform that enables consumers to exercise their right to free speech. Supporting a constitutional right should never be deemed tortious interference with an unconscionable consumer gag clause.

## 2.0 State Law Precludes the Use of Gag Clauses

In 2014, California enacted Cal. Civil Code § 1670.8, a bill expressly prohibiting sales agreements that prohibit the right of a consumer to complain, stating that they "may not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services." Cal. Civ. Code § 1670.8(a)(1). This was enacted upon the finding that such clauses are often "shockingly used by some businesses to intimidate consumers from expressing their reasonable opinions about the business' potentially inadequate goods or services." (Bill Analysis CA AB 2365 concurrence in Senate Amendments, Aug. 11, 2014, John A. Perez at p. 2). Further, it was found that "the use of a non-disparagement clause in a consumer adhesion contract likely violates fundamental principles of contract law". *Id.* at pp. 4-5. This law was passed on the heels of a Utah case involving a company's unsuccessful attempted enforcement of a non-disparagement clause. *See Palmer v. Kleargear.com*, Case No. 1:13-cv-00175 (D. Utah July 1, 2014). After referring the plaintiffs to collections for refusal to pay a penalty for making negative comments about it, Kleargear was found liable for, *inter alia*, violation of the federal Fair Credit Reporting Act. *Id.*

Sellers, like Roca Labs, and online review websites address consumer transactions nationwide. There is no question that, under California law, Defendants cannot enforce their gag clause or even proffer it when selling to California residents. New Yorkers similarly may rely upon the comfort that their case law provides them. *See, e.g., Network Assocs.*, 758 N.Y.S.2d at 470. Is this Court prepared to state that public policy in Florida favors less protection than is provided to consumers in California and New York?

There is no reason why Florida residents should be treated as lower-class citizens. Since many review sites permit anonymous reviews,[5] those sites cannot be charged with knowing whether the reviewer is protected by California law, even if they post from a Florida IP address. "While freedom of contract might exist, there is no freedom to use contracts to undermine important societal values." Alan E. Garfield, *Promises of Silence: Contract Law and Freedom of Speech*, 83 CORNELL L. REV. 261, 297-98 (1998). Thus, public policy, as evidenced by state law, would appear to preclude the use and enforcement of Defendants' gag clauses.

### 3.0 Congressional Action Demonstrates Public Interest

Following the enactment of the California statute, two bills were introduced in Congress to explicitly expand this theory nationwide: H.R. 2110 and S. 2044. Both bills prohibit the creation or enforcement of a contract that prohibits a consumer from reviewing a product or service. The Senate version of the bill specifically treats a violation as violating Section 5 of the FTC Act. *See* S. 2044 (d)(1), 114th Congress 2015-2016. Both bills were referred to committees without further action.

One of the Senate bill's cosponsors, Sen. Brian Schatz (HI), stated:

reviews on where to shop, eat, or stay on websites like Yelp or TripAdvisor help guide where consumer do business every day. Honest reviews from real people have made these sites successful and are the reason why so many of us

---

[5] "Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357, 115 S. Ct. 1511, 1524 (U.S. 1995)

> have come to rely on them. Every consumer has the right to share their experiences and opinions of any business. Our bill would protect that right and ensure consumers are free to share their views, free from intimidation.

Senator Schatz, Press Release introducing S. 2044 Sept. 17 2015. Just days before the FTC initiated this action, the sponsor of the House bill stated, "[t]he mere threat of monetary penalties or fines for writing honest reviews would chill the free exchange of opinions we expect to find on the internet." Rep. Darrell Issa (CA), Sept. 17, 2015. That Congress has failed to move the bill is of little moment. "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S. Ct. 2668, 2678 (U.S. 1990). Should this Court agree with the FTC that Section 5 already precludes such gag clauses, further Congressional action would be unnecessary. The mere fact of introduction, however, demonstrates that such clauses are not in the public interest.

### 4.0 Case Law Demonstrates Public Interest

Limitations of gag clauses are found throughout case law nationwide. In *Network Assocs.*, 758 N.Y.S.2d at 467, the respondent was enjoined from enforcing an unconscionable provision in its contracts prohibiting the publication of reviews without prior approval.

Reviews of health related products and services are of particular concern. "There may be no more serious or critical issue extant today than the health of human beings. Given the frailty of human existence, any controversy on the subject must be afforded wide open discussion and criticism so that individuals may make well educated health care choices. This is especially so in cases where serious disease is involved or death is imminent." *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1206 (N.D. Ill. 1984); *see also Wong v. Jing,* 189 Cal. App. 4th 1354, 1367, 117 Cal. Rptr. 3d 747, 760 (Cal. App. 6th Dist. 2010) (discussions of specific products in health care treatments are issues of public interest.)

The intersection, then, of the public policies against limiting consumer reviews in general and stifling discussion of healthcare matters, demonstrates that gag clauses, especially in Defendants' industry, are against the public interest.

**5.0     There is No Contravening Interest**

In their opposition, Defendants cite to a study regarding incentives to manufacture and manipulate reviews (Doc. # 18 at p. 7 n.5) without attaching the study.  *Amici* respectfully disagree with the Defendants' characterization of this study.  In contrast to the position that Defendants take, the authors of the study wrote (in studying hotel reviews):

> Our empirical results show that the hotels are essentially able to self-police so that while they engage in some manipulation, the amount is not big enough to overwhelm the informational value of the site.

Dina Mayzlin, Yaniv Dover, and Judith A. Chevalier, *Promotional Reviews: An Empirical Investigation of Online Review Manipulation*, SOCIAL SCIENCE RESEARCH NETWORK (Aug. 13, 2012), attached as **Exhibit 3**, at p. 30.

