**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**FEDERAL TRADE COMMISSION,**

    Plaintiff,

v.                                              **Case No: 8:15-cv-2231-T-35TBM**

**ROCA LABS, INC., a corporation,
ROCA LABS NUTRACEUTICAL USA,
INC., a corporation, DON JURAVIN,
individually, DON JURAVIN, as an
officer of Roca Labs, Inc. and Roca
Labs Nutraceutical USA, Inc. Must
Cure Obesity, Co and Juravin, Inc.,
GEORGE C. WHITING, individually,
GEORGE C. WHITING, as an officer of
Roca Labs, Inc. and Roca Labs
Nutraceutical USA, Inc. and Zero
Calorie Labs, Inc., MUST CURE
OBESITY, CO., a corporation,
JURAVIN, INCORPORATED, a
corporation, and ZERO CALORIE
LABS, INC., a corporation,**

    Defendants.
_____/

## STIPULATED PRELIMINARY INJUNCTION FREEZING ASSETS WITH OTHER EQUITABLE RELIEF

On October 29, 2015, this Court issued a Preliminary Injunction (Dkt. 38) imposing various restraints upon the original four Defendants in this action, Don Juravin, George Whiting, Roca Labs, Inc., and Roca Labs Nutraceutical, Inc. The Preliminary Injunction was issued based on the Court's finding that (1) in the past, Roca Labs had made numerous representations that could not be scientifically proven, and the FTC was likely to succeed on the merits of a proceeding to establish that various statements by the

original Defendants were deceptive and unsubstantiated claims; and (2) that in the past, in order to squelch comment and public discourse about its products, the original Defendants had, in fact, pursued and threatened to pursue consumers both by threatening criminal sanctions and civil action and financial loss for their comments.

The original Defendants had stipulated, *inter alia*, to order provisions in a Temporary Restraining Order (Dkt. 13) and the Preliminary Injunction to preserve their assets while the case was pending before trial.  These provisions restrained and enjoined them from directly or indirectly selling, transferring, alienating, liquidating, encumbering, pledging, loaning, assigning, concealing, dissipating, converting, withdrawing, or making any other disposition of any assets or any interest therein, wherever located, including any assets outside the territorial United States, that are owned, controlled or held by, or for the benefit of, in whole or in part, those defendants, or in the actual or constructive possession of those defendants, other than those assets that are used for actual, ordinary, and necessary business or living expenses that those defendants reasonably incur, including reasonable legal expenses; and that the assets affected by the preliminary injunction should include both existing assets and assets acquired after the effective date of the Order.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff, the Federal Trade Commission ("FTC" or "Commission") has now moved for a Temporary Restraining Order with Other Equitable Relief and an Order to Show Cause Why the Preliminary Injunction Should Not Be Modified and Entered Against Defendants Don Juravin, Roca Labs, Inc., Roca labs Nutraceutical USA, Inc., Must Cure Obesity, Co., Juravin, Incorporated, and Zero Calorie Labs, Inc., (collectively, "Asset Freeze Defendants").

(Dkt. 69)   In support of its motion, the FTC has come forth with evidence—consisting of sworn declarations and exhibits—that Defendant Juravin has attempted to conceal, dissipate, transfer, or dispose of assets owned, controlled or held by, or for the benefit of, in whole or in part, himself or the other defendants, by:

- instructing one of his agents to create, in February 2016, a new, seemingly independent company called Jugaad Co., over which Juravin exerted control in whole or in part, to provide purported computer programming services for Defendant Must Cure Obesity and the Roca Labs business;

- depositing more than $50,000 of Defendants' assets in an account for Jugaad Co. in March 2016 even though any services it provided at the time were for only a fraction of that amount, and it had no written agreement to perform any services for any Defendant;

- instructing his agent in July 2016 to generate fictitious invoices from Jugaad Co. to Must Cure Obesity for purported computer programming services rendered on behalf of Must Cure Obesity and the Roca Labs business;

- depositing $289,188 of Defendants' assets in Jugaad Co.'s bank account in July and August 2016 as purported payment of the fictitious invoices with the expectation of reclaiming those funds at a later date;

- instructed his agent to create an Ireland company, Jugaad, Limited, and proposed that she travel with him to Ireland to create a bank account there for Jugaad, Limited;

3

- proposed a fraudulent conveyance of title to his Mercedes Benz convertible to his agent, while he maintained possession, with the expectation of reclaiming title to the car at a later date;

- at all relevant times, Defendants Must Cure Obesity Co., Juravin, Incorporated, and Zero Calorie Labs have been owned, controlled, or held, or for the benefit of Defendant Don Juravin, in whole or in part; and

- the witness, Jenna Antico, who provided the foregoing information has a genuine fear that Mr. Juravin will retaliate against her or her family because she has provided testimony in this matter.

