UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

ROCA LABS, INC., a corporation; ROCA
LABS NUTRACEUTICAL USA, INC., a
corporation; MUST CURE OBESITY, CO.,
a corporation; JURAVIN,
INCORPORATED, a corporation; ZERO
CALORIE LABS, INC., a corporation;
DON JURAVIN, individually and as an
officer of Roca Labs, Inc., Roca Labs
Nutraceutical USA, Inc., Must Cure
Obesity, Co., and Juravin, Incorporated;
and GEORGE C. WHITING, individually
and as an officer of Roca Labs, Inc., Roca
Labs Nutraceutical USA, Inc., and Zero
Calorie Labs, Inc.,

Defendants.

Case No.  8:15-cv-02231-MSS-TBM

**PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANTS'**
**MOTION FOR RELEASE OF FROZEN FUNDS TO PAY LEGAL EXPENSES**

Plaintiff, the Federal Trade Commission ("FTC"), submits this memorandum in

opposition to Defendants' Motion for Release of Frozen Funds to Pay Legal Expenses [Dkt.

94]. Citing a single, inapposite case, and providing no evidentiary support, the Defendants

seek release of $100,000 in frozen funds to pay legal expenses. The Court should deny the

instant motion, since it has no support in either the law or the facts. It is well within a court's

discretion to freeze all assets derived from unlawful conduct when such an action is justified.

It is clearly justified here, because the amount of frozen funds falls far short of the

Defendants' potential monetary liability for their deceptive and unfair conduct, the

1

Defendants have a significant stream of unfrozen revenue available to pay legal expenses, and equitable factors weigh heavily against the release of those funds.

### A. Defendants' Frozen Assets Fall Well-Short Of The Ill-Gotten Gains They Have Made From Misleading And Threatening Consumers

The FTC, in its September 2015 Motion for Noticed Temporary Restraining Order and Memorandum in Support, described for the Court how the Defendants aggressively advertised a costly dietary supplement—billed as "Gastric Bypass NO Surgery"—with outrageously deceptive claims that users, even young children, could achieve extreme weight loss, and used these claims to sell millions of dollars' worth of products. They ran a website supposedly offering neutral advice on gastric bypass surgery, but which actually promoted their products. They also offered to pay consumers for positive reviews. They cited onerous restrictions in their online terms and conditions to threaten consumers who posted negative reviews or complained publicly about their products with financial and legal consequences. And they disclosed sensitive personal information about their customers to outsiders. [Dkt. 6, PageID 150-64].

With that filing, the FTC also submitted unrebutted evidence that the Defendants' 2010-2014 revenues from Roca Labs product sales were about $21 million. Colbert September 18, 2015 Declaration ¶¶ 15, 16(a), 17(d)-(e) [Dkt. 6-7, PageID 677-79].[1] Disgorgement is measured by the defendants' unjust enrichment, calculated as the amount of net revenue (gross receipts minus refunds), rather than the amount of profit (net revenues

---

[1] Discovery shows that the Defendants also received substantial revenues in 2015 before this case was filed.

minus expenses). *FTC v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326-27 (11th Cir. 2013) (per curiam). Twenty-one million dollars, plus additional 2015 revenue, would therefore be the full amount of disgorgement the FTC, acting on behalf of defrauded consumers, is entitled to recover for the Defendants' FTC Act violations. The FTC's initial, reasonable approximation of the Defendants' ill-gotten gains is thus an appropriate basis for the asset freeze in this case. *See FTC v. IAB Mktg. Assoc., LP*, 746 F.3d 1228, 1234 (11th Cir. 2014). The Defendants do not assert otherwise.

The liquid assets frozen at this time – approximately $549,000[2] – fall far short of the Defendants' potential monetary liability. The Court is therefore well within its discretion to deny the instant motion. *See FTC v. Lanier Law, LLC*, 2015 U.S. Dist. LEXIS 170610, *9, 11 (M.D. Fla. Dec. 22, 2015) (denying release of frozen funds to pay attorney fees when defendants' monetary liability greatly exceeded the frozen funds); *FTC v. IAB Mktg. Assoc., LP*, 2013 U.S. Dist. LEXIS 78307, *7, 12-13 (S.D. Fla. June 4, 2013) (same).

