UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FEDERAL TRADE COMMISSION,**

Plaintiff,

v.                                              Case No.: 8:15-cv-02231-MSS-TBM

**ROCA LABS, INC.,** a corporation; **ROCA
LABS NUTRACEUTICAL USA, INC.,** a
corporation; **MUST CURE OBESITY, CO.,**
a corporation; **JURAVIN, INCORPORATED,**
a corporation; **ZERO CALORIE LABS,
INC.,** a corporation; **DON JURAVIN,**
Individually and as an officer of Roca Labs,
Inc., Roca Labs Nutraceutical USA, Inc., Must
Cure Obesity, Co., and Juravin, Incorporated;
and **GEORGE C. WHITING,** Individually
and as an officer of Roca Labs, Inc., Roca Labs
Nutraceutical USA, Inc., and Zero Calorie
Labs, Inc.,

Defendants.

_____/

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT THREE OF THE AMENDED COMPLAINT

Defendants, ROCA LABS, INC. ROCA LABS, INC., ROCA LABS

NUTRACEUTICAL USA, INC., DON JURAVIN, GEORGE C. WHITING, MUST

CURE OBESITY CO., JURAVIN INCORPORATED, AND ZERO CALORIE LABS,

INC. (collectively, "Defendants" or "Roca Labs"), by and through their undersigned

counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby file this

Motion for Partial Summary Judgment on Count III of the Plaintiff's First Amended Complaint (Dkt. No. 48). The matters of record affirmatively establish that there is no genuine issue of material fact, and that Defendants are entitled to a judgment as a matter of law on Count III.

## I.   INTRODUCTION

The Federal Trade Commission ("FTC" or "Plaintiff") brought this action against Defendants due to alleged violations of the Federal Trade Commission Act ("FTC Act"). (Dkt. No. 1). Defendants produce, market, and sell a regimen to morbidly obese individuals as an alternative to invasive gastric bypass surgery. While one aspect of the Roca Labs Regimen is the Formula (sometimes referred to as the "Product"), which is a proprietary blend of dietary fibers and other nutritional supplements, the entire Regimen encompasses much more, including the terms and conditions provided to potential customers, the instructions that accompany the Formula, support from "coaches," and online support groups for users of the Regimen.

Defendants utilize a tough love strategy to encourage users to stick with the Regimen. Unfortunately, the same tough love strategy and hardline tactics that enabled thousands of Roca Labs Regimen users to lose more than 100 pounds and achieve healthy weights ultimately caused Roca Labs to come under scrutiny by the Federal Trade Commission. Roca Labs believes it was unfairly targeted because its "tough love" strategy included use of non-disparagement agreements made it easy for Plaintiff to paint Roca Labs as a bad actor. In fact, the Amended Complaint alleges Defendants violated Section 5 of the FTC Act, 15 U.S.C. § 45(a) and (n) by "caus(ing) or are likely to cause

2

substantial injury to consumers that is not reasonably avoidable by consumers." (Dkt. No. 48). Plaintiff alleges this occurred when Defendants "prohibit(ed) purchasers from speaking or publishing …non-defamatory negative comments or reviews…" (Dkt. No. 48).

However, Plaintiff failed to represent to the Court the fact that there was no federal law prohibiting such clauses in existence at the time the acts alleged in its Amended Complaint occurred. At all times relevant hereto, only a limited spattering of laws in various states prohibited such clauses, and none of those states were Florida. In fact, Plaintiff knew when it filed this action on September 24, 2015, that there was a federal law making its way through Congress. That bill was not signed by President Obama until December 14, 2016, nearly 15 months after the initial complaint was filed and 10 months after the Amended Complaint was filed. Hence, the FTC is asking this Court to **_retroactively_** apply the new law by shoehorning the ill-fitting law that existed at the time of the filing this action to fit the facts of this case, which it clearly does not.[1]

## II.    UNDISPUTED FACTUAL AND PROCEDURAL BACKGROUND

1.    On September 24, 2015, Plaintiff filed this action in the Middle District of Florida Federal Court. (Dkt. No.1)

2.    On February 19, 2016, Plaintiff filed its Amended Complaint with the Court. (Dkt. No. 48).

---

[1] In fact, the FTC does not have any right to enforce the new law until December 14, 2017, as the law does not apply retroactively and Congress intended to provide "education and outreach that provides businesses with non-binding best practices for compliance" The Consumer Review Fairness Act of 2016, Pub. L. No. 114-258(i)(2), 2016.

