UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>            Plaintiff,<br><br>      v.<br><br>ROCA LABS, INC., a corporation; ROCA LABS NUTRACEUTICAL USA, INC., a corporation; MUST CURE OBESITY, CO., a corporation; JURAVIN, INCORPORATED, a corporation; ZERO CALORIE LABS, INC., a corporation; DON JURAVIN, individually and as an officer of Roca Labs, Inc., Roca Labs Nutraceutical USA, Inc., Must Cure Obesity, Co., and Juravin, Incorporated; and GEORGE C. WHITING, individually and as an officer of Roca Labs, Inc., Roca Labs Nutraceutical USA, Inc., and Zero Calorie Labs, Inc.,<br><br>            Defendants. | Case No.  8:15-cv-02231-MSS-TBM |

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS**


**[DISPOSITIVE MOTION]**

# **TABLE OF CONTENTS**

I.   Introduction: The Operative Facts Are Uncontested ......................................................... 1

II.  Counts I and II: Defendants Made False and Unsubstantiated Weight-Loss Claims about
     the Formula and Anti-Cravings ....................................................................................... 2

  A.  Defendants Made the Challenged Weight-Loss Claims ................................................ 2

  B.  Defendants Have Not Refuted Facts Showing That Their Weight-Loss Claims Were
      False and Unsubstantiated .......................................................................................... 4

  C.  There Is No Agency Conflict Over the Substantiation Required ................................. 6

III. Count III: Defendants Fail to Refute the FTC's Factual and Legal Showing .................. 9

IV.  Counts IV, V, and VI: Defendants' Practices Were Injurious........................................ 10

V.   Counts VI and VII: Terms Did Not Cure Deception...................................................... 11

VI.  Full Disgorgement is the Proper Monetary Remedy ...................................................... 12

VII. Conclusion ..................................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Cases**

*Aronberg v. FTC*, 132 F.2d 165 (7th Cir. 1942) ........................................................................ 3

*Bristol-Meyers Co. v. FTC*, 738 F.2d 554 (2d Cir. 1984) ........................................................... 7

*Cable/Home Communication Corporation v. Network Productions, Inc.,* 902 F.2d 829 (11th

    Cir. 1990) ............................................................................................................................ 1

*CFPB v. Frederick J. Hannah & Assocs.*, 114 F. Supp. 3d 1342 (N.D. Ga. 2015) ................ 10

*CFPB v. ITT Educ. Servs., Inc.*, 2015 WL 1013508 (S.D. Ind. Mar. 6, 2015 ........................ 10

*Daniel Chapter One*, 2009 FTC LEXIS 259 (F.T.C. Aug. 5, 2009), *aff'd*, 405 Fed. Appx.

    (D.C. Cir. 2010) ................................................................................................................... 8

*Fodere v. Pablo Lorenzo & Compacstone USA, Inc.*, 09-cv-23120, 2011 U.S. Dist. LEXIS

    10908 (S.D. Fla. Feb. 4, 2011) ........................................................................................... 2

*FTC v. Affiliate Strategies, Inc.*, 849 F. Supp. 2d 1085 (D. Kan. 2011) ................................. 4

*FTC v. Alcoholism Cure Corp.*, 2011 WL 13137951 (M.D. Fla. Sept. 16, 2011) ............. 2, 11

*FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373 (D. Conn. 2009), *aff'd*, 654 F. 3d 359

    (2d Cir. 2011) .................................................................................................................... 14

*FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965) ............................................................... 8

*FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999) .......................................................... 4, 12

*FTC v. Johnson*, 96 F. Supp. 3d 1110 (D. Nev. 2015) ........................................................ 8, 9

*FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068 (N.D. Cal. 2009) ..................................... 2, 3, 11

*FTC v. National Urological Group, Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008), *aff'd,* 356

    Fed. Appx. 358 (11th Cir. 2009) ............................................................................ 3, 6, 7, 14

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010) .................................................................. 10

*FTC v. Pacific Med. Clinics Mgmt., Inc.*, No. 90-1277, U.S. Dist. LEXIS 6247 (S.D. Cal.

　Apr. 10, 1992) .................................................................................................................. 13

*FTC v. Partners in Health Care Ass'n*, 189 F. Supp. 3d 1356 (S.D. Fla. 2016) .............. 12, 13

*FTC v. Peoples Credit First, LLC*, 03-cv-2353, 2005 U.S. Dist. LEXIS 38545 (M.D. Fla.

