UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>               Plaintiff,<br><br>               v.<br><br>ROCA LABS, INC., a corporation; ROCA LABS NUTRACEUTICAL USA, INC., a corporation; MUST CURE OBESITY, CO., a corporation; JURAVIN, INCORPORATED, a corporation; ZERO CALORIE LABS, INC., a corporation; DON JURAVIN, individually and as an officer of Roca Labs, Inc., Roca Labs Nutraceutical USA, Inc., Must Cure Obesity, Co., and Juravin, Incorporated; and GEORGE C. WHITING, individually and as an officer of Roca Labs, Inc., Roca Labs Nutraceutical USA, Inc., and Zero Calorie Labs, Inc.,<br><br>               Defendants. | Case No.  8:15-cv-02231-MSS-TBM |

**PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE SALE OF FROZEN ASSETS (SPECIFICALLY A 2014 MERCEDES-BENZ)**

The Court should deny Defendants' Motion for Entry of an Order Authorizing the Sale of Frozen Assets (Dkt. 180).[1] It is riddled with material omissions and misstatements that are plainly at odds with Defendants' previous representations, as well as new documents the FTC has obtained from the Mercedes dealership that dealt with Juravin regarding the vehicles at issue. The most notable omission is that Defendants already sold the frozen 2014 Mercedes SL550 convertible (the "SL550") in May 2017 and thus are asking the Court to

---

[1] Defendants Don Juravin ("Juravin") and Juravin, Incorporated filed the Motion. For brevity, the FTC will refer to the parties filing the motion as "Defendants."

1

approve the sale retroactively. Defendants have apparently decided that it is easier to get forgiveness than permission. The circumstances, discussed below, not only support an order denying the Motion and requiring additional equity from Defendants' vehicle sales be frozen in the Mercedes dealer's account or in their attorney's trust account. They also suggest that the Court should issue an order to show cause why Juravin should not be held in contempt of both the Stipulated Preliminary Injunction Freezing Assets ("Stipulated Asset Freeze PI") (Dkt. 90) entered on September 13, 2016 and the Preliminary Injunction entered on October 29, 2015 (Dkt. 38).

## I. Background: Defendants Seek Retroactive Approval of their Sales of Frozen Cars

In their Motion, Defendants, neglect to discuss the Stipulated Asset Freeze PI from which they again seek relief,[2] distort the facts giving rise to the Motion, and notably fail to swear to the assertions they make. The net impression of their Motion is highly misleading. A fuller view of the material facts and sequence of events shows that Defendants' depiction is unreliable and disingenuous, at best. Set forth below are: a detailed discussion of the Court orders restricting Defendants' disposition of assets; a more comprehensive account than Defendants presented of communications between counsel and of discovery relating to the sale of the SL550; and a chronological summary of what documents produced by the Mercedes dealer reveal about Defendants' actual transactions relating to the frozen SL550 and 2016 Kia Sedona.

---

[2] The Stipulated Asset Freeze PI applies to all Defendants except George Whiting. On April 7, 2017, the Court denied (Dkt. 152) Defendants' October 2016 motion (Dkt. 94) for release of frozen funds to pay attorney fees. On April 13, 2017, the Court denied (Dkt. 155) Defendants' March 2017 motion (Dkt. 115) to vacate the Stipulated Asset Freeze PI.

### A. Orders Limiting Defendants' Sale and Disposition of Assets

Since this case began, Defendants have stipulated to, and the Court has entered, orders that restrict Defendants' disposition of their assets to preserve such assets for possible restitution to injured consumers. In response to the FTC's September 24, 2015 Motion for Noticed Temporary Restraining Order (Dkt. 6), Defendants stipulated to a Temporary Restraining Order (TRO) that the Court entered on September 29, 2015 (Dkt. 13). Defendants then largely stipulated to the Preliminary Injunction the Court entered on October 29, 2015 ("October 2015 PI") (Dkt. 38), which supplanted the TRO. Both orders enjoined Defendants from, among other things, selling, transferring, liquidating, dissipating, or otherwise disposing of their assets except for "those assets that are used for actual, ordinary, and necessary business or living expenses that Defendants reasonably incur, including reasonable legal expenses." Dkt. 13, PageID 1045-55; Dkt. 38, PageID 1575. The October 2015 PI also required Defendants to provide a monthly accounting of their income and expenditures.[3]

