UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

        Plaintiff,

vs.                                    Case No: 8:15-cv-2231-MSS-TBS

ROCA LABS, INC., a corporation;
ROCA LABS NUTRACEUTICAL USA,
INC., a corporation; DON JURAVIN,
individually and as an Officer of Roca
Labs, Inc. and Roca Labs Nutraceutical
USA, Inc.; and, GEORGE C. WHITING,
individually and as an Officer of Roca Labs,
Inc. and Roca Labs Nutraceutical USA, Inc.;

        Defendants.

_____/

## DEFENDANT DON JURAVIN'S MOTION FOR PROTECTIVE ORDER ON PLAINTIFF'S INTERROGATORIES TO DEFENDANT DON JURAVIN REGARDING PAYPAL TRANSACTIONS AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Defendant DON JURAVIN ("Juravin"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 26(c), and files this, his Motion for Protective Order on Plaintiff's Interrogatories to Defendant Don Juravin Regarding PayPal Transactions and Incorporated Memorandum of Law (the "Motion"), and in support thereof states as follows:

### INTRODUCTION

The instant Motion seeks this Court's protection from the FTC's increasing attempts to seek an unlimited amount of discovery from Juravin and the other Defendants.

As a preliminary matter, it is important to note that while Juravin (as well as the other Defendants in this case) believe that the FTC's focus on the Defendants is misplaced, the Defendants nevertheless acknowledge and respect the important function that the FTC serves in protecting the consuming public.  Accordingly, it is out of this respect that the Defendants have cooperated with the FTC, in a good faith attempt to reach an agreement that allows the Defendants to operate their businesses free from continued, unreasonable government intrusion, while also satisfying the FTC that such operations will comport with applicable federal law concerning the marketing and sale of Defendants' products and services.

Despite this cooperation, the FTC takes each and every opportunity to portray Juravin and the other Defendants as a confederacy of "ne'er do wells" that actively seek attempt to bilk money from unsuspecting customers, and to thwart the FTC's attempts to freeze and preserve the Defendants' assets in the process.  For example, in the FTC's recent Motion to Compel, (Dkt. 184), the Plaintiff asserts that compelling Juravin's responses to its interrogatories is necessary, "[g]iven Juravin's apparent pattern of concealing significant monetary transactions [from the FTC]." (Dkt. 184 PageID 7690).[1]

In light of this entirely inaccurate depiction of Juravin, the undersigned submits that a brief recitation of the FTC's actions in this case clearly demonstrate the Plaintiff's recent "asset discovery" and subsequent motion to compel, are nothing more than the FTC's latest attempt to cause Juravin annoyance, oppression, embarrassment, and undue burden or expense.

---

[1] The FTC continues this depiction of the Defendants even ***outside*** of the context of this litigation, such as through the issuance of various press releases, and even in the form of sworn testimony before Congress.

Consequently, for the reasons discussed below, this Court should grant Juravin's Motion for Protective Order.

## BACKGROUND FACTS

1.      The Defendants in this action are engaged in the development, marketing, and sale of a weight-loss regimen (the "Regimen") comprised of nutritional supplements, a restricted diet and exercise program, as well as online coaching through a Facebook group run by Defendant Jurvian. In both their business dealings with customers, as well as this litigation, Defendants contend: that the Regimen is a verifiable tool that, when combined with diet, exercise, and an online coaching component administered by Juravin himself, assists obese individuals to lose significant amounts of weight, without the need to resort to expensive and often dangerous bariatric surgery. The success of the Defendants' Regimen is demonstrated by the high number of loyal and grateful customers that have reached a healthy weight. Moreover, even after reaching their goal weight, many of these customers work to encourage other customers to do the same, by providing testimonials and peer support in the social media support groups created and moderated by the Defendants.

2.      At some point prior to filing suit, Plaintiff presumably conducted an investigation into the Defendants' business, concluding that Defendants' marketing and sale of the Regimen violated federal law.

3.      After reaching its conclusion that a violation of law occurred, the Plaintiff had various tools at its disposal to address the alleged violations, such as informal, pre-suit negotiations, or by issuing a cease-and-desist order. In fact, such orders are the routine and preferred method of addressing such alleged violations. As noted in a blog post addressing

so-called "Section 5 cases"[2] on the FTC's website, Debbie Feinstein, the former director of the FTC's bureau of competition, stated: "The result of such a case is a cease-and-desist order, a remedy that is designed to stop the harmful conduct and prevent it from happening again."[3]

4.      However, prior to filing its Complaint in this case, the FTC failed to provide the Defendants with a cease-and-desist order, effectively depriving the Defendants of any notice of, or opportunity to cure, any alleged violations.

