**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

v.                                                                                          Case No: 8:15-cv-2231-T-35CPT

**ROCA LABS, INC., a corporation, ROCA LABS NUTRACEUTICAL USA, INC., a corporation, DON JURAVIN, individually, DON JURAVIN, as an officer of Roca Labs, Inc. and Roca Labs Nutraceutical USA, Inc. Must Cure Obesity, Co and Juravin, Inc., GEORGE C. WHITING, individually, GEORGE C. WHITING, as an officer of Roca Labs, Inc. and Roca Labs Nutraceutical USA, Inc. and Zero Calorie Labs, Inc., MUST CURE OBESITY, CO., a corporation, JURAVIN, INCORPORATED, a corporation, and ZERO CALORIE LABS, INC., a corporation,**

    **Defendants.**

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Motion for Entry of An Order [Retroactively] Authorizing the Sale of Frozen Assets (specifically a 2014 Mercedes-Benz) (Dkt. 180) filed by Defendants Don Juravin and Juravin, Incorporated; Plaintiff's Response in opposition thereto (Dkt. 182); and Defendants' Reply. (Dkt. 193) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court DENIES Defendants' Motion for Entry of An Order Authorizing the Sale of Frozen Assets.

I.    **BACKGROUND**

On September 24, 2015, the Federal Trade Commission ("FTC") filed this action, alleging that Defendants had, and were, engaged in acts and practices that violated Sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45, 52, in connection with the advertising and sale of weight-loss products and the use of contractual provisions prohibiting purchasers from providing negative commentary. (Dkt. 1)   At the same time, the FTC moved for a temporary restraining order.   (Id.)   The FTC subsequently filed an Amended Complaint for Permanent Injunction and Other Equitable Relief on February 19, 2016.   (Dkt. 48)

On September 29, 2015, the Court entered a Stipulated Temporary Restraining Order ("TRO") agreed to by FTC and Defendants Don Juravin, George Whiting, Roca Labs, Inc., and Roca Labs Nutraceutical USA, Inc. (collectively, "the Four Defendants") (Dkt. 13)   The Parties stipulated to preserve their assets while the case is pending, and that Stipulation became an Order of this Court.   (Dkt. 13-1)

On October 29, 2015, the Court issued a Preliminary Injunction, imposing various restraints against the Four Defendants ("2015 Asset Preservation Order").   (Dkt. 38) Again, the Parties stipulated to preserve their assets while the case is pending.   (Id.)   As the TRO had previously done, the Preliminary Injunction enjoined Defendants from

> directly or indirectly selling, transferring, alienating, liquidating, encumbering, pledging, loaning, assigning, concealing, dissipating, converting, withdrawing, or making any other disposition of any assets or any interest therein, wherever located, including any assets outside the territorial United States, that are owned, controlled or held by, or for the benefit of, in whole or in part, Defendants, or in the actual or constructive possession of Defendants, **other than those assets that are used for**

**actual, ordinary, and necessary business or living expenses that Defendants reasonably incur, including reasonable legal expenses.**

(Dkt. 38) (emphasis added)  The Preliminary Injunction also required the Four Defendants to provide a monthly accounting of income and expenses.[1]

On September 13, 2016, the Court issued a Stipulated Preliminary Injunction Freezing Assets ("2016 Asset Freeze Order") applicable to all Defendants except Defendant George Whiting.  (Dkt. 90)  The 2016 Asset Freeze Order specifically restrained and enjoined Defendants from, *inter alia*, "[t]ransferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing any funds, real or personal property, **including vehicles**, accounts, contracts, shares of stock, lists of consumer names, or other Assets . . . ."  (Id. at 7) (emphasis added)  The 2016 Asset Freeze Order also required Defendants to comply with the provisions in the 2015 Asset Preservation Order.  (Id. at 16)  In his deposition, Defendant Don Juravin ("Juravin") stated that the vehicles included a 2014 Mercedes-Benz SL550 ("2014 Mercedes-Benz"), a Jeep Wrangler, and a 2016 Kia Sedona.[2]  (Dkt. 182-2; Dkt. 180-1 at 7; Dkt. 182-5)

---

[1] "For the duration of this Order, Defendants shall create and maintain a monthly balance sheet and accounting of any income and any withdrawal, transfer, encumbrance, or other dissipation of assets for actual, ordinary, and necessary business or living expenses, and shall provide a copy of this accounting to the Commission no later than ten (10) days after the end of each calendar month."  (Dkt. 182 at 3)

