UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROCA LABS, INC., a corporation; ROCA LABS NUTRACEUTICAL USA, INC., a corporation; MUST CURE OBESITY, CO., a corporation; JURAVIN, INCORPORATED, a corporation; ZERO CALORIE LABS, INC., a corporation; DON JURAVIN, individually and as an officer of Roca Labs, Inc., Roca Labs Nutraceutical USA, Inc., Must Cure Obesity, Co., and Juravin, Incorporated; and GEORGE C. WHITING, individually and as an officer of Roca Labs, Inc., Roca Labs Nutraceutical USA, Inc., and Zero Calorie Labs, Inc.,<br><br>Defendants. | Case No. 8:15-cv-02231-MSS-CPT |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON MONETARY RELIEF**

Plaintiff Federal Trade Commission ("FTC") files this brief pursuant to the Court's September 14, 2018 order [Dkt. 234] granting the FTC's summary judgment motion [Dkt. 210]. The Court held that the FTC had proven Defendants' gross sales revenues of $26.6 million [Dkt. 234, at 37], but needed to supplement the record with evidence for a deduction of $1,354,000 from that figure, which the Court understood to be for customer refunds. The $1,354,000 deduction, however, does not represent refunds: it is primarily sales revenue Defendants received after the time period at issue in this case. As explained below, Defendants' 2011 – 2015 gross receipts already reflected refunds to customers.

1

The FTC's calculation of $25,246,000 is the rounded total of "Gross receipts or sales" amounts from Defendant Roca Labs, Inc.'s ("RLI") federal income tax returns, and stipulated "Actual Receipts" amounts, as follows: 2011 ($3,861,000), 2012 ($4,419,000), 2013 ($6,999,000); 2014 ($6,777,318); and 2015 ($3,189,974). The supporting documents and stipulations show that it is a reasonable approximation of their net revenue and ill-gotten gain between January 1, 2011 and entry of the September 29, 2015 Stipulated Temporary Restraining Order [Dkt. 13].

### A. Defendants' "Gross Receipts or Sales" Already Reflect Customer Refunds

In 2011 – 2015, customers overwhelmingly paid Defendants by payment cards in online purchases. See Dkt. 210, PageID 8069 and cited evidence. Despite Defendants' policies against refunds and returns,[1] Defendant Don Juravin estimated that about 1.2% of Defendants' card transactions were disputed.[2] Payment processors (e.g., PayPal or iPayment) routinely transferred customer payments into Defendants' corporate bank accounts, but withheld some of the funds as a reserve to deal with such payment disputes and returns.[3]

Defendants' corporate tax returns show that they refunded consumers no money beyond what was already reflected in their gross receipts calculations based on "the

---

[1] See, e.g., Dkt. 6-3, PageID 340, 367 ("**Return/Refund Policy**. Once purchased and shipped, RLN products cannot be returned and NO refunds will be given."); Dkt. 6-2, PageID 190, 201 (no refunds or returns allowed), 262 (Return and Refund Policy in May 6, 2015 "Terms"); Dkt. 210-8, PageID 8749 ¶ 33, 8751 ¶ 45, 8754 ¶ 56 (lawsuit against consumers, describing policy against refunds and returns), 210-8, PageID 8540 (70:1-11) (authenticating); Dkt. 210-34, PageID 10214, 10233-10237 (Roca Labs "Chargeback/Fraud Reduction Plan Guidelines" submitted to processor); see also Dkt. 210-16, PageID 9445 (584:6 – 585:23) (Mr. Juravin describing order cancellation window of "less than a day").

[2] See **Exhibit A hereto** (617:5-24); see also **Exhibit B hereto** (118:10-17).

[3] **Exhibit B** (80:11 – 83:11; 86:6-15; 115:14 – 119:16); Dkt. 210-8, PageID 8534 (47:3 – 49:11; 51:15 – 52:23).

summation of the processing" (Dkt. 210-8, PageID 8532 (40:23-24)) for each year. Specifically, Defendants did not enter *any* amount for "returns and allowances" in the RLI income tax returns for 2011 – 2015. **Exhibit C** hereto ¶2. They reported as "Gross receipts or sales" on RLI's federal tax returns[4] what their payment processors paid to the Corporate Defendants and reported to the IRS.[5] These "Gross receipts or sales," in effect, *are* their "net revenues."

### B. The FTC's Calculation of Defendants' Unjust Gains

There is no dispute that the Defendants' corporate tax returns reflect their "gross receipts" (including refunds) for the full years in question. The FTC, however, calculated Defendants' net revenue for the period of January 1, 2011 through September 30, 2015 based on "Gross receipts or sales" shown in the corporate tax returns for some years; for others, the FTC used lower "Actual Receipts" amounts to which the Defendants stipulated (see chart, **Exhibit D** hereto).[6] Broken out by year, the amounts and support are as follows:

---

[4] $ 3,861,761.67 (2011) + $ 4,480,678.00 (2012) + $ 6,999,181.00 (2013) + $ 6,777,318.99 (2014) + $ 4,512,289.97 (2015) = $ 26,631,229.63. See Dkt. 210-38, PageID 10281, 10284. Defendants authenticated the cited RLI tax returns. Dkt. 210-18, PageID 9483 (167:2-16) (2011); Dkt. 210-8, PageID 8533 (42:3-14) (2012, 2013); Dkt. 210-18, PageID 9484 (169:14-22) (2014); PageID 9485 (176:22 – 177:1) (2015). To preserve confidentiality of the tax returns as a whole, the FTC has summarized relevant lines from them in its declarations rather than file them as exhibits.