In Defendants' estimation, then, the only non-contractually infringing negative reviews would be from their competition, which would be inherently unreliable.  Though ridding the marketplace of ideas of truthful negative reviews would help Defendants hunt down planted negative reviews, this effort to whitewash the discussion pales in comparison to the public's interest in hearing the truthful negative opinions.  Even the article cited by Defendants would agree that planted reviews are not significant enough to "overwhelm the informational value" of the truthful reviews, and thus there is no justification for enforcing the gag clause.

No one is challenging Defendants' right to sue for defamation based on an untruthful review.  But in an effort to protect themselves from legitimate criticism, Defendants have shut down the marketplace of ideas by using fear and intimidation.  The Center for Democracy and Technology, in discussing a complaint it filed with the FTC against Medical Justice, aptly explained why activities like Roca's are intolerable:

> Online reputation management is going to be an increasingly important issue for doctors, companies, and even individuals in the coming years. But managing your public image should not be achieved through trickery and abusive behavior. Regulators need to stop bad actors from gaming the robust reputation-based ecosystem that we have come to rely on everyday. We will all be much worse off if review sites become polluted by shill endorsements and deprived of honest criticism.

In a similar case, the Southern District of New York made a similar proclamation that such agreements were intolerable. Specifically:

> Obtaining the promise by plaintiff Robert Allen Lee in the Mutual Agreement to Maintain Privacy (the "Agreement") not to publish criticism of defendants, the Agreement's purported assignment of copyrights, and the assertion of copyright claims by defendants for the express purpose of preventing the dissemination of Lee's Commentary, constitute breaches of fiduciary duty and violations of dental ethics and are subject to the equitable defenses of unclean hands . . . .

*Lee v. Makhnevich*, Case 1:11-cv-08665-PAC (S.D.N.Y. Feb. 27, 2015).

If this Court allows Roca's behavior to continue, other similarly unscrupulous companies will follow its lead. This Honorable Court has an opportunity to protect the public – not only Roca Labs' victims, but victims of such schemes nationwide. This Honorable Court should not shirk that responsibility on the basis of Roca Labs' misleading position that there is no public interest in doing so.

### 6.0  Even if Consumer Gag Clauses were otherwise Permissible, Roca Labs has Abused the Legal Process

Even assuming, *arguendo*, that consumer gag clauses were valid and enforceable, Roca has shown that it cannot be trusted to use its gag clause responsibly. It has engaged in witness intimidation in pending litigation by threatening to sue (and actually suing) former customers in retaliation for their testimony in the Opinion Case. *See* **Exhibits 1 & 2**. Roca has even gone so far as to threaten to sue (and actually sue) journalists and bloggers writing about its lawsuits. *See Roca Labs, Inc. v. Sequence, Inc.*, Circuit Court of the 13th Judicial Circuit, in and for Hillsborough County, Florida, Case No. 14-CA-011549 (suing blogger Tracy Coenen for writing

about Roca and its litigation); *and see* Mike Masnick, *Techdirt's Response to Roca Labs' Demand for a Retraction*, Techdirt (Oct. 10, 2014), attached as **Exhibit 4** (threatening to sue blog for coverage of Roca's litigation).

Aside from this, despite making much hay of the possibility for fake negative reviews, Roca has no problem with paying its endorsers without disclosing this information to prospective customers. It also ignores the fact that one of its own principals, Don Juravin, posted a fake celebrity endorsement of Roca's product on a consumer review website and then perjured himself in testifying as to the review's authenticity. *See* Doc. # 20 in Opinion Case, Motion for Leave to File Affidavit in Support of Motion for Entry of a Temporary Injunction, attached as **Exhibit 5**; *see also* Doc. # 26 in Opinion Case, Opposition to Motion to Shorten Time, attached as **Exhibit 6**. The hypocrisy is strong with Roca, and it is hard to conceive of a defendant against whom an injunction against further abuse would be more appropriate.

Roca is not attempting to use its gag clause to ensure accurate reviews about its products and business practices. The consumer gag clause employed by Roca Labs serves the obvious purpose of censoring countless truthful consumer reviews, in a misguided effort to ensure that potential consumers are misled by a handful of positive reviews. Even if gag clauses are theoretically permissible, they are absolutely against public policy when used in this manner, by this particular party.

### 7.0 Conclusion

The public is entitled to hear the opinions of consumers. Defendants have far exceeded any understandable attempt to control the message, suing customers and even suing a platform that merely permits customers to leave positive and negative feedback. Defendants should be enjoined from enforcing their gag clause, and other would-be consumer censors should be forewarned that such clauses are presumptively unfair, deceptive, and unenforceable.

| | |
|---|---|
| Dated:  October 19, 2015. | Respectfully Submitted,<br><br>/s/ *Marc J. Randazza*<br>Marc J. Randazza, Esq.<br>Florida Bar No. 625566<br>RANDAZZA LEGAL GROUP, PLLC<br>3625 S. Town Center Drive<br>Las Vegas, Nevada 89135<br>Phone:  702-420-2001<br>Fax: 305-437-7662<br>Email: ecf@randazza.com<br><br>Richard J. Mockler, Esq.<br>Florida Bar No. 563986<br>217 S. Howard Ave., Suite 201<br>Tampa, Florida 33606<br>Phone:  813-331-5699<br>Email: richard@davismocklerlaw.com<br><br>Attorneys for *Amici Curiae* |

8:15-cv-02234-MSS-TBM

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on October 19, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served upon counsel for all parties via transmission of Notices of Electronic Filing generated by CM/ECF.

                  Respectfully Submitted,

                  */s/ Marc J. Randazza*
                  An employee / agent of
                  RANDAZZA LEGAL GROUP, PLLC

RANDAZZA | LEGAL GROUP