Defendants deny any wrongdoing, but in the interests of expediting resolution of this matter, have agreed to stipulate to the terms of this asset freeze Order without admitting liability and without prejudice to asserting defenses as necessary and appropriate.

Based on the submitted evidence and the stipulation of the Parties, the Court finds that:

A. There is good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief for consumers (including monetary restitution, rescission, disgorgement, or refunds) will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets unless Defendants are further restrained and enjoined by Order of this Court;

B. Weighing the equities and considering the FTC's likelihood of ultimate success on the merits, a preliminary injunction with an asset freeze,

      repatriation of assets and financial accounting, expedited discovery as to the existence and location of assets and documents relating to such assets, is in the public interest;

C.   Good cause exists for ordering the Individual Defendant Juravin and his Representatives to have no contact with Jenna Antico or her family; and

D.   The FTC is an independent agency of the United States of America and therefore, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, no security is required for issuance of a preliminary injunction.

## DEFINITIONS

For purposes of this Asset Freeze Preliminary Injunction ("Order"), the following definitions shall apply:

1.   **"Asset"** or **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.   **"Asset Freeze Defendant(s)"** means the Individual Defendant Juravin and Corporate Defendants individually, collectively, or in any combination.

3.   **"Corporate Defendants"** means Roca Labs, Inc., and/or Roca Labs Nutraceutical USA, Inc., Must Cure Obesity, Co., Juravin, Incorporated, and Zero Calorie Labs, Inc., their successors and assigns, as well as any subsidiaries, and

any fictitious business entities or business names created or used by these entities or any of them.

4. **"Exempt Accounts"** means the following bank accounts:

- Must Cure Obesity, Co., Chase Bank account number ending in 7028;
- Don Juravin, Chase Bank account number ending in 8216; and
- Juravin, Inc., Chase Bank account number ending in 8193.

5. **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including any brokerage house or institution, broker-dealer, escrow agent, title company, commodity trading company, credit-card processor, payment processor, third party processor, merchant bank, acquiring bank, independent sales organization, payment gateway, insurance company, trustee, or precious metal dealer.

6. **"Individual Defendant Juravin"** means Don Juravin, by whatever name(s) he may be known.

7. **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

8. **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

9. **"Representative"** or **"Representatives"** means Defendants' officers, directors, managers, members, agents, servants, employees, contractors, and attorneys, and any other Person or entity in active concert or participation with them, who receives actual notice of this Order by personal service or otherwise.

## I. ASSET FREEZE

**IT IS ORDERED** that the Asset Freeze Defendants and their Representatives, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing any funds, real or personal property, including vehicles, accounts, contracts, shares of stock, lists of consumer names, or other Assets, or any interest therein, wherever located, including outside the United States, that are:

   1. owned, controlled, or held, in whole or in part, by any Asset Freeze Defendant;

   2. held, in whole or in part, for the direct or indirect benefit of, any Asset Freeze Defendant;

   3. in the actual or constructive possession of any Asset Freeze Defendant;

   4. held by an agent of any Asset Freeze Defendant as a retainer for the agent's provision of services to Asset Freeze Defendants;

      5.   owned or controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Asset Freeze Defendant, or of which any Asset Freeze Defendant is an officer, director, manager, or member.  This includes, but is not limited to, any Assets held by, for, or subject to access by, any Asset Freeze Defendant or Jugaad Co. at any bank or savings and loan institution, or at/with any broker-dealer, escrow agent, title company, insurance company, commodity trading company, precious metal dealer, payment processor, credit card processor, acquiring bank, merchant bank, independent sales organization, third party processor, payment gateway, or other Financial Institution or depository of any kind; or

      6.   held in any account for which any Asset Freeze Defendant is, or was on the date that this Order was signed, an authorized signor.