The only case the Defendants cite, *CFTC v. Dinar Corp.*, 2016 U.S. Dist. LEXIS 25237, 2016 WL 814893 (M.D. Ala. Feb. 29, 2016) is not contrary to *Lanier* and *IAB*, and

---

[2] The Defendants have not specified which frozen funds they seek to be released. The frozen funds include approximately $97,000 of funds in a financial account and Defendants' counsel's escrow account, and approximately $153,000 held by a payment processor. Funds are also held by Jugaad Co. ($272,735.16) and USA Distributor Services ($27,203.12), two entities to which Juravin transferred substantial amounts of money. When asked, at his September 9, 2016 deposition, to testify about this money and why funds were transferred to those two companies, Juravin asserted his Fifth Amendment privilege. See Exhibit 1 hereto, Excerpts from September 9, 2016 Deposition of Don Juravin at 147-57. Because the money transferred to Jugaad and USAD was nominally in payment for services, disposition of those funds could still be disputed. Therefore, the Jugaad and USAD funds should not be part of any release, since the ownership of those funds has not been finally resolved.

does not actually support the Defendants' argument. In *Dinar*, the court granted a defense motion to release, for payment of attorney fees, frozen funds that were "clean," i.e., unrelated to the unlawful activities alleged in the complaint. 2016 U.S. Dist. LEXIS 25237 at *24. While the *Dinar* court did discuss a variety of relevant equitable considerations, including the need to maintain fairness in complex legal proceedings, *id.,* at *22-23, the actual scope of relief granted was limited to funds not subject to the pending action. The Defendants in the present case, by contrast, seek the release of funds that *are* the subject of the action, and they do not assert otherwise.[3] Thus, the *Dinar* opinion lends no support for the release of frozen funds in this matter.

### B.  Defendants Have Other Funds Available To Pay Legal Expenses

Defendants submitted no evidence to support their motion, and provided no declarations or other evidence that they lack other sources of funds to pay legal expenses. The asset freeze to which the Defendants stipulated last month, with one exception, does not apply to assets acquired after the time of entry of the order on September 13, 2016 [Dkt. 90, PageID 1963]. A "Basic" package of the Defendants' Roca Labs products, without coaching, sells on the RocaLabs.com website for $280, with more expensive packages available. See RocaLabs.com ("Pricing") (visited Oct. 27, 2016). Bank statements the Defendants have provided as part of their monthly financial reporting to the FTC, as required by the

---

[3] *Cf. FTC v. Williams*, 2015 U.S. Dist. LEXIS 126522, *3, 2015 WL 7351993 (N.D. Ga. Sept. 22, 2015) (frozen assets need not be traceable to fraudulent activity underlying lawsuit); *SEC v. Lauer*, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (amount of assets to be frozen prior to finding of liability is not determined by whether specific funds are traceable to the fraudulent activity).

Preliminary Injunction [Dkt. 38, PageID 1575], show that Defendants still generate significant revenue from the Roca Labs business.[4] This circumstance alone counsels against granting the Defendants' motion. *See, e.g.*, *FTC v. Health Formulas, LLC*, 2015 U.S. Dist. LEXIS 101026 *5, 7-8, 2015 WL 4623126 (D. Nev. Aug. 3, 2015) (denying motion to pay expenses from frozen funds; defendants did not demonstrate that frozen funds were only funds available to pay living expenses, child support, and health insurance; court had previously denied motion to disburse frozen assets to pay attorney fees);[5] *SEC v. Quan*, 2012 U.S. Dist. LEXIS 19980, *5-6, 9, 2012 WL 523618 (D. Minn. Feb. 16, 2012) (denying motion to pay legal expenses in related action from frozen funds; defendants did not establish that other funding sources were no longer available to pay legal expenses). Defendants also do not address the extent to which Juravin's personal living expenses could be curtailed to help them better afford legal representation in this case.[6]

---

[4] The FTC has conferred with counsel for the Defendants, and the Defendants regard their monthly revenue amount as confidential. The FTC can submit information about the Defendants' September 2016 revenues under seal if the Court believes the information would be helpful in resolving this motion. The FTC believes, however, that the burden rests on the Defendants to provide appropriate financial information to support their request.