3.     Both the Amended and Original Complaint alleged in Court Three that Defendants in this action had a contract which contained a non-disparagement closure clause that was harmful to consumers. *Id.*

4.     At the time of filing of the Complaint and Amended Complaint, there was no federal law prohibiting the use of a non-disparagement clause in any contract. In fact, the Courts – both state and federal –have supported non-disparagement clauses in contracts.[2] There was no authority on this issue in the State of Florida.

5.     On May 24, 2016, the FTC Commissioner, Plaintiff in this action, urged Congress to promote the Consumer Fairness Review Fairness Act of 2016 in order to have a law that specifically applies to non-disparagement agreements.[3]

6.     On December 14, 2016, the "Consumer Review Fairness Act of 2016" was signed into law by President Obama. The "Consumer Review Fairness Act of 2016", was specifically written to address the allegations made against Defendants in this action in count three of the Amended Complaint.[4]

7.     The "Consumer Review Fairness Act of 2016", is still not in effect for the purposes of enforcement until December 14, 2017. The Consumer Review

---

[2] *FreeLife Int'l, Inc. v. Am. Educ. Music Publications Inc.*, 2009 WL 3241795 (D.Ariz. 2009); *Equal Employment Opportunity Commission v. Severn Trent Services, Inc.*, 358 F.3d 438 (7TH Cir. 2004); *Patlovich v. Rudd*, 949 F.Supp. 585, 594-95 (N.D.Ill.1996); *Eichelkraut v. Camp*, 513 S.E.2d 267, 236 Ga. App. 721 (Ct.App.1999); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex.1996); *Trump v. Trump*, 179 A.D.2d 201, 582 N.Y.S.2d 1008 (App. Div. 1992); *Schaller v. Russak*, No. 2:11-cv-59-FtM-38DNF (M.D. Fla. Oct. 11, 2013); *Miles v. Northwestern Mut. Life Ins. Co.*, 677 F. Supp. 2d 1312 (M.D. Fla. 2009)

[3] *Legislative Hearing on 17 FTC Bills: Hearing Before The Subcommittee on Commerce, Manufacturing, and Trade*, 114 Cong. 8, 11 (2016)(Statement of Edith Ramirez, Chairwoman, Federal Trade Commission)
[4] Consumer Review Fairness ACt of 2016, H.R. 5111, 114th Cong. § 2 (2016)

Fairness Act of 2016, Pub. L. No. 114-258(i)(2), 2016. Until that time, the FTC has been directed to "conduct education and outreach that provides businesses with non-binding best practices for compliance" "The Consumer Review Fairness Act of 2016", Pub. L. No. 114-258(f), 2016.

8.   Defendants in the instant action have long argued that the non-disparagement clause was not illegal at the time of the filing of this action and that had they been informed by Plaintiff – as directed in The Consumer Review Fairness Act of 2016, Pub. L. No. 114-258, 2016 they would have changed their contract to reflect the law.

9.   In its Amended Complaint, Plaintiff alleges Defendants have utilized "gag clauses" in agreements with their customers and threatened litigation regarding violations of same. (Dkt. No. 48, ¶ ¶ 47-56; 67-69).

10.   In their Answer to the Amended Complaint, Defendants admitted that Roca Labs requires purchasers/its customers to agree not to publicly disparage Roca Labs (Dkt. Nos. 58-64, ¶ ¶ 47, 67), and "filed lawsuits against customers who have breached their contracts with Roca Labs." (Dkt. Nos. 58-64, ¶ 47).