　Dec. 18, 2005) .................................................................................................................. 1, 4

*FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263 (S.D. Fla. 1999) .......................................... 6

*FTC v. Sterling Drug, Inc.*, 317 F.2d 669 (2d Cir. 1963) .................................................. 3, 4

*FTC v. Tashman*, 318 F.3d 1273 (11th Cir. 2003) ................................................................ 14

*FTC v. Washington Data Res.*, 09-cv-2309, 2011 U.S. Dist. LEXIS 90104, *10-11 (M.D. Fla.

　July 15, 2011) .................................................................................................................. 12

*FTC v. Washington Data Res.*, 856 F. Supp. 2d 1247 (M.D. Fla. 2012), *aff'd*, 704 F.3d 1323,

　(11th Cir. 2013) ............................................................................................................. 4, 11

*FTC v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326-27 (11th Cir. 2013)          12

*FTC v. Wellness Support Network., Inc.*, 10-cv-4879, 2014 U.S. Dist. LEXIS 21449 (N.D.

　Cal. Feb. 19, 2014) ..................................................................................................... 2, 3, 14

*FTC v. Wilcox*, 926 F. Supp. 1091 (S.D. Fla. 1995) ............................................................ 14

*FTC v. Williams, Scott & Assocs.*, 2017 U.S. App. LEXIS 2418 (11th Cir. Feb. 10, 2017) .. 12

*Global Green, Inc. v. SEC*, 631 Fed. Appx. 868 (11th Cir. 2015) ......................................... 10

*Gordon v. Watson*, 622 F.2d 120 (5th Cir. 1980) ................................................................... 2

*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000) ........................................................ 12

*Neff v. American Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995) ....................................... 2

iii

*Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999)................................................................. 7,8

*POM Wonderful, LLC*, Docket No. 9344, 2013 FTC LEXIS 6 (F.T.C. Jan. 10, 2013), *aff'd*,

    777 F. 3d 478 (D.C. Cir. 2015) ............................................................................................ 8

*Porter & Dietsch, Inc. v. FTC*, 605 F.2d 294 (7th Cir. 1979) ................................................. 15

*Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223 (11th Cir. 2009).................................. 12

*Reilly v. Pinkus*, 338 U.S. 269 (1949).................................................................................... 15

*Stauffer Labs., Inc. v. FTC*, 343 F.2d 75 (9th Cir. 1965).................................................. 14, 15

*West v. Higgins*, 346 Fed. Appx. 423 (11th Cir. 2009).......................................................... 1

## Policy

*FTC Policy Statement on Deception*..................................................................................... 10

*FTC Policy Statement on Unfairness*.................................................................................... 9

## Guidelines

Federal Trade Commission, *.Com Disclosures: How to Make Effective Disclosures in Digital*

    *Advertising* ....................................................................................................................... 7

Federal Trade Commission, *Dietary Supplements: An Advertising Guide for Industry*........... 7

Food and Drug Administration, *Guidance for Industry:  Substantiation for Dietary*

    *Supplement Claims Made Under Section 403(r) (6) of the Federal Food, Drug, and*

    *Cosmetic Act* ..................................................................................................................... 7

## I.     Introduction: The Operative Facts Are Uncontested

Defendants do not contest the operative facts of this case. In their opposition [Dkt. 167] to the FTC's summary judgment motion [Dkt. 141], they present no evidence to refute the FTC's showing as to their:  online ad, website, and video content; ad dissemination and expenditures; product ingredients; support they possessed for their claims; "qualification" and order process; privacy representations; product pricing; "Terms" and packaging inserts; threats and lawsuits against customers; and disclosure of customer information. They do not contest the duration of the challenged conduct; number of purchasers; actual receipts; or their respective roles in, or Juravin's control of, the conduct. Viewing these undisputed, operative facts, and the reasonable inferences therefrom, through the "prism of the substantive evidentiary burden," it is clear that there are no genuine issues of material fact warranting trial. *Cable/Home Commun. Corp. v. Network Prods.*, 902 F.2d 829, 840 (11th Cir. 1990).

Nor do Defendants designate other specific facts showing that there is an issue for trial (*FTC v. Peoples Credit First, LLC*, 03-cv-2353, 2005 U.S. Dist. LEXIS 38545, *18-19 (M.D. Fla. Dec. 18, 2005)). Many factual assertions in the opposition are attorney argument lacking record evidence,[1] or are not properly supported with expert testimony.[2] Such assertions create no dispute of material fact. *See West v. Higgins*, 346 Fed. Appx. 423, 425-26 (11th Cir. 2009) (neither unsworn nor conclusory statements from litigants are competent

---

[1] See, e.g., PageID 6690-91, 6704 (product effect and benefits); 6698, 6728 (compliance efforts); 6708 (editorializing about studies); 6709, 6712 (product "saves lives"); 6721-22 (negative reviews); 6725 (discussion of customers who "did pay full price"); 6727 (discussion of BBB complaints).