The FTC learned in the summer of 2016 that Defendant Juravin attempted to circumvent that order's asset preservation requirements by: (1) transferring hundreds of thousands of dollars to a sham entity, Jugaad Co., that he directed his subordinate, Jenna Antico, to set up in her name; (2) directing Ms. Antico to create fictitious invoices for the money; (3) attempting to fraudulently transfer ownership of the SL550 to Ms. Antico with the intention of reclaiming it at a later date; and (4) trying to get Ms. Antico to sign a

---

[3] "For the duration of this Order, Defendants shall create and maintain a monthly balance sheet and accounting of any income and any withdrawal, transfer, encumbrance, or other dissipation of assets for actual, ordinary, and necessary business or living expenses. . . ." Dkt. 38, PageID 1575.

fraudulent $1 million promissory note. The FTC filed a motion seeking temporary relief and modifying the PI to impose an asset freeze, with a declaration from Ms. Antico. Dkt. 69.[4]

Following that motion, Defendants stipulated to a Temporary Restraining Order freezing assets held in Jugaad Co. accounts and the Court entered that order on August 22, 2016. Dkt. 75. Defendants (excluding Defendant George Whiting) then stipulated to the September 13, 2016 Stipulated Asset Freeze PI which, with a few exceptions, froze Defendants' assets existing at the time, including their vehicles. Dkt. 90, PageID 1961-63.[5] As Juravin testified during his September 9, 2016 asset deposition, these vehicles consisted of the SL550, a 2014 Jeep Wrangler Unlimited Sport ("Jeep"), and a 2016 Kia Sedona SXL ("Kia"). See **Exhibit A** (Juravin Sept. 9, 2016 deposition Tr. 20:1 – 22:9; 53:19 – 54:14; 73:7-11). The Stipulated Asset Freeze PI also requires that Defendants continue to comply with all provisions of the October 2015 PI. Dkt. 90, PageID 1970-71.

### B. In Communications with the FTC, Defendants Misrepresented the Status of Their Vehicles

Defendants' current Motion indicates, without expressly saying so, that they want to sell the SL550 and the Kia and acquire a brand new 2018 Mercedes GLS550 at the sales price of $88,655, with payments exceeding $1000 per month over five years. Dkt. 180-1, PageID 7552, 7558. Prior to their Motion, Defendants had not advised the FTC of plans to

---

[4] These circumstances are also discussed in the April 13, 2017 order (Dkt. 155) denying Defendants' motion to vacate the Stipulated Asset Freeze PI.

[5] The Court was authorized to enter the Stipulated Asset Freeze PI to preserve the possibility of monetary relief for consumers. *See, e.g., FTC v. IAB Mktg. Assoc., LP*, 746 F.3d 1228, 1234-35 (11th Cir. 2014) (affirming preliminary injunction freezing assets); *see also* Dkt. 152, PageID 5681 (order denying Defendants' motion to release frozen funds).

sell the Kia or to acquire a new Mercedes GLS550.[6] As described below, however, they had engaged in efforts since at least May 2017 to sell the SL550.

A third party advised FTC counsel in May 2017 that the SL550 had been towed from Juravin's home. **Exhibit B** (Settlemyer Declaration) ¶5. The FTC also learned in May that one of Defendants' former law firms had obtained judgments against Defendants and put liens on Defendants' SL550, Kia, and Jeep in April. See **Exhibit B** ¶6, Att. 1, at 1-3.[7]

To learn more about status of the SL550, the FTC served interrogatories on Juravin (pursuant to section VI of the Stipulated Asset Freeze PI) on June 6, 2017. Juravin's verified answers (dated June 30, 2017, **Exhibit C** hereto) stated that "[t]he location of the fully operational SL550 is Mercedes-Benz of Tampa," and that Juravin "has engaged in no transactions relating to the Mercedes SL550 since September 12, 2016."[8] **Exhibit C**, at 6.

Concurrent with Juravin's interrogatory answers, Defendants' counsel emailed FTC counsel at 11:04 pm on June 29, 2017 stating that Juravin planned to sell the SL550 unilaterally:

---

[6] Defendants assert that they advised FTC counsel on June 29, 2017 that Juravin needed to trade in the SL550 to "obtain a safe, reliable vehicle for his wife and two young children. . . ." Dkt. 180, PageID 7549. FTC counsel recalls no such discussion. **Exhibit B** ¶9. There is also no basis to infer from Defendants' Motion or the relevant documents that their frozen 2016 Kia, for example, was not a safe, reliable vehicle.