5.      Instead, the Plaintiff chose to utilize the "nuclear option" of filing the instant lawsuit. Accordingly, on September 24, 2015, Plaintiff filed its Complaint for Permanent Injunction and Other Equitable Relief, alleging numerous violations of 15 U.S.C. § 53(b) (2015), the Federal Trade Commission Act (the "FTC Act").[4]

6.      Once Defendants received notice of the FTC's claims, the Plaintiff suggested that Defendant Juravin would be subject to federal prosecution (and the possible prison time attendant therewith), unless he agreed to a temporary restraining order that froze his assets and waived basic procedural and substantive safeguards designed, ironically enough, to protect his constitutional rights from precisely this sort of conduct.[5]

_____

[2] The vast majority of violations alleged by the FTC against the Defendants in the case at bar are "Section 5 cases".

[3] www.ftc.gov/news-events/blogs/competition-matters/2015/03/few-words-about-section-5

[4] Interestingly enough, one form of "equitable" relief that the FTC seeks is disgorgement of more than twenty million dollars ($20,000,000.00) from the Defendants. A mere six (6) months prior to the FTC's filing suit against the Defendants, in the same blog post referenced above, Director Feinstein made a point of emphasizing that "the Commission's policy is not to seek disgorgement in stand-alone Section 5 cases." *Id*. (emphasis added).

[5] Once the FTC coerced Defendant Juravin into agreeing to its proposed temporary restraining order, Defendant Juravin sought to unfreeze some of his assets for purposes of retaining criminal

7.      Despite the extreme impact the proposed temporary restraining order could potentially have on his sole source of income, and thus his ability to provide for his family, Juravin acquiesced to the temporary restraining order, in the hopes of amicably reaching a resolution with the Plaintiff.  Juravin therefore, in good faith, "consented" to the imposition of the FTC's temporary restraining order, which is, at bottom, little more than a predatory adhesion contract that allows the FTC to conduct virtually limitless discovery under the guise of "discovering and confirming the nature, location, status, and extent" of Juravin's assets. (Dkt. 90, PageID 1968-69).

8.      It is against this backdrop of events that one must evaluate the true nature and effect of the FTC's latest discovery requests directed at Juravin.

## PRIOR DISCOVERY AIMED AT JURAVIN

Pursuant to Fed. R. Civ. P. 33(a), Local Rule 3.03(a), and section I(C) of this Court's Case Management and Scheduling Order, the parties "may serve no more than twenty-five (25) interrogatories, including sub-parts" without leave of this Court.

Prior to the service of the interrogatories which are the subject of this motion, the FTC served, and Juravin answered, multiple sets of interrogatories that have already exceeded the permitted number to which the FTC is entitled. Specifically:

- Plaintiff's First Set of Interrogatories, served on January 8, 2016, consisted of ten (10) separate requests and an additional four (4) discrete sub-parts;

---

counsel with whom he could consult regarding the FTC investigation. The FTC opposed this action, and Juravin was not afforded the benefit of such counsel.

- Plaintiff's Second Set of Interrogatories, served on January 17, 2017, consisted of three (3) separate requests and an additional two (2) discrete sub-parts;

- Plaintiff's Third Set of Interrogatories, served on June 6, 2017, consisted of four (4) separate requests and an additional six (6) discrete sub-parts.

Combined, Juravin has already answered three (3) sets of interrogatories, with a total of twenty-nine (29) responses, thus already exceeding the maximum allowed under the applicable rules of procedure and this Court's order.  Additionally, Juravin has sat for two (2) depositions totaling nearly three (3) days of testimony.

The discovery aimed at Jurivan described above is ***in addition to*** the requirement that Juravin "create and maintain a monthly balance sheet and accounting of any income and any withdrawal, transfer, encumbrance, or other dissipation of assets for actual, ordinary, and necessary business or living expenses, and. . . provide a copy of this accounting" to the FTC. (Dkt. 38, PageID 1575).

## PLAINTIFF'S FOURTH SET OF INTERROGATORIES

Now, the FTC seeks to again unnecessarily consume Defendant's Juravin's time and attention with its fourth set of interrogatories, consisting of seven separate requests and an additional twelve (12) discrete subparts.