[2] Although Defendants allege that Juravin Incorporated held title to the 2014 Mercedes-Benz, Juravin stated in a response to the interrogatories that Juravin held title to that vehicle.  (Dkt. 180 at 1; Dkt. 182-4 at 6)  Additionally, the records demonstrate that Juravin owned the 2014 Mercedes-Benz, and Juravin, Incorporated owned the 2016 Kia Sedona.  (Dkt. 182-5 at 8, 24–25)

On May 11, 2017, Juravin sold the 2014 Mercedes-Benz for $58,000 to Mercedes-Benz of Tampa, which sent a check for $25,591.33 to Bank of America to pay the remaining balance of the car loan. (Dkt. 182-5 at 16, 18) On the Used Vehicle Purchase Form documenting the sale, a handwritten note states "[l]eave alone 24,999.67 for preorder car." (Id. at 16) Mercedes-Benz of Tampa also issued a check on May 11, 2017 to Juravin for $7,409.00. (Id. at 19) On the same day, Juravin signed a Motor Vehicle Power of Attorney/Odometer Disclosure, appointing Mercedes-Benz of Tampa as of his attorney-in-fact to transfer the title and satisfy any liens. (Id. at 25–26)

On June 5, 2017, Juravin's account statement from Mercedes-Benz of Tampa indicated a $16,000 credit for "next-car," which was applied on May 23, 2016, and a $24,999.67 credit for "preorder-car," which was applied on May 12, 2017. (Id. at 23) The document fails to disclose which accounts benefitted from these "credits."

On August 10, 2017, the 2014 Mercedes-Benz and the 2016 Kia Sedona were appraised twice. The 2014 Mercedes-Benz was first valued at $51,200, then at $58,000. (Dkt. 180-1 at 10; Dkt. 182-5 at 12). The 2016 Kia Sedona was initially valued at $28,000 and then at $34,800. (Dkt. 180-1 at 11; Dkt. 182-5 at 7) The same day, Juravin signed a Retail Purchase Agreement ("RPA") to purchase a 2018 GLS550 Mercedes-Benz ("2018 Mercedes-Benz") for $88,655.00. (Dkt. 180-1 at 1–2; Dkt. 182-5 at 9–10) The 2014 Mercedes-Benz and the 2016 Kia Sedona were traded in as part of the down payment for the 2018 Mercedes-Benz.[3] (Id.) The trade-in allowance was $53,000 for the 2014 Mercedes-Benz and $33,000 for the 2016 Kia Sedona. (Id.) According to the

---

[3] Juravin, Incorporated is listed as the seller of 2016 Kia Sedona on the Motor Vehicle Power of Attorney/Odometer Disclosure appointing Mercedes-Benz of Tampa as the attorney-in-fact. (Dkt. 182-5 at 8) Juravin, who owns Juravin, Incorporated, signed the disclosure. (Id.; Dkt. 166 ¶ 4)

purchase contract, the total trade-in allowance was $86,000.  The balance owed on the 2014 Mercedes-Benz was listed at $25,591.33 and the balance owed on the 2016 Kia Sedona was listed as $25,487.00.  (Dkt. 180-1 at 1; Dkt. 182-5 at 7)  The total balance owed on the traded-in vehicles was $51,078.33.  (Id.)  For the 2014 Mercedes-Benz, the equity was listed at $27,408.67 and for the 2016 Kia Sedona, it was listed at $7,513.00.  (Id.)  The total equity of the traded in vehicles was $34,921.67.  (Id.)  After factoring in the purchase price of the 2018 Mercedes-Benz, the value of and the balances owed on the trade-in vehicles, along with other taxes and fees, the amount financed for the $88,655.00 2018 Mercedes-Benz was $55,098.78, or $1,036.55 a month for five years.  (Id.)

On August 15, 2017, Mercedes-Benz of Tampa applied a credit of $7,409.00 to Juravin's account.  (Id. at 11)  On Juravin's account statement, the number "32408.67" is handwritten at the bottom of the statement, and the word "leave" is written next to the $16,000 credit.  (Id.)