[5] As Mr. Juravin testified, "the big number of the revenue is coming from the [payment processor's] 1099, not from what you see [in the bank statements]. They sent the money." Dkt. 210-8, PageID 8533 (41:16-18). For purposes of preparing gross income figures for federal tax returns, "[w]e care about one number. 1099 issued by [the payment processor]. This is the only thing that matters. It encompasses everything." *Id.*, PageID 8532 (40:10-13). See generally *id.* (40:2 – 41:22).

[6] **Exhibit D** is excerpted from a corporate financial disclosure Defendants' counsel sent to the FTC on November 12, 2015. **Exhibit C** ¶3. It was "Exhibit 10" discussed in the Corporate Defendants' Rule 30(b)(6) deposition on February 15, 2017. Defendants stipulated to the truth and accuracy of the relevant entries. Dkt. 210-8, PageID 8515 (34:9 – 36:23). They made parallel stipulations about "Exhibit 9" (**Exhibit E** hereto) which shows the same amounts. They withdrew their confidentiality designation for these exhibits (Dkt. 210-8, PageID 8567 (177:21-23)) on October 2, 2018.

- **2011**: $3,861,000 is the stipulated amount from **Exhibit D** for Defendants' "Actual Receipts" and "Gross Orders" entries. It is also the "Gross receipts or sales" entry, rounded down, on the 2011 RLI tax return. Dkt. 210-38, PageID 10281, 10284.

- **2012:** $4,419,000 is the stipulated amount from **Exhibit D** for Defendants' "Actual Receipts" and "Gross Orders" entries. It is $61,678 less than the "Gross receipts or sales" entry on the 2012 RLI tax return. Dkt. 210-38, PageID 10281, 10284.

- **2013:** $6,999,000 is the stipulated amount from **Exhibit D** for Defendants' "Actual Receipts" and "Gross Orders" entries. It is also the "Gross receipts or sales" entry, rounded down, on the 2013 RLI tax return. Dkt. 210-38, PageID 10281, 10284.

- **2014**: $6,777,318 is the "Gross receipts and sales" entry from the 2014 RLI tax return. Dkt. 210-38, PageID 10281, 10284. This figure is more appropriate to use than the **Exhibit D** chart amount for 2014 which was preliminary, as the 2014 RLI tax return had not been prepared when the chart was prepared in November 2015.[7] Defendants filed that return before their February 15, 2017 stipulations, however, and recognized that the tax return amounts might change the chart numbers. Dkt. 210-8, PageID 8515 (35:1-2). The 2014 tax return amount, moreover, is less than Defendants' estimated 2014 "Gross Orders" ($7,010,402) in the **Exhibit D** chart.

- **2015**: $3,189,974 is Defendants' 2015 "Actual Receipts" estimate in the **Exhibit D** chart. The FTC relied on this amount rather than the higher "Gross receipts and sales" amount in the 2015 RLI tax return (Dkt. 210-38, PageID 10281, 10284), as a conservative

---

[7] Mr. Juravin testified that the tax returns for 2014 and 2015 could not be filed until Defendants belatedly received the payment processor 1099s for those years. Dkt. 210-8, PageID 8533 (41:6-12).

approximation of Defendants' actual receipts as of the end of September 2015. This number is less than the **Exhibit D** chart entry for their estimated 2015 "Gross Orders" ($4,253,299). Moreover, payments to Defendants in October and November 2015 would have included installments paid by consumers who bought in August and September 2015.[8] The 2015 estimate thus likely understates how much consumers agreed to pay before the Court first enjoined the Defendants' deceptive marketing.

- **$25,246,000** is the rounded total of the amounts underscored above for each of the years listed. **Exhibit C** ¶4.

## CONCLUSION

Although Defendants challenged the use of net revenues as the proper measure of monetary relief in this case [Dkt. 234, at 36], they did not challenge the reasonableness of the FTC's net revenues calculation. The evidence shows that $25,246,000 is a reasonable approximation of Defendants' unjust gains. Indeed, the calculation likely understates them. The FTC thus requests that the Court's final order include the injunctive relief the FTC has requested (see Dkt. 210, PageID 8089-90) and a judgment in the FTC's favor in that amount, for which Mr. Juravin and the Corporate Defendants would be jointly and severally liable.

The FTC is prepared to provide a proposed order for permanent injunctive and monetary relief at the Court's request.

Respectfully submitted,

---

[8] See Dkt. 210-3, PageID 8196 ("With insurance, a 3-4 month supply is one payment of $480 (or 3 payments of $172). Without insurance, a 3-4 month supply is 3 payments of $230."); Dkt. 210-2, PageID 8101 ¶14, Att. Y (authenticating); **Exhibit B** (83:4-5; 117:18 – 118:9; 118:22 – 119:4) (references to three payments).

| | |
|---|---|
| Dated:  October 4, 2018 | /s/ *Carl H. Settlemyer, III* |
| | CARL H. SETTLEMYER, III (Trial Counsel) |
| | PAUL B. SPELMAN |
| | MICHAEL J. DAVIS |
| | Federal Trade Commission |
| | 600 Pennsylvania Avenue, NW |
| | Mail Drop CC-10528 |
| | Washington, DC 20580 |
| | (202) 326-2019, -2487, -2458 (Tel.) |
| | (202) 326-3259 (Fax) |
| | csettlemyer@ftc.gov |
| | pspelman@ftc.gov |
| | mdavis@ftc.gov |
| | Attorneys for Plaintiff Federal Trade Commission |

## **CERTIFICATE OF SERVICE**

I CERTIFY that on this 4th day of October 2018, I electronically filed the foregoing "Plaintiff's Supplemental Brief on Monetary Relief" with the Clerk of the Court by using the CM/ECF filing system, and this document will be served electronically through same to counsel for all parties of record.

/s/ *Carl H. Settlemyer, III*
Attorney