B.   Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Asset Freeze Defendant or Jugaad Co., either individually or jointly, or subject to access by any Asset Freeze Defendant;

C.   Obtaining a personal or secured loan encumbering the Assets in the name, individually or jointly, of any Asset Freeze Defendant or Jugaad Co., or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Asset Freeze Defendant;

8

D. Incurring liens or other encumbrances on real property, personal property, or other Assets in the name, individually or jointly, of any Asset Freeze Defendant or Jugaad Co., or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Asset Freeze Defendant;

E. Incurring charges or cash advances on any credit or bank card issued in the name, individually or jointly, of any Asset Freeze Defendant or Jugaad Co., or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Asset Freeze Defendant or of which any Asset Freeze Defendant is an officer, director, member, or manager.  This includes, but is not limited to, any corporate bank card or corporate credit card account for which any Asset Freeze Defendant is, or was on the date that this Order was signed, an authorized signor; or

F. Cashing any checks from consumers, clients, or customers of any Asset Freeze Defendant.

*Provided however*, the freeze imposed in this Section shall apply only to Assets existing at the time of entry of this Order, and shall not apply to Assets in Exempt Accounts as of, or after, the time of entry of this Order, *except that* up to seven-thousand dollars ($7,000.00) of funds in any Asset Freeze Defendant account, including any Exempt Accounts, may be frozen if Individual Defendant Juravin fails to pay, within thirty (30) days of the time of entry of this Order, seven-thousand dollars ($7,000.00) acquired after the time of entry of this Order to Defendants' counsel of record to hold in escrow to be frozen.

## II. FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within five (5) days following the service of this Order, each Defendant shall:

- A. Transfer to the territory of the United States all funds and Assets located in foreign countries that are: (1) titled in the name individually or jointly of any Asset Freeze Defendant; (2) held by any Person or entity for the benefit of any Asset Freeze Defendant, individually or jointly; or (3) under the direct or indirect control, whether individually or jointly, of any Asset Freeze Defendant;

- B. Hold and retain all repatriated funds and Assets and prevent any transfer, disposition, or dissipation whatsoever of any such Assets, accounts, or funds;

- C. Provide the Counsel for the FTC access to all records of accounts or Assets of any Asset Freeze Defendant held by Financial Institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order as Attachment A.

## III. NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Asset Freeze Defendants and their Representatives are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section II of this Order, including:

A. Sending any statement, letter, fax, email, or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Assets have been fully repatriated pursuant to Section II of this Order; and

B. Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Asset Freeze Defendants' Assets have been fully repatriated pursuant to Section II of this Order.

## IV.  NO DIRECT CONTACT WITH WITNESS

**IT IS FURTHER ORDERED** that Individual Defendant Don Juravin and his Representatives are hereby preliminarily enjoined from directly contacting Jenna Antico or her family, including in-person, telephone, email, or social media contact, except that his counsel of record may seek from her discoverable evidence pursuant to the rules of this Court or any relevant statute.

## V. DUTIES OF HOLDERS OF DEFENDANTS' ASSETS

**IT IS FURTHER ORDERED** that any Person that: (a) is served with a copy of this Order or has actual or constructive knowledge of this Order; and (b) holds, controls, or maintains custody of, or has held, controlled, or maintained custody of at any time since January 2010, any account or asset (including reserve funds held by payment processors, credit card processors, payment merchant banks, acquiring banks, independent sales

organizations, third party processors, payment gateways, insurance companies, or other entities) of any Asset Freeze Defendant, or any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Asset Freeze Defendant or Jugaad Co., or of which any Asset Freeze Defendant is an officer, director, manager, or member shall:

    A.    Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, liquidation, or other disposal of:

        1.    any such accounts or Assets, other than any Exempt Account and Assets in Exempt Accounts as of, or after, the time of entry of this Order;

        2.    up to seven-thousand dollars ($7,000.00) of funds in any Asset Freeze Defendant account, including any Exempt Accounts, under circumstances described in the final paragraph of Section I of this Order on written instructions of the FTC; and

        3.    documents or other property related to any such accounts or Assets, including any Exempt Account;