[5] In *Health Formulas*, the FTC alleges that individuals and companies operating as a common enterprise, among other things, falsely advertised that their dietary supplements would enable weight loss without diet or exercise. *See FTC v. Health Formulas, LLC,* 2015 U.S. Dist. LEXIS 59387, *40-43, 2015 WL 2130504 (D. Nev. May 6, 2015).

[6] It bears noting that in January 2016, while the asset preservation provisions of the Preliminary Injunction [Dkt. 38] were in effect, Juravin bought a $1.7 million house outside Orlando. See Exhibit 2 hereto, August 24, 2016 Declaration of Lynne Colbert, Att. A (Deed for home) and Att. B (Property Record Card). Juravin has not explained how he can afford payments on this five-bedroom, six-and-a-half bath residence with a swimming pool and hot tub, in a luxury residential community with a neighborhood association and club, yet be unable to afford to pay for legal expenses in this matter.

**C.  Equitable Factors Weigh Against Releasing Frozen Funds To Pay Legal Expenses**

**1.  Frozen Funds Are Not Needed To "Maintain Fairness"**

Equitable considerations weigh heavily against releasing frozen funds to pay Defendants' legal expenses. The Defendants' argument that they need $100,000 of frozen funds to "maintain fairness" in this case rests on the premise that "before there can be 'victims' there must be liability. *Right now, there are only allegations*; there are no victims." [Dkt. 94, PageID 1981 (emphasis added)]. This statement is plainly wrong and, indeed, offensive to the thousands of consumers harmed by the Defendants' conduct.

First, there are more than allegations; there is evidence. There is extensive evidence, for example, of the Defendants' deceptive weight loss advertising claims. See Howe Declaration [Dkt. 6-2 and Dkt. 8]; Colbert Declaration [Dkt. 6-7, PageID 683, 690]. There is evidence that the Defendants spent millions of dollars in targeted, online advertising to direct consumers to their deceptive websites over several years. Colbert Declaration [Dkt. 6-7, PageID 675-77]. The detailed declaration of Dr. Steven B. Heymsfield, a preeminent weight loss expert, establishes that the claims the Defendants had been making in their advertising lacked reliable scientific support, and that the studies cited in the Defendants' websites did not constitute such support [Dkt. 6-16]. And, of course, there is evidence of consumer victims of the Defendants' weight loss advertising. See Colbert Declaration [Dkt. 6-7, PageID 668-70] (describing consumer complaints about Roca Labs); [Dkt. 6-7, PageID 679-80] (consumers who initiated chargebacks). McGaha Declaration [Dkt. 6-14]; Baker [Dkt. 6-15]. These individuals are far from "theoretical." [Dkt. 94, PageID 1983]. The millions of dollars the Defendants raked in from 2010 until this lawsuit was filed came from real people,

many of whom were deceived by Roca Labs' marketing, and then bullied if they tried to complain or alert others.

Second, the evidence led to findings. This Court previously found the FTC likely to succeed on the merits of its deceptive weight loss claims [Dkt. 38, PageID 1567].[7]

Third, many courts have found that it is appropriate to freeze assets during a litigation to preserve the possibility of monetary relief. *See, e.g., FTC v. IAB Mktg. Assoc., LP*, 746 F.3d 1228, 1234-35 (11th Cir. 2014) (affirming preliminary injunction freezing assets; district court did not need to allow for possible value of product to consumers because salient issue is whether misrepresentations tainted consumer purchasing decisions); *FTC v. Williams*, 2015 U.S. Dist. LEXIS 126522, *4-5, 2015 WL 7351993 (N.D. Ga. Sept. 22, 2015) (forbidding or limiting payment of attorney fees out of frozen assets to protect consumer victims appropriate when frozen assets fall short of amount FTC seeks to have defendant disgorge; denying motion for release of frozen assets to pay attorney fees).

In furtherance of their "fairness" argument, the Defendants assert that "[t]his is a complex case" [Dkt. 94, PageID 1982]. Defendants note that "[t]he issues to be litigated include complex theories as to whether certain substances cause or contribute to weight loss." [Dkt. 94, PageID 1982]. What the Defendants neglect to state, however, is that they do not

---

[7] The Preliminary Injunction included findings that:  (1) in the past, Roca Labs had made numerous representations that could not be scientifically proven, and the FTC was likely to succeed on the merits of a proceeding to establish that various statements by the original defendants were deceptive and unsubstantiated claims; and (2) that in the past, in order to squelch comment and public discourse about its products, the original defendants had, in fact, pursued and threatened to pursue consumers both by threatening criminal sanctions and civil action and financial loss for their comments. [Dkt. 38, PageID 1567].

have a clinical trial or other study of their products that shows that the products cause, or help cause, the people who use them to lose weight.

While the parties agree that the weight-loss science at issue in this case requires expert testimony, this outright lack of substantiation for the extravagant weight-loss claims that the Defendants made in the years before the FTC filed this lawsuit is quite straighforward. The FTC's expert has described the requirements for human clinical trials that would be necessary to substantiate the weight loss claims Defendants had been making. [Dkt. 6-16, PageID 885-88]. This level of support is consistent with that found by other courts to be required for weight loss claims about dietary supplements. *See FTC v. National Urological Grp., Inc.*, 645 F. Supp.2d 1167, 1202 (N.D. Ga. 2008) (describing randomized, placebo-controlled, clinical trial evidence required to substantiate weight-loss claims), *aff'd*, 356 Fed. Appx. 358 (11th Cir. 2009). The Defendants' lack of clinical trial evidence substantiating their weight-loss claims can likely support a summary judgment ruling against them. *Cf. NUG*, 645 F. Supp.2d at 1202-03 (products had not been clinically or scientifically tested; no dispute of material fact on lack of reasonable basis and falsity of defendants' weight-loss claims). It certainly counsels against any finding, at this stage of the case, that "fairness" requires the release of $100,000 of ill-gotten gains for the Defendants to use to litigate the issue.

### 2.   The "Circumstances"

The Defendants have cooperated with the FTC in some respects, but they gloss over, with an oblique reference to "the circumstances" [Dkt. 94, PageID 1978], *why* the assets were frozen in the first place – Juravin's recently discovered attempts to conceal assets. See

[Dkt. 69-2 and Dkt. 90, PageID 1957-58]. The "circumstances" were of Defendant Juravin's

own making. The Defendants have yet to offer a full explanation as to why Juravin

transferred hundreds of thousands of dollars to a sham entity and directed a subordinate,

Jenna Antico, to gin up fictitious invoices for the money. Defendants also omit entirely any

discussion of evidence that Juravin has offered to pay money to former programmers to

assert that a fictitious invoice generated at his request was true (Exhibit 3 hereto, Excerpts

from September 8, 2016 Deposition of Jenna Antico at 125-26, 169-71), or that Juravin tried

to fraudulently transfer ownership of his Mercedes to Ms. Antico only to reclaim it at a later

date [Dkt. 69-2, PageID 1833]. The assertion that the Defendants have acted with "complete

transparency and good faith" [Dkt. 94, PageID 1983] is dubious, if not absurd.[8]

The Defendants stipulated to substantially all of the "draconian" relief the FTC

sought in its requested asset freeze, on the morning the FTC's motion was to be heard. This

was the next business day after the FTC deposed Juravin about "the circumstances." During

the deposition, Juravin repeatedly asserted his Fifth Amendment privilege in response to

dozens of questions about his concealment of assets. See Exhibit 1 hereto, Juravin Deposition

at 147-57. Defendants come now with a remarkable, self-serving, unsworn assertion that in

mid-July 2016, at the very time Juravin was secretly transferring assets, "Defendants

---

[8] As the FTC illustrated in a previous filing, Juravin also was not entirely truthful in his discovery
responses even before the accusations leveled against him this past summer. [Dkt. 84, PageID 1910-
11; Dkt. 84-2] (verified interrogatory response that failed to disclose Jenna Antico as someone he
retained on the same date that he had her establish Jugaad Co.).

presumed that any restrictions that they had been operating under would be lifted and acted accordingly." [Dkt. 94, PageID 1978].

Even assuming the Defendants in "good faith" assumed that they could unilaterally decide when this Court's preliminary injunction would cease to bind them,[9] this assertion should not be countenanced given Juravin's repeated privilege assertions about the subject. Indeed, in light of Ms. Antico's declaration and deposition testimony, the Court would be justified in drawing adverse inferences against Defendant Juravin from his refusal to testify about his role in the "circumstances."[10] In light of the strong evidence that Juravin was concealing assets in violation of the Preliminary Injunction's asset preservation provisions [Dkt. 38, PageID 1575], Defendants' contention that "fairness" requires the release of $100,000 of frozen funds for them to use to bankroll their legal defense falls flat.

## CONCLUSION

The Defendants' remaining ill-gotten assets should remain frozen and not be released to pay their legal expenses, particularly absent any showing that they have no other funds

---

[9] The FTC has consistently made clear to the Defendants that FTC counsel can only recommend a settlement, and that any proposed settlement must be approved by a majority vote of the Commissioners. See Dkt. 44 and 65. Any proposed settlement would also, of course, need to be approved by this Court.

[10] *See Baxter v. Palmigiano*, 425 U.S. 308, 318-20 (1976) (party to a civil action may refuse to testify under the privilege of the Fifth Amendment; however, an adverse inference may be drawn against that party); *see also Arrango v. U.S. Dept. of the Treasury*, 115 F.3d 922, 926-27 (11th Cir. 1997) (those who choose to remain silent must bear the consequence of a lack of evidence); *FTC v. Global Mktg. Group*, 594 F. Supp. 2d 1281, 1287 (M.D. Fla. 2008) (granting summary judgment based on movant's affirmative evidence and adverse inference from opponent's invocation of Fifth Amendment).

available from which to pay those expenses. Accordingly, the Court should deny the instant

motion to release $100,000 for the Defendants to spend on legal expenses.[11]

                    Respectfully submitted,

Dated:  October 27, 2016          /s/ *Carl H. Settlemyer, III*
                    CARL H. SETTLEMYER, III (Trial Counsel)
                    PAUL B. SPELMAN
                    Federal Trade Commission
                    600 Pennsylvania Avenue, NW
                    Mail Drop CC-10528
                    Washington, DC 20580
                    (202) 326-2019, -2487 (Tel.)
                    (202) 326-3259 (Fax)
                    csettlemyer@ftc.gov
                    pspelman@ftc.gov

                    Attorneys for Plaintiff Federal Trade Commission

---

[11] The FTC also is concerned that any release of funds could be used to pay other attorneys to whom the Defendants are indebted, or to pursue litigation other than this case. See, e.g., Exhibit 1 hereto, Juravin Deposition at 144-45 (discussing how Juravin filed malicious prosecution suit in Florida against attorneys and plaintiffs in California class action lawsuit to "complicate" the class action and "create a situation where . . . the class action will stop.").

## **CERTIFICATE OF SERVICE**

I CERTIFY that on this 27th day of October 2016, I electronically filed the foregoing "Plaintiff's Memorandum Opposing Defendants' Motion for Release of Frozen Funds to Pay Legal Expenses" and supporting exhibits with the Clerk of the Court by using the CM/ECF filing system, and this document will be served electronically through same to counsel for all parties of record.

s/Carl H. Settlemyer, III
Attorney