11.   Defendants also each admitted to having the terms and conditions which contain the disparagement clause accessible on their website (Dkt. Nos. 58-64, ¶ 48), that "Roca Labs has required its customers to agree to not publicly disparage Roca Labs" (Dkt. Nos. 58-64, ¶ ¶ 49-52), that the "Summary" attached to the Amended Complaint as Exhibit H contains an agreement to not write any negative reviews (Dkt. Nos. 58-64, ¶ 53), and that it has taken action to enforce its

contract and its legal rights, (Dkt. Nos. 58-64, ¶ ¶ 54-55).

12.   With regard to the allegations in the Amended Complaint pertaining to Count Three, Defendants have only denied that they have "published or disclosed any protected health information" (Dkt. Nos. 58-64, ¶ 56), and the legal conclusions stated in paragraphs 68 & 69 of the Amended Complaint (Dkt. Nos. 58-64, ¶ ¶ 68-69).

13.   Accordingly, since the filing of the Answers to the Amended Complaint, there has not been an issue of material fact relating to Count Three.

## III.   ARGUMENT

Defendants are entitled to Summary Judgment as a matter of law. Plaintiff is unable to produce any material issue of fact or law as to the allegations in question. All Defendants' assertions are supported by well-established law and evidence which refute any possible claims made by Plaintiff. It is clear on the face of the Complaint and Amended Complaint that Plaintiff wished to force its way into prosecuting a law that was not yet in existence by back-ending this case through a law that simply does not apply to the facts. During the pendency of the instant matter in May, 2016, Plaintiff testified before Congress about the need of a law that specifically applies to the third count of the Amended Complaint. The Courts have never looked kindly on agencies, citizens, or any party trying to apply laws *ex post facto*, which is exactly what Plaintiff is attempting to do in this case. Essentially, Plaintiff is trying to have its cake and eat it too.

### A.  Summary Judgment Standard

Summary Judgment is appropriate where the admissible evidence shows that

"there is no genuine issue as to any material fact and that the moving party is entitled to a Judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23. 91 L. Ed. 2d 265, 106 S. Ct. T2548 (1986)*.* A material fact is one "that might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 91 L.Ed. 2d 202, 106 S.Ct. 2505 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Summary Judgment is appropriate against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322. The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id* at 317. The party opposing Summary Judgment "may not rest upon the mere allegations or denial of the parties pleadings but... must set forth facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585-89 L.Ed. 2d 538, 106 S. Ct. 1348 (1986).

### B. Legal Standard Pertaining to Defendant's Retroactive Law Defense

In the instant case, Plaintiff seeks to ignore the elephant in the room regarding its retroactive *ex post facto* application of a new law. It seeks to do this by providing an "alternative fact" to the Court by filing their count under § 45(a) & § 45(n). However, this is a falsehood.

In truth, Plaintiff knew that there was no law on the books preventing Defendants from putting a non-disparagement clause in their contract. Plaintiff knew this because it

appeared before Congress lobbying for a law against non-disparagement clauses in May of 2016; the very same time they were prosecuting Defendants in this action. H.R. 5111 – House Committee Notes (May 24, 2016. Testimony of Commissioner Edith Martinez before the 114th House of Representatives Subcommittee on Commerce, Manufacturing, and Trade). Incredibly, while testifying before Congress that a new statute was needed to address non-disparagement agreements, because it believed the law at that time was insufficient address such agreements, Plaintiff was *simultaneously* maintaining its position before this Court that the existing law did in fact apply to non-disparagement agreements.

Courts have long recognized that laws should not be retroactively applied upon possible defendants. "As Justice Scalia has demonstrated, the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly…" *Landgraf v. USI Film Products*, 511 S.Ct. 244, 265 (1994).

The ex post facto provision does not only apply in criminal situations, but in civil cases as well. "The ex post facto clause flatly prohibits retroactive application of penal legislation. Article I, § 10, cl. 1, prohibits States from passing another type of retroactive legislation, laws "impairing the Obligation of Contracts…Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent". *Id*. at 266.

Courts have even gone a step further to allow the law to be announced prior to

enactment so that citizens may have a fair opportunity to change their behaviors and procedures before the effective date of the law. This applies doubly so for an Agency of the government. "…the Department's conclusory statements do not suffice to explain its decision." *F.C.C. v. Fox Television Stations*, 556 U.S.502, 515-516 (2009). "This lack of reasoned explication for a regulation that is inconsistent with the Department's longstanding earlier position results in a rule that cannot carry the force of law." *Encino Motorcars, LLC v. Navarro,* 136 S. Ct. 2117, 2127 (2016). "Unexplained inconsistency is, at most, a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the Administrative Procedure Act." *National Cable & Telecommunications Assn. v. Brand X Internet Services*, 545 U.S. 967, 981, (2005); *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016).

The Consumer Review Fairness Act of 2016, is no different from many laws affecting the average American business. It specifically states that enforcement by the FTC is only allowed "one year after the enactment of the law." The Consumer Review Fairness Act of 2016, Pub. L. No. 114-258(i)(2), 2016. Additionally, instead of prosecuting unsuspecting business owners, the FTC is directed to educate them as to "best-practices" so that they do not fall afoul of the law when it does get enforced. The Consumer Review Fairness Act of 2016, Pub. L. No. 114-258(f), 2016.

Plaintiff has clearly overstepped its bounds in this case by trying to enforce a law that was not passed, let alone enacted, at the time of the filing of its Amended Complaint. In addition, Congress has been critical of the FTC overstepping and stifling commerce in the so-called name of protecting the consumer. Congress has sought to enact several

9

provisions for the FTC to be more transparent, less obtrusive and more helpful to unwary business owners who do not know what laws may apply to their businesses. H.R. 5111 – House Committee Transcript (May 24, 2016. Testimony of Commissioner Edith Martinez before the 114th House of Representatives Subcommittee on Commerce, Manufacturing, and Trade regarding the CLEAR Act (Act on transparency and enforcement issues in the FTC)).

The better result for Plaintiff, instead of trying to enforce a law ex post facto, would have been to provide an advisory opinion to Defendants in this action so that they could have an opportunity to correct their behavior. By jumping the gun and attempting to prosecute Defendants for violations of a non-existent law, Plaintiff has done nothing but to waste the Court's time and taxpayer money on a lost cause.

**C.  Plaintiff has not shown that Defendants violated 15 U.S.C. § 45(a) – unfair practices**

Defendants have not violated 15 U.S.C. § 45(a) because only the recently signed Consumer Review Fairness Act of 2016 actually applies to the non-disparagement clause in the contract. Plaintiff stated specifically in its Amended Complaint that they brought Count Three because, "Defendants prohibits purchaser from speaking and publishing negative comments". (Dkt. No. 48). This language is the exact same language addressed in the newly created Consumer Review Fairness Act of 2016.

In opposition, § 45(a) states as follows: "deceptive acts…affecting commerce, are unlawful". However, nothing that Defendants have done is deceptive, or illegal. The non-disparagement clause is used throughout many contracts. It is a staple in contract law

as a whole. In fact, multiple state courts have wrestled with this issue and have decided in favor of non-disparagement clauses being legal and enforceable on multiple occasions. *FreeLife Int'l, Inc. v. Am. Educ. Music Publications Inc.*, 2009 WL 3241795 (D.Ariz. 2009).(Court found that a valid contract was formed when the defendant pressed the "I Accept" button on the FreeLife website and that the boilerplate non-disparagement clause was a part of that contract).

The real question in this case is, did the parties agree to contractually bind themselves to the non-disparagement clause in the contract? The answer is "yes, yes, a thousand times yes." <u>Pride</u> and <u>Prejudice</u> (2005) IMDb. The entirety of Defendants' business in this case is done online. Defendants also have a "clickwrap" provision contained within the construct of their website.

Courts have previously decided multiple cases on clauses contained within a "clickwrap" contract online. "Clickwrap" has been defined by the courts as an "agreement (that) appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 (2d Cir. 2002). In addition, courts have also found that such agreements are enforceable by applying the traditional principles of contract law. See, *Specht*, 306 F.3d at 28-30; *Forrest v. Verizon Communications, Inc.,* 805 A.2d 1007, 1010 (D.C. Cir. 2002); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200 (Tex. App. 2001); *Caspi v. Microsoft Network, L.L.C.,* 323 N.J. Super. 118, 125-26 (App. Div. 1999); John M. Norwood, "A Summary of Statutory and Case Law Associated with Contracting in the Electronic Universe," 4

DePaul Bus. & Comm. L.J. 415, 439-49 (2006) (discussing clickwrap cases); 1-2 Computer Contracts §2.07 (2006) (analyzing clickwrap cases). Also, the Courts have found that failure to read an enforceable clickwrap agreement <u>will</u> <u>not</u> excuse compliance with its terms. See, *Specht*, 306 F.3d at 30; *Lazovick v. Sun Life Ins. Co. of Am.*, 586 F. Supp.918, 922 (E.D. Pa. 1984); *Barnett*, 38 S.W.3d at 204.

Defendants mention multiple times on their website that the consumer is required to read the "terms and conditions" prior to purchase.[5] The non-disparagement clause is part of those terms and conditions. In fact, the wording is also mentioned within the very website itself. Defendants also state in big, bold letters: **"BY CHECKING THE REQUIRED BOX PRIOR TO PLACING YOUR ORDER, YOU AGREE THAT YOU HAVE READ THIS SALES AGREEMENT IN ITS ENTIRETY AND AGREE TO BE BOUND BY ITS TERMS."**[6] Once again, the non-disparagement clause is contained within the sales agreement to which this statement is referring.[7]

Defendants' actions are in clear compliance of contract law as stated in *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, Dist. Court, ED Pennsylvania 2007, citing *Forrest v. Verizon Communications, Inc.,* 805 A.2d 1007, 1010-11 (D.C. Cir. 2002) (holding that adequate notice was provided of clickwrap agreement terms where users had to click "Accept" to agree to the terms in order to subscribe), *Caspi v. Microsoft Network, L.L.C.,* 323 N.J. Super. 118, 122, 125-27 (App. Div.1999)(finding that reasonable notice of the

---

[5] "Terms and Conditions" are listed at the bottom of each webpage within the site with a hyperlink to the "Terms and Conditions" themselves. Plaintiff's Exhibit to Complaint (Dkt. 2, Part II, pages 12,16,22,25,32, 36,46, 48, 56; Part I, pages 3,10, 12, 16, 22, 26, 29, 34, 37, 47)

[6] See Plaintiff's Complaint Exhibits (Dkt. 2, Part II, pages 11,12,16, 22, 32,34, 35, 36, 46, 47, 48 and 56.)

[7] *Id.*

terms of a clickwrap agreement was provided where the user had to click "I agree" before proceeding with registration.). The only difference between these companies and Defendants is the product being sold.

The issue of whether or not the contract/agreement is valid is not before the Court. In this case, there is clear intent on behalf of Defendants to notify the consumer of their terms and conditions. Even if the consumer failed to read the actual terms and conditions, a simple Google search for Roca Labs would provide multiple reviews on the non-disparagement clause contained on the website.[8] It is impossible to think that in this day and age, with the internet savvy consumer, who is able to put two words into Google and find out everything about a company has somehow been deceived by the same company. It is also impossible to think that when the company itself points out multiple times that the consumer is bound by the terms and conditions, is required to click that they have read these same terms and agree to them, is somehow deceiving the consumer and the consumer is not entering into a contractual obligation with their eyes wide open. This is a clear case of express contractual consent and not of a deceptive practice or act.

One of the factors relied upon by courts is the "express consent" of the parties to contract with the terms contain herein. In *Baer v. Chase*, 392 F.3d 609,616 (3d Cir. 2004) the Third Circuit Court of Appeals explained the difference between implied and express contracts. "Contracts are `express' when the parties state their terms and `implied' when the parties do not state their terms. The distinction is based not on the contracts' legal effect but on the way the parties manifest their mutual assent" *Id.* See also, "There cannot

---

[8] https://www.google.com/search?q=roca+labs&espv=2&source=lnt&tbs=cdr%3A1%2Ccd_min%3A1%2F1%2F2010%2Ccd_max%3A9%2F24%2F2015&tbm= last viewed on March 24, 2017.

be an implied-in-fact contract if there is an express contract that covers the same subject matter." *Id.* at 616-17; see *DeJohn v. The. TV Corp. Intern., et. al.*, 245 F.Supp.2d at 913 (C.D. Ill. 2003) (finding that implied contract claims were precluded where an enforceable express contract, an online agreement, governed the parties' relationship). *Feldman v. Google, Inc.*, supra.

How is it that something can be at the same time expressed contractual consent and deceptive? How can a clause be at once legal under contractual common law and illegal in the eyes of Plaintiff? It cannot be so. Either the laws of the land apply and have always applied as construed by the Courts across America, or each of these decisions made on sound current contact law will be turned on its head by what Plaintiff is attempting to do in this action.

If, in fact, there was a federal law prohibiting this type of language in contracts, then the state courts that have considered the exact same issue being litigated in this Court would only have to point at the federal law in support thereof, and state affirmatively "This is why it is illegal" and nothing else. However, across the land there have been multiple cases on the state appellate and federal level that have been decided in favor of existing contract law – not non-existent agency law - as Plaintiff would have the Court believe. [9]

---

[9] *FreeLife Int'l, Inc. v. Am. Educ. Music Publications Inc.*, 2009 WL 3241795 (D.Ariz. 2009); *Equal Employment Opportunity Commission v. Severn Trent Services, Inc.*, 358 F.3d 438 (7TH Cir. 2004); *Patlovich v. Rudd,* 949 F.Supp. 585, 594-95 (N.D.Ill.1996); *Eichelkraut v. Camp,* 513 S.E.2d 267, 236 Ga. App. 721 (Ct.App.1999); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex.1996); *Trump v. Trump*, 179 A.D.2d 201, 582 N.Y.S.2d 1008 (App. Div. 1992); *Schaller v. Russak*, No. 2:11-cv-59-FtM-38DNF (M.D. Fla. Oct. 11, 2013); *Miles v. Northwestern Mut. Life Ins. Co.,* 677 F. Supp. 2d 1312 (M.D. Fla. 2009)

14

**D.**     **Plaintiff has not shown Defendants violated the FTC Act 15 U.S.C. §**
**45(n) – public policy considerations**

Plaintiff also tries to clumsily cite 45(n) of the FTC Act as a violation for the
non-disparagement clause in Defendants' contracts. 45(n) states in pertinent part
"Commission shall have <u>no</u> <u>authority</u> under this section…to declare unlawful an act…on
the grounds that such act…is unfair, unless the act…causes …substantial injury…which
is not reasonably avoidable by consumers themselves and not outweighed by
countervailing benefits to consumers." 15 U.S.C. § 45(n)(2016).

Basically, this provision states Plaintiff has no authority to proclaim that what
Defendants have done is illegal unless the alleged injury was, 1) substantial, 2) not
reasonably avoidable, and 3) not outweighed by countervailing benefit.

These terms were discussed in the seminal case *FTC v. Sperry & Hutchinson Co.,*
405 U.S. 233, 249 (1972), and also on December 17, 1980 when the FTC - in risk of
losing it funding entirely due to vague and overly aggressive polices - wrote a letter to the
Committee on Commerce, Science and Transportation. This same letter is still posted on
the FTC's website as public reference to these definitions. See, FTC Policy Statement on
Unfairness,

https://www.ftc.gov/public-statements/1980/12/ftc-policy-statement-unfairness.

The Commission at that time, took its cues from *Sperry & Hutchinson*, where  the
court defined the three prongs of § 45(n). First, the FTC stated that "the injury must be
substantial…the Commission is not concerned with trivial or merely speculative harms".

---

It goes further to state that "the Commission will not seek to ban an advertisement merely because it offends the tastes or social beliefs of some viewers…". FTC Policy Statement on Unfairness. ¶10.

In this case, and in particular in Count Three of the Amended Complaint, there is no substantial harm to be found. Plaintiff has concerned itself with "speculative harms", because there was not one instance where the consumer did not contract with Defendants with their eyes wide open. Plaintiff has no authority to prosecute under 45(n) because they have not argued, or provided evidence that the consumer could not reasonably avoid "substantial injury" even if there was one to be had. Just because Plaintiff does not agree with the terms contained in Defendants' contract because it "offends the social beliefs of some viewers", does not equal "substantial injury". *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995). FTC Policy Statement on Unfairness. ¶10.

The second prong states that the injury is "not reasonably avoidable by the consumer". FTC Policy Statement on Unfairness. ¶11. The Committee accepts that the seller has to face many difficulties. It states it will not take action unless "it is injurious in its net effects". If a clause that is referenced multiple times on a website, easily found in a Google search, and part of "clickwrap" as directed in common law, can be found injurious under these standards, what hope does any small business have?

Defendants have done as much as they possibly could to comply with existing law at the time and create a contract as they intended. The consumer was fairly warned, on multiple occasions, and chose to consent to the contract as-is. In all instances, the consumer can "reasonably avoid" the contract by not purchasing the Regimen. The

consumer is told "buyer beware" from the courts for many years. They have also been told many times over to read contracts before entering into them. *Douglas v. Visser*, 295 P. 3d 800 - Wash: Court of Appeals, 1st Div. 2013. *Svendsen v. Stock*, 143 Wash.2d 546, 553, 23 P.3d 455 (2001); *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.,* 162 Wash.2d 59, 83-84, 170 P.3d 10 (2007).

There are other weight loss programs out there. People can join Jenny Craig or Weight Watchers' or take Lipozene; or join their local gym. All these are options to the consumer that is considering purchasing Defendants' Regimen. Plaintiff would have the Court believe that Defendants' website is the only one on the Internet promoting healthy living and weight loss claims. But we all know that is simply not true, and this is why the second prong also fails in Plaintiff's argument.

The third prong states that the injury "must not be outweighed by any offsetting consumer …benefits that the sales practice also produces". FTC Policy Statement on Unfairness. ¶11. Plaintiff does not want the Court to consider the great benefit Defendants have provided to hundreds of consumers through their Regimen. Defendants are is providing a choice and support to the consumers that other programs will not consider. These are people who are at the point of considering a drastic surgery to modify their behaviors and improve their health. The consumer is told on the website from the beginning, that this Regimen is only for "morbidly obese" people. The medical dictionary defines a "morbidly obese" person as one who is 100% over ideal body weight, or having a BMI over 30. http://medical-dictionary.thefreedictionary.com/Morbidly+obese The World Health Organization has stated obesity is now a "worldwide epidemic." Id.

"Morbid obesity" is known to be a factor in type 2 diabetes, infertility, heart failure, breast cancer, and coronary disease. *Id*. Former Surgeon General C. Everett Koop, M.D., labeled obesity "the second leading cause of preventable deaths in the United States." Id.

Plaintiff does not see any "countervailing benefit" to Defendants' actions, nor the Regimen that they offer. However, the benefit is in the consumer getting their life back without having to go under the knife. The benefit comes from the consumer ridding themselves of their very costly monthly prescriptions. The benefit comes from the increase in self-confidence and the steps the consumer takes towards living a healthier lifestyle through the Regimen, support network, and help Defendants' provide. The "countervailing benefit" that Defendants provides is support and a regimen that will help these people gain their lives back again and avoid a costly surgery that may clean out their bank account, force them to delay purchasing a home, or even delay starting a college fund for their kids If only 1% of possible consumers are affected by the non-disparagement clause, and 99% are helped through the Regimen, then the "net effect" and "offsetting consumer benefit" is plain on its face. Therefore, Plaintiff is also unable to substantiate the third prong of § 45(n).

Plaintiff has also contended the Commission "may consider established public policy…(however) public policy considerations **may** **not** serve as a primary basis for such determination." (emphasis added). 15 U.S.C. § 45(n). However, at the time of filing this action, public policy was actually in favor of Defendants, not Plaintiff. For example, would the non-disparagement clause be against public policy if it could be used by a candidate for President of the United States of America? If so, Plaintiff will have to

prosecute President Donald J. Trump next. While gathering personnel for the 2016 Presidential Campaign, then Presidential-Candidate Trump included a 2,271 word non-disparagement agreement for all personnel to his campaign.

This non-disparagement clause was not highlighted as Defendants was, but buried in the website. Additionally, the clause was broad in the extreme, directing all personnel that they could not disparage the Presidential-Candidate, his companies, affiliate companies, his family, their companies, and anyone associated with him in perpetuity. The damages claimed for doing so was $1,000,000.00. https://talk.donaldjtrump.com/User/NonDisclosureAgreement, see also Washington Post, "Trump's adhesion contract from hell", September 3, 2016 by David Post. This is but one example of the multiple instances of the use of non-disparagement clauses in agreements across the country. It is actually part of standard practice and public policy to have one in some employment settlements and in the sale of some businesses. Therefore, Plaintiff fails on all steps for § 45(n) and cannot possibly prosecute under this section of the Act.

From start to finish, it is clear that Plaintiff is playing a bizarre game of "cloak and dagger" with the Court and Congress. It states 15 U.S.C. § 45(a) and(n) is the correct law under which Defendants may be prosecuted at the same time it advises Congress that a brand-new law is needed on the exact same issue. Plaintiff also states Defendants have not complied with existing law, when it is clear they have done so by standing court precedent and current business practices. Plaintiff also tries to prosecute Defendants by stating it has a public policy interest. It provides no evidence supporting that conclusion and cannot possibly state with absolute authority that there is not a "countervailing

benefit" to Defendants' consumers. The law is on the side of Defendants on Count Three of the Amended Complaint. Plaintiff may not like it, but to use its own words, "the Commission will not seek to ban an advertisement merely because it offends the tastes or social beliefs of some viewers…". Maybe it should take its own advice.

## IV.   CONCLUSION

Defendants respectfully request this Court to grant Defendants Motion for Partial Summary Judgment as to Count Three of the Amended Complaint. Further, Defendants request that this Court award Defendants' attorney fees and costs for its defense of Plaintiff's Complaint, as well as provide any further relief that the Court deems necessary.

*/s/ Glenn A. Reid*
GLENN A. REID
Attorney for the Defendants
Florida Bar # 0629898
Post Office Box 950554
Lake Mary, Florida 32795
(386) 235-1920
glenn@thereidlawoffice.com
attorneygreid@gmail.com

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on March 24, 2017, Defendant's Motion for Partial Summary Judgment as to Count Three of the Amended Complaint were electronically filed with the clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record:

Carl H. Settlemyer, III, Esquire
Federal Trade Commission
600 Pennsylvania Avenue, N.W., CC-10528
Washington, D.C. 20580
Electronic Mail: csettlemyer@ftc.gov
Attorney for the Plaintiff

Paul B. Spelman, Esquire
Federal Trade Commission
600 Pennsylvania Avenue, N.W., CC-10528
Washington, D.C. 20580
Electronic Mail: pspelman@ftc.gov
Attorney for the Plaintiff

*/s/ Glenn A. Reid*
GLENN A. REID