[2] PageID 6703, 6727 (issues with bariatric surgery); 6706 (discussing studies Defendants relied on).

1

evidence and should not be considered in ruling on summary judgment), citing *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)).[3] Defendants' assertions about customer experiences are not presented in admissible form,[4] and are otherwise irrelevant to the issues for which they are cited (as discussed below). Defendants attempt to evade summary judgment by extracting specific words and phrases in their advertising and order process from their contexts to generate illusory factual disputes. Their purported fact disputes and specious legal arguments,[5] however, fail as to each complaint count and the requested relief.

## II.   Counts I and II: Defendants Made False and Unsubstantiated Weight-Loss Claims about the Formula and Anti-Cravings

### A.   Defendants Made the Challenged Weight-Loss Claims

Defendants' assertions [PageID 6702-03; Dkt. 143, PageID 5440] that they did not make the challenged claims about the Formula and Anti-Cravings,[6] but rather sold a weight-loss "Regimen," of which their products were just a part, do not raise a dispute of material

---

[3] *See also FTC v. Wellness Support Ntwk., Inc.*, 10-cv-4879, 2014 U.S. Dist. LEXIS 21449, *55 (N.D. Cal. Feb. 19, 2014) (counsel's arguments as to how studies supported claims insufficient to dispute summary judgment evidence); *FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068, 1075 (N.D. Cal. 2009) (conclusory, speculative testimony in moving papers is insufficient to raise genuine issues of fact).

[4] *See FTC v. Alcoholism Cure Corp.*, 2011 WL 13137951, *30 (M.D. Fla. Sept. 16, 2011) (unsworn, anonymous testimonials of "satisfied customers" from defendants' websites offered for the truth of the assertion that defendants helped "cure" them held to be inadmissible hearsay).

[5] Disputed issues that are purely legal are appropriately resolved through summary judgment. *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir. 1995); *Fodere v. Pablo Lorenzo & Compacstone USA, Inc.*, 09-cv-23120, 2011 U.S. Dist. LEXIS 10908, *13 (S.D. Fla. Feb. 4, 2011).

[6] The challenged weight-loss claims are enumerated in Counts I and II of the FTC's First Amended Complaint. Dkt. 48, PageID 1684-85. The FTC's evidence that the claims were made is discussed in its summary judgment motion. Dtk. 141, PageID 2947-52.

fact. Defendants offer an erroneous interpretation of the ads, but do not dispute the ads' content. Nor can they. "The meaning of an advertisement, the claims or net impressions communicated to reasonable consumers, is fundamentally a question of fact. . . . [that] may be resolved by the terms of the advertisement itself. . . ." *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008), *aff'd,* 356 Fed. Appx. 358 (11th Cir. 2009) ("*NUG*"). At summary judgment, this Court can determine for itself whether Defendants' ads give the net impression that particular claims are made. *See, e.g.*, *Wellness*, 2014 U.S. Dist. LEXIS 21449 at *38-49; *NUG*, 645 F. Supp. 2d at 1187, 1191-1202; *Medlab*, 615 F. Supp. 2d at 1076-79. The net impression is clear. Despite occasional use of the term "regimen," Defendants' ads overwhelmingly portrayed the supplements as the primary cause of weight loss. See Dkt. 141, PageID 2947-52.[7] See also PX27 hereto, Att. A ("What Is the Formula?" video plays under webpage heading "How does Roca Labs regimen work?").

Defendants' assertion that they sold a "regimen," however, isolates words and phrases apart from their context. Such "disputatious dissection"[8] is contrary to well-established case law. *See, e.g.*, *FTC v. Washington Data Res.*, 856 F. Supp. 2d 1247, 1273

---

[7] As noted in the FTC's opposition to Defendants' summary judgment motion, Defendants' key personnel during the years in question understood the "regimen" to be co-extensive with ingesting the Formula. See Dkt. 160, PageID 6244 and testimony cited therein.

[8] *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963) (court must consider "the advertisement in its entirety" and not "engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately. 'The buying public does not ordinarily carefully study or weigh each word in an advertisement. The ultimate impression upon the mind of the reader arises from the sum total of not only what is said but also of all that is reasonably implied," quoting *Aronberg v. FTC*, 132 F.2d 165, 167 (7th Cir. 1942)).

(M.D. Fla. 2012), *aff'd*, 704 F.3d 1323 (11th Cir. 2013); *FTC v. Affiliate Strategies, Inc.*, 849 F. Supp. 2d 1085, 1106 (D. Kan. 2011); *Peoples Credit*, 2005 U.S. Dist. LEXIS 38545 at *23-24. *See also Sterling Drug*, 317 F.2d at 675 (ad, as a whole, may be completely misleading although every sentence separately considered is literally true). Even if some consumers did construe the ads in the way Defendants now assert, Defendants are still liable for the false and misleading meanings they conveyed to other reasonable consumers. *See Wash. Data*, 856 F. Supp. 2d at 1272 (when seller's representation conveys more than one meaning to reasonable consumers, one of which is false, seller is liable for the misleading interpretation); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1045-46 (C.D. Cal. 1999) (advertising capable of being interpreted in a misleading way should be construed against the advertiser).

### B.      Defendants Have Not Refuted Facts Showing That Their Weight-Loss Claims Were False and Unsubstantiated

Defendants' expert, Dr. Hoffman (whose testimony the FTC has moved to exclude [Dkt. 140]), did not opine in his report as to whether the five challenged weight-loss claims [Dkt. 141-3, PageID 3007] are adequately substantiated, and Defendants merely allude to his report in their opposition. They point to no studies of their supposed "program" of dietary restrictions, exercise, and "coaching," and Dr. Hoffman's testimony betrays his uncertainty as to what it supposedly involves. See Dkt. 140, PageID 2625-26 and testimony cited therein.

Defendants' scattershot arguments fail to create issues of fact, and the record refutes them. They assert [PageID 6702] that the FTC has offered no evidence to contradict Dr. Hoffman's testimony on the efficacy of the regimen. In fact, Dr. Heysmfield stated in his report [Dkt. 141-3, PageID 3032-33 ¶66] that he was unaware of clinical trials that tested whether abiding by the instructions on the Roca Labs website or following the "rules" for the

4

"regimen" would lead to dramatic weight loss, whether alone or when combined with Roca Labs products or ingredients. He added [Dkt. 141-3, PageID 3033 ¶67] that the challenged claims are not credible because, to lose the claimed amount of weight, individuals would need to reduce their food intake to levels where, if they did it long enough, they might die.

Defendants also assert that the FTC has not challenged the validity or reliability of the studies cited in Dr. Hoffman's report. PageID 6701. Dr. Heymsfield, in fact, did question the studies' validity and reliability. See, e.g., Dkt. 141-3, PageID 3021-23 ¶¶41-43 (criticizing Walsh study), Dkt. 141-3, PageID 3024-27 ¶¶49-51 (criticizing Birketvedt, Keithley and Reffo studies). Moreover, the "validity" of those studies is irrelevant:  Dr. Heymsfield also opined that the studies did not show that the ingredients caused the amount of weight loss Defendants claimed. Dr. Hoffman essentially concurred, agreeing that none of the studies showed that Roca Labs products caused a typical user to lose substantial amounts of weight.[9] Thus, the studies create no issue of fact.

Contrary to Defendants' assertions [PageID 6708], the FTC does not set the amount of substantiation required for objective advertising claims. The requirements, as Defendants

---

[9] Dkt 141-5, PageID 3163(35:17-19). Defendants note, without context [PageID 6705], that Dr. Hoffman opined that some evidence supports the "possibility" that someone on the "regimen" could lose substantial amounts of weight. He cautioned, that this evidence only applied to the ingredient – not the Roca Labs products themselves – and only for:  people on a 1200-calorie-a-day diet, and outliers within "95% confidence intervals" (in other words, people whose results were on the outer extreme and lost two or three times more than the norm). *Id.* at PageID 3162(31:23-32:10). Dr. Hoffman's Report and testimony also provide no support for other challenged claims that Dr. Heymsfield evaluated (e.g., that use of Roca Labs products is scientifically proven to have a ninety-percent success rate in forcing users to halve their food intake and cause substantial weight loss).

note [PageID 6700], are set by what experts in the relevant field believe is necessary to substantiate the claims an advertiser chooses to make. *See also NUG*, 645, F. Supp. 2d at 1186-87 (evidence required to substantiate health-related claims is context-specific, but standard by which the issue is resolved is clear; different claims require different substantiation). Defendants' real problem is that they have put forth no expert evidence showing that the challenged claims are substantiated, and their own expert acknowledged as much. Both sides' experts agree that human trials that are placebo-controlled, double blind when possible, and on the combination product itself, are necessary to establish that a product causes weight loss [Dkt. 141, PageID 2961-62]. *Cf. NUG*, 645 F. Supp. 2d at 1201-03 (defendants did not counter expert testimony on substantiation required for weight-loss claims; clinical trial on product would be required and none was performed). Both experts also agree that anecdotal reports (like the hearsay accounts presented in the opposition [PageID 6690, 6707, 6726-28, 6731-7445]) are not reliable scientific evidence of a product's effect, no matter how numerous. Dkt. 141, PageID 2964.[10]

**C.      There Is No Agency Conflict Over the Substantiation Required**

Defendants also incorrectly assert that there are legal conflicts between the FTC and the FDA,[11] and among FTC policies [PageID 6695-6701] on substantiation. First, this case is

---

[10] *See also NUG*, 645 F. Supp. 2d at 1202 (expert testimony that anecdotal evidence insufficient to prove product efficacy); *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1273, 1274 (S.D. Fla. 1999) (anecdotal information from consumer witnesses not proof of weight-loss claims for supplements; scientific validation of product claims required double-blind study of combined ingredients).

[11] The *NUG* court explains the responsibilities of the FTC and FDA as to dietary supplements. 645 F. Supp. 2d at 1177 n.2 (FTC has primary jurisdiction over advertising, FDA over labels).

brought under the FTC Act. FDA's laws are not relevant to liability. *See Bristol-Meyers Co. v. FTC*, 738 F.2d 554, 559 (2d Cir. 1984) (FDA's different regulatory scheme did not govern FTC Act Section 5 and 12 case). Second, even if they were at issue, FTC and FDA guidance on substantiation for dietary supplement advertising claims has been consistent, and harmonious, for decades.[12] This is why Defendants cannot articulate either any conflict between the agency guidance provided as it relates to their claims or products, or what bearing FTC comments in an FDA rulemaking proceeding on homeopathic medicines have on their weight-loss claims.[13] Instead, they send the Court on a "snipe hunt" through the entire FDA website to find support for their assertions. *Cf. NUG*, 645 F. Supp. 2d at 1203 (not the court's role to pinpoint defendants' evidence for them).

Defendants also suggest that the FTC's advertising substantiation policy – and its requirement for competent and reliable scientific evidence ("CRSE") in this case – is arbitrary and capricious. PageID 6704-05. Relying on *Pearson v. Shalala*, 164 F.3d 650

---

[12] *Compare* Federal Trade Comm'n, *Dietary Supplements: An Advertising Guide for Industry*, available at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry (section I, describing FTC relationship to FDA on dietary supplement advertising, and section II.B on substantiating claims) *with* Food and Drug Admin., *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r) (6) of the Federal Food, Drug, and Cosmetic Act*, available at https://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/dietarysupplements/ucm073200.htm (sections I.B. and II.A, discussing competent and reliable scientific evidence standard as used by the FTC).

[13] Defendants similarly fail to state what conflict exists between the FTC's dietary supplement advertising guidance and its guidance about presenting advertising claims online. *See* Federal Trade Comm'n, *.Com Disclosures: How to Make Effective Disclosures in Digital Advertising*, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf

(D.C. Cir. 1999), Defendants suggest that case-by-case application of the doctrine to ads already in the marketplace is akin to a condemned FDA pre-market clearance procedure that effectively banned certain health claims. In quoting *Pearson*, Defendants imply that the FTC's CRSE standard amounts to "saying no without explanation." *Pearson* is inapposite here. Rather than using a purportedly vague standard, the FTC asks the Court to apply its long-standing CRSE standard in a "purely adjudicatory challenge to specific deceptive representations." *Daniel Chapter One*, 2009 FTC LEXIS 259, *61 (F.T.C. Aug. 5, 2009), *aff'd*, 405 Fed. Appx. 505, 506 (D.C. Cir. 2010). That standard, which in context may require placebo-controlled "studies on humans, is neither 'unconstitutionally vague' nor 'impossibly high.'" *Id*. at *61-62 (citation omitted).

Notice of the CRSE standard has been provided for decades. The FTC's "policy statements provide support for the principle that determining what constitutes sufficient substantiation for particular claims is a fact-based analysis that rests in large part on scientific expert opinion." *POM Wonderful, LLC*, Docket No. 9344, 2013 FTC LEXIS 6, *141 (F.T.C. Jan. 10, 2013), *aff'd*, 777 F. 3d 478 (D.C. Cir. 2015). A number of cases and FTC decisions reiterate that principle. *Id*. at *143. Counsel is aware of no court that has ruled that the CRSE standard as applied to health claims is arbitrary and capricious. Indeed, courts recognize a necessary degree of flexibility or generality in FTC deception standards, as they are "'to be defined with particularity by the myriad of cases from the field of business.'" *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-85 (1965) (citation omitted); *see, e.g.*, *FTC v.*

*Johnson*, 96 F. Supp. 3d 1110, 1142 (D. Nev. 2015) (rejecting defendants' suggestion that a highly specific rule must notify them of a deception standard).[14]

### III.     Count III: Defendants Fail to Refute the FTC's Factual and Legal Showing

Defendants present no evidence to counter the FTC's showing of substantial injury from their gag clause practices. Dr. Pavlou's report shows that financial injury to consumers likely would result from the loss of marketplace information. This harm is not "emotional" or "subjective."[15] Consumers would be more likely to buy products they might have avoided. Dkt. 141, PageID 2967-68. Juravin's testimony that negative reviews have adverse financial impact on the business [Dkt. 141, PageID 2968 n.26] corroborates Dr. Pavlou's opinion.

Defendants further claim [PageID 6721-22] that the existence of negative online reviews of Roca Labs shows that the injury is reasonably avoidable. However, the fact that some individuals resisted the gag clause practices would not make the injury reasonably avoidable as information withheld by dissatisfied consumers who did not take that risk.

Defendants have introduced no evidence of any countervailing benefits to consumers or commerce from their gag clause practices; thus, there is nothing for the Court to weigh against the substantial injury. *See* PageID 6722-23. No cost-benefit analysis is possible when there is no evidence of benefits, and Defendants' failure to provide such evidence supports a

---

[14] These principles also apply to Count VI, concerning Defendants' privacy promises. Defendants' cited cases for "fair notice" [PageID 6717] are similarly inapposite.

[15] "Emotional impact and other more subjective types of harm, on the other hand, will not ordinarily make a practice unfair. Thus, for example, the Commission will not seek to ban an advertisement merely because it offends the tastes or social beliefs of some viewers[.]" *FTC Policy Statement on Unfairness*, appended to *International Harvester Co.*, 104 F.T.C. 949, 1070, 1073 (1984). The word "intangible" does not appear in the Policy Statement.

grant of summary judgment against them. *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) (summary judgment against defendant whose only evidence of countervailing benefit was self-serving, uncorroborated declaration).

Defendants also suggest that Section 5 cannot be applied to their gag clause practices because they lacked "fair notice." PageID 6723-24. The FTC has already refuted this argument and a similar one about an "unexplained inconsistency" with the Consumer Review Fairness Act. PageID 6252. The FTC incorporates its response by reference [Dkt. 160, PageID 6250-52]. Furthermore, the "fair notice doctrine," is applied only in a "'very limited set of cases.'" *Global Green, Inc. v. SEC*, 631 Fed. Appx. 868, 870 (11th Cir. 2015) (citation omitted). And counsel is aware of no court extending it to an FTC unfairness case. *Cf. CFPB v. ITT Educ. Servs., Inc.*, 2015 WL 1013508, *14-18 (S.D. Ind. Mar. 6, 2015) (Defendants' "contention that the term 'unfair . . . act or practice' is unconstitutionally vague falters in the face of a century's worth of legislative and judicial guidance [under the FTC Act] establishing and refining the term's meaning."); *see also CFPB v. Frederick J. Hannah & Assocs.*, 114 F. Supp. 3d 1342, 1368-69 (N.D. Ga. 2015) (citing *ITT Educ. Serv.*).

## IV.     Counts IV, V, and VI: Defendants' Practices Were Injurious

Defendants argue that their deceptive endorsement practices and privacy promise did not injure consumers. *See* PageID 6714, 6716, 6718. However, "[i]njury exists if consumers would have chosen differently but for the deception. If different choices are likely, the claim is material, and injury is likely as well." *FTC Policy Statement on Deception*, appended to *Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 174, 183 (1984). Many consumers would likely rely less on Defendants' "informational" website, paid testimonials, and forum posts if they knew

the financial connections between the information sources and the product seller. Many consumers would also likely not choose to submit private health information to take a $480 chance on an online dietary supplement seller if they were not promised the information would not be shared, but instead were told that the information could be used against them in payment disputes and filed on public court dockets. *Cf. Alcoholism Cure*, 2011 WL 13137951 at *51-53 (seller of alcoholism "cure" promised to keep personal health information confidential yet shared it with companies in chargeback disputes, with BBB, and in lawsuits; privacy representations held material to consumers' decision to purchase). Thus, the conduct was injurious to consumers.[16]

## V.      Counts VI and VII: Terms Did Not Cure Deception

Defendants attempt to hide behind a hyperlink as a defense for their pre-purchase privacy misrepresentations and their post-purchase misrepresentations that consumers "agreed" to pay a $1580 "full price" should they breach the Terms. They contend [PageID 6709-12, 6717-18] that their inclusion of contrary material information in their hyperlinked clickwrap Terms immunizes them from liability under Section 5 of the FTC Act. This is not the law. *See* Dkt. 141, PageID 2978-79. *See also Wash. Data*, 856 F. Supp. 2d at 1274-75 (disclaimer buried in agreement received late in purchase process inadequate to dispel deceptive net impression); *Medlab*, 615 F. Supp. 2d at 1077 (defendants did not inoculate

---

[16] Defendants assert that there are disputes as to whether some of the "satisfied consumers" in videos were paid contractors [PageID 6713], and whether customers' qualification submissions were otherwise publicly available [PageID 6715]. The record shows that they are mistaken. See Dkt. 141, PageID 2953 (Hensley's video made while working for Defendants); and PageID 2954-55, 2965-66 (health and sensitive personal information submitted by customers and shared by Defendants).

themselves from liability for deceptive statements in the body of ad text by adding qualifying statements to the foot of the ads; qualifying statements did not correct the message of the ads); *Gill*, 71 F. Supp. 2d at 1044 (disclaimer excluded from initial representation but found on contract consumers signed insufficiently dispelled initial deception). Defendants present no evidence that disclosures in their hyperlinked Terms dispelled their misrepresentations.

## VI.     Full Disgorgement is the Proper Monetary Remedy

Defendants suggest, relying on inapplicable case law and without argument, that damages, not disgorgement, should provide the monetary remedy here. PageID 6725. This flies in the face of binding precedent reaffirmed this year. *FTC v. Williams, Scott & Assocs.*, 2017 U.S. App. LEXIS 2418, *6 (11th Cir. Feb. 10, 2017) (per curiam) (applying disgorgement).[17] The proper monetary remedy is disgorgement, and the proper measure of disgorgement is the amount of Defendants' unjust gains, i.e., gross receipts minus refunds. *FTC v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326-27 (11th Cir. 2013).

To obtain redress on behalf of consumers the FTC must show consumer injury, not individual consumer reliance. A presumption of actual reliance arises once the FTC has proven that the defendants made widely disseminated, material misrepresentations, and that consumers purchased their products. *FTC v. Partners in Health Care Ass'n*, 189 F. Supp. 3d 1356, 1370 (S.D. Fla. 2016), citing *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir.

---

[17] *See also FTC v. Washington Data Res.*, 09-cv-2309, 2011 U.S. Dist. LEXIS 90104, *10-11 (M.D. Fla. July 15, 2011) (distinguishing *Proudfoot Consulting Co. v. Gordon,* 576 F.3d 1223 (11th Cir. 2009)). Defendants' cite to *Proudfoot* for a non sequitur: "This is not the only time this Circuit has limited the disgorgement requests of the FTC." PageID 6725. *Proudfoot*, a private contract dispute, has nothing to do with the FTC or the issues here.

2000). The FTC has shown all elements necessary to support an award of $25,246,000 for

consumer redress. The evidence shows that Defendants began making deceptive weight-loss

claims in their websites and videos at least as early as January 2011 and continued at least

until late September 2015. Dkt. 141, PageID 2951. Substantially all 50,000-60,000

purchasers bought Roca Labs products through Defendants' websites. Dkt. 141, PageID

2948, 2960. Thus, all purchasers were exposed to these material misrepresentations, and were

likely exposed to Defendants' $12 million search and social media ad campaign. Dkt. 141,

PageID 2947-48.[18] Defendants' actual receipts from Roca Labs product sales for the relevant

period were at least $25,246,000. Dkt. 141, PageID 2960.[19] This figure reasonably

approximates the amount of customers' net losses. *See Partners*, 189 F. Supp. 2d at 1370.

Moreover, Defendants present no basis to reduce this amount to reflect satisfied

customers or reorders. *See FTC v. Pacific Med. Clinics Mgmt., Inc.*, No. 90-1277, 1992 U.S.

Dist. LEXIS 6247, *12-13 (S.D. Cal. Apr. 10, 1992) (there is injury from false ads even if

consumer is satisfied and lost the weight defendant claimed; none got what was promised or

what they bargained for; "Instead, these individuals lost weight because they were put on a

rigorous low-calorie diet, which is not what they were paying defendants to do."). Reorders

do not necessarily imply that those consumers did not rely on the advertisements. *See*

---

[18] Defendants themselves refer to "the pervasive nature of their online advertisements." PageID 6709.

[19] Cited materials include requests for admissions on 2011-2015 actual receipts and testimony on 2014 receipts. See also PX28 hereto (153:1-154:6; 154:19-24; 167:2-168:9; 176:22-177:15) and Dkt. 141-6, PageID 3179(34:12-36:23) (Defendants' testimony on 2011, 2012, 2013, and 2015 gross receipts from Roca Labs product sales). Defendants designated the exhibits referenced in this testimony as "confidential," but the FTC can file them under seal, if the Court requests.

*Wellness*, 2014 U.S. Dist. LEXIS at *67-69 (reorders not excluded from monetary award); *NUG*, 645 F. Supp. 2d at 1213 (same); *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 386 (D. Conn. 2009) (consumers may have reordered weight loss aide either because they were satisfied, or had not yet achieved the results promised), *aff'd*, 654 F.3d 359 (2d Cir. 2011). Defendants have submitted no affirmative, admissible evidence that customers who reordered did not rely, at least in part, on the advertising; thus, the restitution amount should include all sales, even reorders. *Wellness*, 2014 U.S. Dist. LEXIS at *69; *see also NUG*, 645 F. Supp. 2d at 1213 (no evidence of what actually influenced the customers' decisions to reorder, only defendants' speculation); *Bronson*, 674 F. Supp. 2d at 386 (same).[20]

## VII.    Conclusion

Defendants assert that they are "not business savvy" and are in a "new and rapidly changing industry." PageID 6698, 6729.[21] There is, however, nothing fundamentally new about Defendants' deception. Their claim that they sold Roca Labs products as part of an effective weight-loss "regimen" – while making no claim about the efficacy of the products – is vintage, scammer sophistry. *See, e.g.*, *Stauffer Labs., Inc. v. FTC*, 343 F.2d 75, 76-79, 82-83 (9th Cir. 1965) (weight-loss claims about a $300 "Magic Couch," sold as part of a "plan" that included a low-calorie diet, were deceptive; weight reduction stemmed from the diet but ads led consumers to believe that the vibrating couch was "of value" in causing weight loss).

---

[20] Nor is there a basis to limit redress to complaining consumers. *See, e.g.*, *FTC v. Wilcox*, 926 F. Supp. 1091, 1105 (S.D. Fla. 1995) (collecting cases).

[21] *Cf. FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003) (no "'new business' immunity from FTC Act).

As the *Stauffer Labs* court observed: "[S]omething worthless has been packaged with something effective. [T]he seller cannot with impunity advertise that the worthless article is effective to produce certain results." *Id.* at 79.[22] This type of advertising is how Defendants generated $25 million in sales over four years from tens of thousands of consumers who each paid hundreds of dollars for fiber supplements touted as an extraordinary weight loss product. In so doing, Defendants violated Sections 5 and 12 of the FTC Act, and should be held accountable, ordered to pay full consumer redress, and enjoined from future violations.

Respectfully submitted,

Dated:  May 22, 2017

*/s/ Carl H. Settlemyer, III*
CARL H. SETTLEMYER, III (Trial Counsel)
PAUL B. SPELMAN
MICHAEL J. DAVIS
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Drop CC-10528
Washington, DC 20580
(202) 326-2019, -2487, -2458 (Tel.)
(202) 326-3259 (Fax)
csettlemyer@ftc.gov,  pspelman@ftc.gov,
mdavis@ftc.gov

Attorneys for Plaintiff Federal Trade Commission

---

[22] *See also Porter & Dietsch, Inc. v. FTC*, 605 F.2d 294, 301 (7th Cir. 1979) (weight-loss tablets sold with an "eating plan"; tablets would not reduce weight without "severely restricted" diet); *Reilly v. Pinkus*, 338 U.S. 269, 271-72 (1949) ("Kelp-I-Dine" found valueless as weight reducer; any efficacy lay in diet recommendations in "Reducing Plan").

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on this 22nd day of May 2017, I electronically filed the foregoing

"**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR**

**SUMMARY JUDGMENT AGAINST ALL DEFENDANTS**" with the Clerk of the Court

by using the CM/ECF filing system, and this document will be served electronically through

same to counsel for all parties of record.

<u>s/*Carl H. Settlemyer, III*</u>
Attorney

16