[7] Online records from the Florida Department of Highway Safety and Motor Vehicles for the SL550 retrieved on May 30, 2017 listed liens held by Bank of America and Solomon Law Group. Records retrieved on August 11, 2017 for the SL550 listed none. **Exhibit B**, Att. 1, at 1 and 4.

[8] To resolve a discovery dispute, FTC counsel agreed that Juravin would provide a substantive answer to this interrogatory with the understanding that the "transactions" in which the FTC was interested were those "relating to any ownership interest in the car." **Exhibit B**, Att. 2, at 2; see also **Exhibit C** at 4.

5

> Additionally, Mercedes-Benz of Tampa has offered to broker a deal for the car in question on consignment with the purchase price of [$]58,000. The purchase price lien payoff for this vehicle is $25,591.33. This would be a liquidation of the current and ever depreciating equity in the amount of $32,408.67. Additionally, the loan for the vehicle is a monthly finance expense that would be eliminated.
>
> Hearing no objection by 5:00 pm on Monday, July 3, 2017, Mr. Juravin will commence with this sale of the Mercedes SL550.

**Exhibit B**, Att. 2, at 2.

FTC counsel replied the next day, objecting to the proposed sale and noting that it would require Court approval:

> [W]e will evaluate your proposal relating to the sale of the vehicle but, until we have had an adequate opportunity to do so, we object to the proposed sale. Note that because the subject of the proposed transaction is an asset frozen by the Court's September 13, 2016 preliminary injunction [Dkt. 90], the proposed sale and disposition of the proceeds is covered by section I.A. of that order and will require prior approval by the Court. Moreover, if we agree to any such sale, it will be after a meaningful opportunity to evaluate the proposal and conduct our due diligence, not based on a negative option email attempting to impose an unreasonable deadline for us to meet.

**Exhibit B**, Att. 2, at 1.

Defendants' counsel replied, "[a]s to the vehicle, I will proceed directly to the Court for leave." **Exhibit B**, Att. 2, at 1. Defendants did not proceed directly to the Court for leave, however. Counsel did not raise the contemplated sale of the SL550 again until August 10, 2017, when he emailed FTC counsel stating: "[T]he Mercedes SLK *has been sold* to alleviate Mr. Juravin's monthly expenses. Please advise how you prefer the proceeds of the sale to be held as the liquidated asset at issue is frozen under the Court's Order." **Exhibit B**, Att. 2, at 10 (emphasis added). Defendants supplied no accounting for the proceeds. FTC counsel replied on August 11:

6

"Although Mr. Juravin sold the vehicle without Court approval in violation of Section I.A. of the Asset Freeze order [Dkt. 90], all proceeds from the sale must remain frozen. We ask that you deposit the proceeds in your attorney trust account pending final resolution of this matter . . . ." **Exhibit B**, Att. 2, at 9.[9]

On August 15, 2017, the FTC served interrogatories and a request for the production of documents on Juravin (again, pursuant to section VI of the Stipulated Asset Freeze PI) seeking information about the sale of the SL550. **Exhibit B**, Att. 3. Defendants' counsel acknowledged receipt of the discovery requests and stated: "I am expecting to receive possession of the cashier's check for the equity of the car." **Exhibit B**, Att. 2, at 7. Defendants' Motion to authorize sale of the SL550 followed on August 16. Defendants did not supply responses to the interrogatories and request for production (**Exhibit B** ¶4), which were due on August 22 and 25, respectively.

### C. Documents from Mercedes-Benz of Tampa

On August 17, 2017, in an attempt to clarify matters, the FTC served subpoenas for documents on Mercedes-Benz of Tampa ("MBOT"). Excerpts from MBOT's production (and certification of records) are attached as **Exhibit D**.[10] These

---

[9] Defendants' Motion states that "despite being advised of the trade-in of the vehicle in June 2017, the FTC is now threatening Mr. Juravin with a motion for an order to show cause on the trade-in of the vehicle." Dkt. 180, PageID 7549 ¶10. The FTC, however: was not previously "advised" of the trade-in by the June 29 and 30, 2017 email exchange described above, or otherwise (**Exhibit B** ¶¶7-8 and Att. 2); and the FTC had not specifically threatened Juravin with a motion to show cause on the trade-in (**Exhibit B** ¶9). The FTC has previously advised Defendants' counsel that sale of the SL550 without Court approval would violate the Stipulated Asset Freeze PI, but threatened a motion to show cause arising from Defendants' failure to provide or even respond to requests for the accounting for June 2017 required by section V.A. of the October 2015 PI. **Exhibit B**, Att. 2, at 5-6, 9.

[10] Documents have been redacted to remove personally identifiable information.

documents illuminate the true nature of the transaction for which Defendants now seek retroactive approval. The documents show that Juravin sold the SL550 to MBOT on May 11, 2017 for $58,000, the <u>same</u> value for which MBOT had appraised it in April 2016, contradicting Defendants' assertion that the car was "quickly depreciating" [Dkt. 180, PageID 7549].

- MTOB appraised the value of the SL550 on April 22, **2016** at $58,000, more than one year ago. **Exhibit D,** at 20.

- Juravin obtained a "Payoff Quote" from Bank of America on May 5, 2017 for $25,567.79. **Exhibit D,** at 21.

- Juravin signed a "Wholesale Order" to sell the SL550 to MBOT for $58,000, with a payoff to Bank of America for $25,567.79.[11] **Exhibit D,** at 19.

- Juravin signed, under penalty of perjury, several power of attorney documents appointing MBOT as his attorney-in-fact as of May 11, 2017 to transfer title and satisfy any liens on the SL550; the document identified MBOT (below the declaration) as the "purchaser". **Exhibit D,** at 24-25.

The documents also show that on or about May 11, 2017 MBOT issued a check to pay off the Bank of America lien on the SL550, leaving Juravin $32,408.67 in equity. He used most of that amount, without Court permission, as a down payment

---

[11] The payoff amount quoted in the Composite Exhibit to Defendants' Motion was $25,591.33 as of May 8, 2017. PageID 7560; see also **Exhibit D,** at 16.

on a new car in May 2017, three months before Defendants filed their Motion.

- MBOT issued a payoff check for $25,591.33 to Bank of America on May 11, 2017 and shipped it via FedEx on May 16, 2017. **Exhibit D,** at 17, 23.
- MBOT prepared a "Used Vehicle Purchase Form" dated May 11, 2017 showing that $25,591.33 from sale of the SL550 was to be paid to Bank of America and $7409 was to be paid out in a "Check to Cust,"[12] with an additional note "Leave alone 24,999.67 for preorder car." **Exhibit D,** at 15.

Further, the documents reveal that Juravin already had a $16,000 credit with MBOT dating back to May 2016 that he did not disclose to the FTC in his required monthly reporting or in discovery prior to the asset freeze (**Exhibit B** ¶12).

- As of June 5, 2017, Juravin's account with MBOT showed that $40,999.67 – including $24,999.67 credited on May 12, 2017 from equity for sale of the SL550, and also $16,000 credited on May 23, **2016** with the notation "NEXT-CAR" – had been applied to "PREORDER-CAR."[13] **Exhibit D,** at 22; see also **Exhibit D**, at 10.

The documents also show that on August 10, 2017, Juravin obtained several

---

[12] MBOT documents show that a check in that amount payable to Juravin was issued on May 11, 2017, but was apparently voided and not sent. **Exhibit D** at 18.

[13] MBOT's records indicate that the $16,000 credit was not to be applied in the final Retail Purchase Agreement. Thus, it is the understanding of FTC counsel that those funds remain with MBOT. **Exhibit B** ¶10. Because the $16,000 is an asset of Juravin's existing at the time the Court entered the Stipulated Asset Freeze PI on September 13, 2016, those funds are frozen. Counsel for the FTC has advised counsel for MBOT that the $16,000 credit in Juravin's favor should be treated in accordance with the Stipulated Asset Freeze PI. **Exhibit B** ¶11.

9

appraisals from MBOT for the SL550 and the Kia that, strangely, show the value of the cars changing by thousands of dollars in the course of an hour.

- An August 10, 2017, 12:28 pm detailed MBOT appraisal of the SL550 shows an appraised value of $58,000. **Exhibit D,** at 11. Defendants obtained another MBOT appraisal of the SL550, submitted to the Court with Dkt. 180-1, showing an appraised value of $51,200 as of 12:27 pm that same day. PageID 7561.

- An August 10, 2017, 11:49 am detailed MBOT appraisal of the Kia shows an appraised value of $28,000. **Exhibit D,** at 6. Defendants obtained another MBOT appraisal of the Kia, submitted with Dkt. 180-1, showing an appraised value of $34,800 as of 12:26 pm that same day. PageID 7562.

The documents further show that Juravin sold the Kia on August 10, 2017, that the trade-in allowance for the SL550 was $5,000 less than the May 11 sales price and the detailed August 10 appraisal, and that the trade-in allowance for the Kia was $5,000 more than the detailed August 10 appraisal. They also show that Juravin agreed use the combined equity of those two cars, along with additional financing, to buy a new 2018 Mercedes GLS550 for $88,655 and make monthly payments of $1036, including interest, over five years.

- Juravin signed a document under penalty of perjury on August 10, 2017 appointing MBOT as his attorney in fact to transfer title and satisfy liens on the Kia. **Exhibit D,** at 7.

- On the afternoon of August 10, 2017, Juravin signed a Retail Purchase

    Agreement (an unsigned version of which Defendants submitted to the Court in Dkt. 180-1) to buy a new 2018 Mercedes GLS550 for the price of $88,655. The trade-in allowances for the SL550 and Kia are shown as $53,000 and $33,000, respectively. The combined "Equity Amount" shown for the two trade-ins is $34,921.67. **Exhibit D,** at 8-9.

- Juravin signed a Retail Installment Sale Contract (an unsigned version of which Defendants submitted to the Court in Dkt. 180-1) for the new 2018 Mercedes GLS550 on the same day, requiring 60 monthly payments of $1036.55 starting September 25, 2017, with a total finance charge of $7094. **Exhibit D,** at 12-14.

- Juravin also signed an Application for Certificate of Title (an unsigned version of which Defendants submitted to the Court in Dkt. 180-1) that day for the new 2018 Mercedes GLS550 to be issued jointly in his name and the name of Juravin, Incorporated.[14] **Exhibit D,** at 2-3.

- On August 16, 2017, MBOT issued a check for $25,487 to Kia Financial, with reference to Juravin's Kia Sedona, and sent it to Kia Motor Finance via FedEx on August 18, 2017. **Exhibit D** at 4-5.

## II. Argument: The Court Should Deny the Relief Requested, Order that the Equity from Sales of Both Vehicles Remain Frozen, and Issue an Order to Show Cause

Defendants are asking the Court for retroactive leave to sell a frozen SL550 that, according to dealership documents and Defendants' communications to the FTC, "has been

---

[14] Based on information provided by counsel for MBOT, the new Mercedes had not yet been turned over to Defendants as of August 25, 2017. **Exhibit B** ¶13.

11

sold." Defendants' Motion does not reveal any equitable or other good reason supporting a change in the Stipulated Asset Freeze PI to grant the requested relief. *See* Dkt. 155, PageID 6220, citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 578 (5th Cir. 1974). Defendants do not show how the course of action for which they seek approval would be in the interest of maintaining assets for consumer redress. *Cf. SEC v. Total Wealth Mgmt., Inc.*, 2017 WL 395480, No. 15-cv-0226 (S.D. Cal. Jan. 30, 2017) (denying motion to sell condominium and boat and to deposit net proceeds with court-appointed receiver; sale was primarily intended to benefit defendant, who did not demonstrate that lifting freeze was in interest of investors; court unwilling to take risk on proposed arrangement giving defendant "complete discretion" to conduct sale of property). Under these circumstances, the Court would be justified in denying the requested relief and in issuing an order to show cause why Juravin should not be held in contempt of the Stipulated Asset Freeze PI. *See SEC v. Homa*, 2000 U.S. Dist. LEXIS 16933, at *4, 24-25, No. 99-c-6895 (N.D. Ill. Nov. 13, 2000) (order for defendant to show cause for selling frozen asset for which he sought retroactive court approval to sell; defendant held in contempt).

Defendants have displayed their lack of candor and disregard for the Stipulated Asset Freeze PI in other ways. They assert in their Motion that as of late June 2017 the SL550 was "inoperable" (Dkt. 180, PageID 7548). To the contrary, Juravin's contemporaneous sworn interrogatory answer states that the car was "fully operational." **Exhibit C,** at 6. Moreover, Defendants appear to have already sold the frozen 2016 Kia Sedona, but they have never discussed a sale of the Kia with FTC counsel, and do not discuss it in their Motion. The equity on the Kia is also a frozen asset. Instead, Defendants appear to have entered into an

agreement to purchase a new 2018 Mercedes GLS550 for $88,655, to which they would apply the combined equity of $34,921.67 from their sales of the SL550 and the Kia, and finance the balance by paying $1036 per month (including interest) for five years under a financing agreement. Again, they do not discuss this purchase in their Motion; nor is it evident how this new, lavish monthly expenditure on a luxury car is consistent with Juravin's purported need "to alleviate" the monthly expense of the SL550.[15]

Defendants not only failed to disclose to the Court in their Motion that they already sold the SL550 on May 11, 2017. The relevant documents contradict Juravin's interrogatory answer (verified on June 30, 2017) stating that he had not engaged in any transactions relating to an ownership interest in the vehicle since September 12, 2016. **Exhibit C**, at 6. He had, in fact, already sold the car to MBOT, and MBOT had paid off the Bank of America lien on the SL550, both transactions that relate to ownership interests in the car.

Also disturbing is the fact that Defendants have clearly presented the Court a cherry-picked appraisal of the SL550 – for $5,000 less than the price MBOT actually paid Juravin for it in May – to support the false narrative that the vehicle was rapidly diminishing in value. There is no basis for Defendants' assertion that "[b]etween May 2017 and August 2017, the vehicle's value decreased an additional $6,800." Dkt. 180, PageID 7548. As the appraisals cited above clearly show, the $58,000 appraised value of the SL550 was unchanged between April 2016 and the date Juravin sold it on May 11, 2017, and even as of August 10, 2017.

---

[15] It is also unclear how such an expense would be an "ordinary," "necessary," or "reasonably incur[red]" business or living expense within the meaning of the October 2015 PI. *Cf. SEC v. Forte*, 598 F. Supp. 2d 689, 694 (E.D. Pa. 2009) (denying request to release "excessive" amounts of frozen funds to pay for luxuries; summarizing supporting cases denying release of frozen funds to pay for extravagant expenses and luxury items; defendant did not limit request to "necessary" living expenses and failed to provide documentation supporting request).

Finally, Defendants' machinations to sell the frozen vehicles to acquire a new, luxury car has revealed that Juravin parked $16,000 with MBOT and did not disclose this asset as required by the October 2015 PI, nor did he disclose it in the lead-up to issuance of the Stipulated Asset Freeze PI (**Exhibit B** ¶12).  As the Court found in entering the Stipulated Asset Freeze PI, "immediate and irreparable damage to this Court's ability to grant effective final relief for consumers (including monetary restitution, rescission, disgorgement, or refunds) will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets." Dkt. 90, PageID 1958. The Court should not reward Defendants' pronounced lack of candor and efforts to obfuscate their order violations by retroactively validating the vehicle sales and blessing the purchase of an expensive new vehicle.

### III.    Conclusion

For the foregoing reasons, the FTC requests that the Court deny Defendants' Motion and, at a minimum, order that the full equity ($34,921.67) from Defendants' sale of both the SL550 and the Kia be held by MBOT, or deposited in Defendants' counsel's trust account, and frozen pending resolution of this case. The Court should also issue an order to show cause why Defendant Don Juravin should not be held in contempt for:  sale of the two frozen vehicles without the Court's prior authorization in violation of the Stipulated Asset Freeze PI; and failing to properly account for his income, withdrawals, transfers and encumbrances – including the $16,000 parked with MBOT and sale of the SL550 – in violation of the October 2015 PI.

        Respectfully submitted,

        */s/ Carl H. Settlemyer, III*
        CARL H. SETTLEMYER, III
        (Trial Counsel)
        PAUL B. SPELMAN
        MICHAEL J. DAVIS
        Federal Trade Commission
        600 Pennsylvania Avenue, NW
        Mail Drop CC-10528
        Washington, DC 20580
        202-326-2019, -2487, -2458  (Tel.)
        202-326-3259 (Fax)
        csettlemyer@ftc.gov
        pspelman@ftc.gov
        mdavis@ftc.gov
        *Attorneys for Plaintiff*
        *Federal Trade Commission*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on this 30th day of August, 2017, I electronically filed the foregoing **Plaintiff Federal Trade Commission's Opposition to Defendants' Motion For Entry of an Order Authorizing the Sale of Frozen Assets (specifically a 2014 Mercedes-Benz)** with the Clerk of the Court by using the CM/ECF filing system, and this document will be served electronically through same to counsel for all parties of record.

        */s/Carl H. Settlemyer, III*
        Attorney