These interrogatories are essentially aimed at obtaining information related to how Juravin utilizes PayPal in the operation of the Defendants' business. Knowing full well that discovery is now closed in this case, and that this Court has stayed proceedings while it takes the parties' various dispositive motions under advisement, the FTC attempts to obtain this unpermitted discovery by presenting it under the cloak of so-called "asset discovery" that is not

bound by this Court's orders of a stay, nor subject to the protections of a maximum number of interrogatories articulated in the Federal Rules of Civil Procedure.

While the FTC claims that these additional interrogatories are necessary due to the allegation that Juravin did not provide the PayPal statements prior to the close of discovery, this belies the point that in Juravin's September 9, 2016 deposition, the FTC questioned him extensively not only on the existence of the PayPal account, but also how the PayPal account was utilized in the business.

Similarly, an interrogatory exploring the Defendants' working relationship with Suzanne Margarate Delicana-Lara has already been addressed in three separate depositions:

- Deposition of Sharon Ann King, taken on January 27, 2017;

- Deposition of Don Juravin, taken on February 16, 2017; and

- Deposition of Jenna Antico, take on September 8, 2016.

The culmination of this evidence clearly establishes that the FTC is fully aware that Suzanne Margarate Delicana-Lara lives in the Philippines, works in customer service, and that she makes a few dollars an hour.

Despite having this information from three separate sources in three separate depositions that this employee was in the Philippines the FTC has chosen to again manipulate the situation and interpret the PayPal payments to be in U.S. Dollars rather than in Filipino currency to again hijack this Court's time and resources to present an off-colored narrative of the Defendant, his business, and his employees.

It is therefore clear that, notwithstanding the FTC's knowledge of the answers to the untimely interrogatories that it propounds on Juravin, it seeks to impose additional litigation burdens upon him.

## MEMORANDUM OF LAW

The plain language of Rule 26(c) empowers this Court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c).  It is therefore axiomatic that this Court "has broad powers to regulate or prevent discovery, and such powers have always been freely exercised." *Brennan v. International Brotherhood of Teamsters*, 494 F2d 1092 (D.C. Cir. March 8, 1974).  Such powers may be used to strike a fair balance by competing interests or to prevent annoyance, undue expense, embarrassment, or oppression.  *Lincoln American Corp. v. Victory Life Ins. Co.*, 375 F. Supp. 112 (D. Kan. March 15, 1974). When this Court determines whether good cause for the protective order sought exists, it must balance all factors involved, but litigants' interests must be given priority. *Patt v. Family Health Sys.*, 189 FRD 518 (E.D. Wis. 1999).

In the instant case, good cause exists to excuse Juravin's requirement to answer a fourth set of interrogatories propounded by the FTC. Notwithstanding the FTC's "blank check" to conduct discovery that it deems relevant to the issue of asset preservation, the instant discovery, when considered within the context of the FTC's previous discovery and litigation tactics in the instant matter (as well as the FTC's possession of deposition and documentary evidence that provides the very answers it now seeks from Juravin) indicates that this particular discovery is nothing more than the proverbial "fishing expedition," and is intentionally designed to cause

Juravin annoyance, embarrassment, oppression, and/or undue burden or expense, with the end goal of exerting pressure on Juravin to capitulate to whatever the FTC wants.

In accordance with Local Rule 3.01(g), the undersigned certifies that he has conferred with counsel for the Plaintiff and Plaintiff opposes the relief requested in this motion.

## CONCLUSION

For all the reasons articulated above, the Motion should be granted.

WHEREFORE, Defendant Juravin respectfully requests this Court enter an Order granting Defendant Juravin's Motion for Protective Order, an award of fees and costs associated with this Motion, and for such further relief as this Court deems just and proper.

/s/ Glenn A. Reid
GLENN A. REID
Attorney for the Don Juravin
Florida Bar # 0629898
Post Office Box 950554
Lake Mary, Florida 32795
(386) 235-1920
glenn@thereidlawoffice.com
attorneygreid@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **Don Juravin's Motion for Protective Order** by electronic mail to the following attorneys of record on this the 23rd day of October, 2017:

Carl H. Settlemyer, III, Esquire
Electronic Mail: csettlemyer@ftc.gov
Paul B. Spelman, Esquire
Electronic Mail: pspelman@ftc.gov
Michael Davis, Esquire
Electronic Mail: mdavis@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, N.W., CC-10528
Washington, D.C. 20580
Attorneys for the Plaintiff

_/s/ Glenn A. Reid_____
GLENN A. REID
ATTORNEY