On August 16, 2017, Defendants Juravin and Juravin Incorporated (collectively "Defendants") filed the instant motion seeking Court approval for "the sale of certain assets currently frozen by the temporary restraining order ("TRO") free and clear of all liens, claims, or encumbrances pursuant to the Retail Purchase Agreement ("RPA") . . . ."  (Dkt. 180)  The FTC opposes the relief requested.  (Dkt. 182)

**II.    DISCUSSION**

By the instant Motion, Defendants seek the Court's approval of the sale of a 2014 Mercedes-Benz because it was inoperable and depreciating quickly.  (Dkt. 180)  Juravin claims he traded in the vehicle to preserve the equity and "obtain a safe, reliable vehicle

5

for his wife and two young children, which is an ordinary living expense." (Id. at 2–3) The Parties agreed that $27,409.00, the surplus from the traded-in vehicle, would be held in trust by Defendants' counsel. (Id.) The FTC opposes the motion and urges the Court to order that the full equity of $34,921.67 from the sale of both vehicles be held by either Mercedes-Benz or Defendants' counsel pending the resolution of this case. (Dkt. 182) Additionally, the FTC suggests that the Court issue a show cause order as to why Juravin should not be held in contempt for failing to secure prior Court approval for the sale of the two vehicles and for failing to provide proper accounting of income, withdrawals, transfers, encumbrances, and other dissipation of assets. (Id.)

A district court has continuing jurisdiction over a preliminary injunction. Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567, 578 (5th Cir. 1974).[4] Under its authority to provide injunctive relief, the court is authorized to temporarily freeze assets. F.T.C. v. RCA Credit Services, LLC, 8:08-CV-2062-T27MAP, 2008 WL 5428039, at *4 (M.D. Fla. Dec. 31, 2008) (citing to F.T.C. v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1432 (11th Cir.1984) (per curiam)). One of the purposes of the asset freeze is to preserve funds for final relief, including depriving the defendants of ill-gotten gains and redress to consumers. RCA Credit Services, LLC, 2008 WL 5428039 at *4. Just as a district court has authority to temporarily freeze assets, a district court also may "release or lower the amount of assets frozen." Id. (citation omitted). A court may "make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason." Callaway, 489 F.2d at 578 (citation omitted).

---

[4] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981) (adopting as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981).

Defendants argue the Mercedes-Benz was valued at $107,825.00 when the TRO was issued in September 2015 and had declined to $51,200.00 when it was appraised on August 10, 2017. (Id. at 3) In an email to the FTC's counsel, Juravin's counsel stated that the 2014 Mercedes-Benz was sold "to alleviate Mr. Juravin's monthly expenses." (Dkt. 182-3 at 22) Juravin maintains that he drove the Mercedes-Benz as his ordinary car and thus it was an "actual, ordinary living expense for [him]" and it was not subject to the restrictions imposed by the TRO. (Dkt. 193 at 3)

The FTC argues that Defendants provide no good reason for the Court to approve the sale. (Dkt. 182 at 12) The FTC argues that Defendants failed to show how the sale is in the interest of the preserving the assets or how the purchase of a new luxury vehicle, along with a $1,036 monthly car payment for five years, alleviates Juravin's monthly expenses. (Id. at 12–13) The FTC also points out Defendants' conflicting statements about the vehicle. For example, Defendants allege in the instant Motion that the 2014 Mercedes-Benz was inoperable, despite Juravin's verified answer to interrogatories on June 30, 2017 that the vehicle was "fully operational." (Dkt. 180; Dkt. 182-4 at 7) Juravin also stated in his answer that "he has engaged in no transactions relating to the Mercedes SL550 since September 12, 2016," although documents from the dealership demonstrate that it was sold on May 11, 2017. (Dkt. 182-4 at 7; Dkt. 182-5 at 16) Further, the FTC maintains that Defendants lacked candor and regard for the Court's Orders by failing to seek Court approval for the sale of the vehicles and failing to disclose a $16,000 credit at Mercedes-Benz of Tampa. (Id.)

Defendants' characterization that the assets are frozen by the TRO is incorrect. Defendants overlook the Court's subsequent 2015 Assert Preservation Order and the

2016 Asset Freeze Order, as discussed above. Examining the disposition of the 2014 Mercedes-Benz through the lens of the operative Orders, the Court accepts that Juravin's 2014 Mercedes-Benz was used for an "actual, ordinary and necessary" living expense because he owned the car and drove it as his ordinary vehicle. Thus, the sale of the 2014 Mercedes-Benz does not run afoul of the portion of the 2015 Asset Preservation Order that excepts the disposition of assets used for actual, ordinary living expenses. The Court finds, however, that the sale of the 2014 Mercedes-Benz was in direct contravention of the 2016 Asset Freeze Order, which explicitly prohibits Defendants from disposing of or selling vehicles. (Dkt. 90 at 7) More specifically, the 2015 Asset Preservation Order permitted the sale of an asset used for an "actual, ordinary and necessary ordinary" living expense, but the Court's 2016 Asset Freeze Order specifically excluded vehicles from those types of assets. (Dkt. 38 at 11; Dkt. 90 at 7)

In any event the purchase of a 2018 *luxury* vehicle contravenes any reading of the Court's Orders as it is plainly not an "actual, ordinary, and necessary" business or living expense. Typically, a court will deny a request to unfreeze assets to pay for luxuries, rather than necessities. F.T.C. v. USA Fin., LLC, 8:08-CV-899-T-17MAP, 2008 WL 3165930, at *3 (M.D. Fla. Aug. 6, 2008) (citing S.E.C. v. Dowdell, 175 F.Supp.2d 850, 854 (W.D.Va.2001)). In USA Fin., LLC, the court denied the defendant's request to release frozen assets to pay for jujitsu training and a gym membership. 2008 WL 3165930 at *1; see also SEC v. Forte, 598 F. Supp. 2d. 689, 694 (E.D. Pa. 2009) (refusing to unfreeze funds to pay for, *inter alia*, premium satellite television service, several cellular telephones, and existing credit card debt); S.E.C. v. Dobbins, Civ.3:04-CV-0605-H, 2004 WL 957715, at *3 (N.D. Tex. Apr. 14, 2004) (declining to unfreeze assets to pay for more

8

than $11,000 in monthly living expenses, including cable television, church contributions, and $817.99 automobile financing because the court lacked sufficient information to evaluate the request).  With access to two additional vehicles, other than the 2014 Mercedes-Benz, Juravin has not demonstrated to the Court that the purchase of an $89,000 Mercedes-Benz is ordinary or necessary. Further, the Court finds that Defendants failed to adhere to the 2015 Asset Preservation Order in that they did not provide a monthly accounting of income expenses to the FTC.   (See Dkt. 183-2 at 17)

Defendants offer no explanation for the sale of the 2016 Kia Sedona, which was part of the same transaction as the 2014 Mercedes-Benz.  Although Defendants move for an order "sanctioning the sale of certain assets," pursuant to the 2018 Mercedes-Benz purchase contract, which lists the 2016 Kia Sedona as a trade-in vehicle, Defendants' arguments focus exclusively on the 2014 Mercedes-Benz.  (Dkt. 180)  Defendants specifically request "entry of an order approving the sale of *the vehicle* free and clear of all lines, claims, or encumbrances pursuant the RPA," discuss only the appraisal of the 2014 Mercedes-Benz, and list only the equity of the 2014 Mercedes-Benz.  (Id. at 4) (emphasis added)  Defendants do not request approval of the sale of the 2016 Kia Sedona or request that the equity, $7,513.00, be held in trust.   Because Defendants have never requested the Court's approval of the sale of the 2016 Kia Sedona or properly accounted for the related income and expense, the Court finds that the sale of the 2016 Kia Sedona violated the 2015 Asset Preservation Order and the 2016 Asset Freeze Order.  Additionally, Defendants' failure to disclose a $16,000 credit at Mercedes-Benz of Tampa and failure to provide a monthly accounting of the sale of the vehicles were violative of both Orders.

### III.  CONCLUSION

Accordingly, it is hereby **ORDERED** that:

1.  Defendants' Motion for Entry of An Order Authorizing the Sale of Frozen Assets (specifically a 2014 Mercedes-Benz) (Dkt. 180) is **DENIED**.

2.  Defendants shall **SHOW CAUSE** why they should not be held in civil contempt for their failure to comply with the Court's previous Orders.  Defendants shall file a response within **FOURTEEN (14) DAYS** of the date of this Order.  Defendants' response shall discuss why at least $34,921.67 from the sale of the vehicles and the $16,000 credit at Mercedes-Benz of Tampa should not be held in trust.  The response also shall discuss why Defendants failed to disclose the sale of the 2016 Kia Sedona and the $16,000 credit at Mercedes-Benz of Tampa.  Finally, Defendants shall state under oath the relationship they have with Mercedes-Benz of Tampa and the salesperson involved in the transaction, and they shall disclose what, if any, knowledge Mercedes-Benz of Tampa and that salesperson had of the restrictions by which Don Juravin and Juravin, Incorporated were constrained under the Court's Orders.  Failure to respond and show cause may result in the imposition of sanctions in the form of paying Plaintiff's reasonable costs and attorneys' fees incurred and daily fines until the contempt is cured.  Said potential sanctions may be imposed with no further notice from the Court.

**DONE** and **ORDERED** in Tampa, Florida, this 1st day of March, 2018.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person