    B.    Deny any Person access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Asset Freeze Defendant or Jugaad Co., either individually or jointly, or otherwise subject to access by any Asset Freeze Defendant or Jugaad Co.;

    C.    Provide Plaintiff's counsel, within ten (10) days of receiving a copy of this Order, a sworn statement setting forth:

      1. the identification number of each such account or asset;

      2. the balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served and, if the account or asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the Person or entity to whom such account or asset was remitted; and

      3. the identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Asset Freeze Defendant, or is otherwise subject to access by any Asset Freeze Defendant; and

D. Within ten (10) days of a request from Plaintiff, promptly provide Plaintiff with copies of all records or other documents pertaining to such account or asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to such safe deposit boxes, commercial mail boxes, and storage facilities.

E. Plaintiff may properly serve this Order by facsimile transmission, hand delivery, or overnight carrier. This Section shall apply to existing accounts and Assets, Assets deposited or accounts opened after the effective date of this Order, and any accounts or Assets maintained, held, or controlled

since January 2010. This Section shall not prohibit transfers in accordance with any provision of this Order, any further order of the Court, or by written agreement of the parties.

## VI. LIMITED EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the time periods, notice provisions, and other requirements of Rules 26(d), 26(f), and 30(a)(2)(c) of the Federal Rules of Civil Procedure, and pursuant to Federal Rules of Civil Procedure 30(a), 34, and 45, the FTC is granted leave, at any time after entry of this Order, to conduct limited expedited discovery as to parties and non-parties for the purpose of discovering and confirming the nature, location, status, and extent of Asset Freeze Defendants' Assets. The limited expedited discovery set forth in this Section shall proceed as follows:

A. The FTC may, on ten (10) days of notice, take the deposition of any Person, whether or not a party, in any judicial district. Depositions may be conducted telephonically or in person. Deposition transcripts that have not been signed by the witness may be used at the preliminary injunction hearing in this matter. The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) of the Federal Rules of Civil Procedure.

B. The FTC may serve interrogatories upon Asset Freeze Defendants, and Asset Freeze Defendants shall respond within five (5) days after the FTC serves such interrogatories. The service of interrogatories pursuant to this Section, notwithstanding Rule 33(a)(1) of the Federal Rules of Civil Procedure, shall not preclude the FTC from serving any future interrogatories upon Asset Freeze Defendants in this action.

C. The FTC may, upon ten (10) days' notice, including through the use of a Rule 45 subpoena, demand the production of Documents from any Person, whether or not a party, relating to potential Asset Freeze Defendants' financial accounts.

D. The FTC is granted leave to subpoena Documents immediately from any Financial Institution, account custodian, or other entity or Person that holds, controls, or maintains custody of any account or Asset of any Asset Freeze Defendant, or has held, controlled, or maintained custody of any account or Asset of any Asset Freeze Defendant concerning: (1) the nature, location, status, and extent of any Asset Freeze Defendant's Assets; and (2) compliance with this Order. Such Financial Institution, account custodian, or other entity shall respond to such subpoena within ten (10) days after service.

E. For purposes of discovery pursuant to this Section, service shall be sufficient if made by facsimile, email, or by overnight courier.

F. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and Local Rules of this Court.

G. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) and (f) of the Federal Rules of Civil Procedure.

## VII. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served on any Person (including any Financial Institution) that may have possession, custody, or control of any property, property right, Document, or Asset of any Asset Freeze Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, by any means, including U.S. First Class Mail, overnight delivery, facsimile, email, or personal service, by agents or employees of the FTC, by any law enforcement agency, by private process server, or by any Person or entity permitted by the Federal Rules of Civil Procedure to effect service.  For purposes of this Section, service upon any branch, subsidiary, affiliate, or office of any entity shall affect service upon the entire entity.  This Order shall bind Persons (including entities) that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure upon such Person's receipt of actual notice, by personal service or otherwise, of this Order.

## VIII. SCOPE OF THIS ORDER

**IT IS FURTHER ORDERED** that the asset freeze and other requirements imposed by this Order are **in addition to** the existing provisions of the Preliminary Injunction

entered by this Court on October 29, 2015. **Nothing in this Order shall affect the operation of any provision of the Preliminary Injunction.**

### IX. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**DONE** and **ORDERED** in Tampa, Florida, this 13th day of September, 2016.

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE