## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

**v.**                                              **Case No: 8:15-cv-2231-T-35TBM**

**ROCA LABS, INC., a corporation, ROCA LABS NUTRACEUTICAL USA, INC., a corporation, DON JURAVIN, individually, DON JURAVIN, as an officer of Roca Labs, Inc. and Roca Labs Nutraceutical USA, Inc. Must Cure Obesity, Co and Juravin, Inc., GEORGE C. WHITING, individually, GEORGE C. WHITING, as an officer of Roca Labs, Inc. and Roca Labs Nutraceutical USA, Inc. and Zero Calorie Labs, Inc., MUST CURE OBESITY, CO., a corporation, JURAVIN, INCORPORATED, a corporation, and ZERO CALORIE LABS, INC., a corporation,**

    **Defendants.**

_____/

## <u>FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF</u>

Plaintiff, the Federal Trade Commission ("FTC"), brought this action for injunctive and equitable monetary relief against: Roca Labs, Inc.; Roca Labs Nutraceutical USA, Inc.; Must Cure Obesity, Co.; Juravin, Incorporated; Zero Calorie Labs, Inc.; Don Juravin; and George C. Whiting (collectively "Defendants"). The FTC asserted seven counts against the Defendants for deceptive and unfair acts or practices in violation of Sections 5(a) and 12 of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. §§ 45(a) and 52.  The FTC requested injunctive and equitable monetary relief against the Defendants under Section 13(b) of the FTC Act.   15 U.S.C. § 53(b).

The Court issued an Order on September 14, 2018, (Dkt. 234), granting the FTC's Amended Motion for Summary Judgment, (Dkt. 210), in which it stated its conclusions as to the Defendants' liability.  After carefully reviewing all of the evidence and arguments presented by the Parties' counsel, the Court concluded that the Defendants:

- lacked a reasonable basis for five express, material weight-loss claims they made about their products, dietary supplements known as Roca Labs Formula or "Gastric Bypass Alternative," because they lack competent and reliable scientific evidence;

- falsely claimed that use of their products is scientifically proven to have a ninety- percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss;

- unfairly suppressed negative information about the Defendants and their products, to the detriment of subsequent purchasers, by making threats to sue and filing of lawsuits against dissatisfied consumers for violating non-disparagement clauses in their online sales contracts;

- deceptively failed to disclose their financial relationship to testimonialists who worked for them, and their control of a supposedly independent and objective information website that they used to promote their products;

- misrepresented the nature of that purportedly independent site;

- misrepresented that they would keep their customers' private health

2

information confidential; and

- misrepresented that consumers had agreed to non-disparagement clauses in exchange for a substantial discount on the products.

The Court found that a permanent injunction against all Defendants is appropriate because there is a reasonable likelihood of future violations.  (Dkts. 234, 241)  The Court also found that the FTC is entitled to monetary relief under Section 13(b) of the FTC Act for consumer redress, including disgorgement.  (Dkt. 234)  The Court ordered the Parties to file supplemental memoranda and supporting evidence as to the amount of monetary relief to be awarded.  (Id. at 41)

The Court found that the proper amount of equitable monetary relief against all the Defendants, except George C. Whiting, is $25,246,000, a sum that the Court found to be a reasonable approximation of the Defendants' unjust gains from their unlawful practices.  (Dkt. 241)  Based on the record established in this case, and for the reasons set forth in the Court's summary judgment orders, (Dkts. 234, 241), the Court enters this Final Judgment and Order for Permanent Injunction and Other Equitable Relief ("Order").

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

1.      This Court has jurisdiction of the subject matter of this case and the Parties hereto pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

2.      Venue in this district is proper as to all Parties under 28 U.S.C. § 1391(b)(1), (b)(2), (b)(3), (c)(1), (c)(2), (c)(3), and (d) and 15 U.S.C. § 53(b).

3.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b) and 56(a)(2)(A).

4.      The FTC's First Amended Complaint states a claim upon which relief may be granted against the Defendants under Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

5.      The Defendants' activities as alleged in the FTC's First Amended Complaint are in or affecting "commerce" as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6.      By virtue of the Court's Order of September 14, 2018, (Dkt. 234), regarding the FTC's Amended Motion for Summary Judgment, (Dkt. 210), and Supplemental Brief on Monetary Relief, (Dkt. 237), all the Defendants are liable for injunctive relief, and all the Defendants, except for George C. Whiting, are liable for equitable monetary relief for violations of Sections 5(a) and 12 of the FTC Act.

7.      As shown by the evidence presented by the FTC, (Dkt. 69), between March 21, 2016 and August 2, 2016, Defendant Must Cure Obesity Co. transferred approximately $295,688.00 to a third party, Jugaad Co., in violation of the asset preservation provisions of the Court's October 29, 2015 preliminary injunction, (Dkt. 38), and Wells Fargo holds $272,365.06 of those funds in the Jugaad Co. bank account ending in 2137 pursuant to this Court's orders.  (Dkts. 75, 90)

8.      This is a final order with respect to all the Defendants.

9.      Entry of this Order is in the public interest.

10.     Defendants Roca Labs, Inc. and Don Juravin have filed petitions for relief under Chapter 7 of the Bankruptcy Code in which the FTC is listed as a creditor. See In re Roca Labs Inc., Case No. 8:17-bk-09732-CPM (Bankr. M.D. Fla.) and In re Don Karl Juravin, Case No. 6:18-bk-06821 (Bankr. M.D. Fla.).

11.     The FTC's prosecution of this action, including entry of a money judgment and the enforcement of a judgment (other than a money judgment) obtained in this action are actions to enforce the FTC's police or regulatory power.  As a result, if the Roca Labs, Inc. and Don Juravin bankruptcies are pending as of the date of entry of this Order, entry of this Order is excepted from the automatic stay pursuant to 11 U.S.C. §362(b)(4).

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.     "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

A.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

B.     A visual disclosure, by its size, contrast, location, the length of

time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

C.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

D.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

E.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

F.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

G.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

H.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

2.      **"Close Proximity"** means on the same print page, webpage, or other electronic page, and proximate to the triggering representation, and not accessed or displayed through hyperlinks, pop-ups, interstitials, or other means.

3.      **"Corporate Defendant"** means Roca Labs, Inc., Roca Labs

Nutraceutical USA, Inc., Must Cure Obesity, Co., Juravin, Incorporated, and/or Zero Calorie Labs, Inc., their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities or any of them.

4.      **"Covered Communication"** means a written, oral, or pictorial review, performance assessment, or other similar analysis of goods or services, including conduct related to the goods or services.

5.      **"Covered Product"** means any Dietary Supplement, Food, or Drug, including Roca Labs "Formula," Bariatric Surgery Alternative formula or dose, "Anti-Cravings," Gastric Bypass Alternative, Gastric Bypass No Surgery, Gastric Bypass Effect, the "Morning Dose," the "morning mixture," the "mixture," the "regimen," and any "Procedure."

6.      **"Defendant(s)"** means all of the Individual Defendants and Corporate Defendants, individually, collectively, or in any combination.

7.      **"Dietary Supplement"** means:

A.      Any product labeled as a Dietary Supplement or otherwise represented as a Dietary Supplement; or

B.      Any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above that is intended to be

ingested, and is not represented to be used as a conventional Food or as a sole item of a meal or the diet.

8.      **"Drug"** means:

A.      Articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them;

B.      Articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals;

C.      Articles (other than Food) intended to affect the structure or any function of the body of humans or other animals; and

D.      Articles intended for use as a component of any article specified in clause A, B, or C above; but does not include devices or their components, parts, or accessories.

9.      **"Endorsement"** (as defined in 16 C.F.R. § 255) means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertiser.  The party whose opinions, beliefs, findings, or experience the message appears to reflect will be called the **"Endorser"** and may be an individual, group, or institution.

10.     **"Essentially Equivalent Product"** means a product that contains the

identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Product; provided that the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

11.   **"Food"** (as defined in Section 15 of the FTC Act, 15 U.S.C. § 55) means:

    A.   Any articles used for food or drink for man or other animals;

    B.   Chewing gum; and

    C.   Any articles used for components of any such article.

12.   **"Individual Defendant"** means Don Juravin and/or George C. Whiting, by whatever name(s) they may be known.

13.   **"Material Connection"** shall mean any relationship that materially affects the weight or credibility of any Endorsement and that would not be reasonably expected by consumers.

14.   **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

15.   "**Review-Limiting Contract Term**" means a contract term that:

    A.   prohibits or restricts the ability of a Person who is a party to the contract to engage in a Covered Communication;

B.      imposes a penalty or fee against a Person who is a party to the

contract for engaging in a Covered Communication; or

C.      transfers, or requires a Person who is a party to the contract to

transfer, to any other Person any intellectual property rights in a Covered

Communication, with the exception of a non-exclusive license to lawfully

use a Covered Communication about a Defendant's goods or services.

## ORDER

## I.      PROHIBITED  REPRESENTATIONS:  WEIGHT-LOSS AND EFFICACY CLAIMS

**IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and

attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection

with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or

distribution of any Covered Product, are hereby **PERMANENTLY RESTRAINED AND**

**ENJOINED** from making, or assisting others in making, expressly or by implication,

including through the use of a good or service name, Endorsement, depiction, or

illustration, any representation that, in humans:

A.      Such Covered Product causes, or assists in causing, weight loss;

B.      Such Covered Product causes, or assists in causing, weight loss in a

specific amount or time, including as much as 21 pounds in a month or as

much as 100 pounds in ten months;

C.      Such Covered Product causes, or assists in causing, any reduction in

caloric or Food intake, or any appetite suppression, including reduction of Food

intake by as much as fifty percent;

D.      Use of such Covered Product causes, or assists in causing, weight loss in a specific percentage of users, including that as much as ninety percent of users of a Covered Product will lose substantial amounts of weight;

E.      Such Covered Product causes or assists in causing, weight-loss benefits that are comparable or superior to bariatric surgery, or to any weight-loss treatment or method;

F.      Consumption of a Covered Product causes, or assists in causing, reduction of a user's stomach capacity by a specific percentage or amount, within a specific time, or for a specific duration, or that fluid intake will maintain or assist in maintaining any reduction of a user's stomach capacity related to use of a Covered Product;

G.      Such Covered Product materially contributes to any system, program, plan, or regimen that produces the results referenced in Subsections A-F of this Section;

H.      Consumers who use the Covered Product can generally expect to achieve the weight loss results represented by an Endorser of such Covered Product;

I.      Such Covered Product is safe and effective for weight loss in children; or

J.      Such Covered Product cures, mitigates, or treats any disease;

unless the representation is non-misleading and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.  For purposes of this Section, competent

and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section of this Order entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the FTC.  Persons covered by this Section shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## II.    PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are hereby **PERMANENTLY RESTRAINED AND ENJOINED** from making, or assisting others in making, expressly or by implication, including through the use of a good or service name, Endorsement, depiction, or illustration, any representation, other than

representations covered under Section I of this Order, about the health benefits, performance, or efficacy of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by qualified experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true. In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section of this Order entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the FTC.  Persons covered by this Section shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

### III.      PROHIBITED REPRESENTATIONS:
### TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are hereby **PERMANENTLY RESTRAINED AND ENJOINED** from misrepresenting, or assisting others in misrepresenting, directly or by implication, including through the use of any good or service name, Endorsement, depiction, or illustration:

A.      That the performance or benefits of such good or service are scientifically or clinically proven or otherwise established, including that the efficacy of any Covered Product for achieving weight loss is scientifically proven or that any Covered Product is scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual Food intake and cause substantial weight loss; or

B.      The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

### IV.      FDA APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order shall prohibit Defendants from:

A.      For any Drug, making a representation that is approved in labeling for such Drug under any tentative or final monograph promulgated by the Food and Drug Administration, or under any new Drug application approved by the

Food and Drug Administration; and

B.      For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## V.      PROHIBITIONS AND LIMITS ON USE OF CERTAIN CONTRACT PROVISIONS AND ON CERTAIN REPRESENTATIONS AND THREATS ABOUT CUSTOMER COMMUNICATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are hereby **PERMANENTLY RESTRAINED AND ENJOINED** from:

A.      Offering to any prospective customer a contract, or offering to any customer a renewal contract, that includes a Review-Limiting Contract Term;

B.      Requiring that a customer accept a Review-Limiting Contract Term as a condition of a Defendant's fulfillment of its obligations under a customer contract;

C.      Representing, including through any notice, warning, threat to enforce, or attempt to enforce, to any purchaser of any good or service — regardless of when purchased — that any contract:

1.      Prohibits purchasers from speaking or publishing truthful or

non- defamatory negative comments or reviews about any Defendant, or the Defendant's goods, services, agents, or employees; or

2. Imposes any precondition on purchasers speaking or publishing any comments or reviews about any Defendant, or the Defendant's goods, services, agents, or employees;

D. Representing that any purchaser of any Covered Product could be liable for defamation or other legal liability for speaking or publishing any statement that the Covered Product was ineffective, including that it did not cause or assist in causing them to lose or maintain weight, to reduce their caloric or Food intake, to reduce their stomach capacity, or to reduce their appetite;

E. Representing that any purchaser of any good or service owes or has agreed to pay the difference between any purported "discount price," "subsidized price," or other price the purchaser was actually charged at the time of purchase of a good or service, and any higher or "full price" for a good or service, if the purchaser speaks or publishes negative comments or reviews about any Defendant, or the Defendant's goods, services, agents, or employees; or

F. Retaliating, or threatening to take or taking any adverse action, against any Person who communicates or cooperates with, provides statements, documents, or information to, or testifies on behalf of, the FTC or other party in connection with any law enforcement investigation or litigation, or who has done so during or prior to this litigation, including by enforcing or threatening to

enforce any contractual provision representing that it limits or prohibits the Person from speaking or publishing negative or disparaging comments or reviews about any Defendant, the Defendant's goods, services, agents, or employee.

## VI.    DECEPTIVE FORMAT IN ADVERTISING

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, including any Covered Product, are hereby **PERMANENTLY RESTRAINED AND ENJOINED** from misrepresenting that any website (including Gastricbypass.me) or other publication is an independent, objective resource for research or other scientific information, or other information relating to such good or service.

## VII.    PROHIBITIONS CONCERNING ENDORSEMENTS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, including any Covered Product, are hereby **PERMANENTLY RESTRAINED AND ENJOINED** from:

A.    Misrepresenting, in any manner, expressly or by implication, that an

17

Endorsement of any such good or service represents the opinions, findings, beliefs, or experience of the Endorser;

B.       Misrepresenting, in any manner, expressly or by implication, that any Person is an expert with respect to the Endorsement message provided by that person, or that an Endorser of any such good or service is a health professional; and

C.       Failing to disclose, Clearly and Conspicuously, and in Close Proximity to the representation, a Material Connection, when one exists, between the Endorser and any Defendant.

## VIII.    PROHIBITED REPRESENTATIONS: INFORMATION PRIVACY IT

**IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, including any Covered Product, are hereby **PERMANENTLY RESTRAINED AND ENJOINED** from misrepresenting the extent to which they maintain the confidentiality of consumer information.

## IX.     MONETARY   JUDGMENT

**IT IS FURTHER ORDERED** that:

A.       Judgment in the amount of twenty-five million, two-hundred forty-six thousand dollars ($25,246,000) is entered in favor of the FTC against Corporate Defendants and Individual Defendant Don Juravin, jointly and

severally, as equitable monetary relief, including consumer redress and disgorgement of ill-gotten gains.

B.      In partial satisfaction of the judgment against Corporate Defendants, the following frozen assets, including assets held by third parties in the name of, or for the benefit of, Corporate Defendants Roca Labs Nutraceutical USA, Inc., Must Cure Obesity, Co., Juravin, Incorporated, and Zero Calorie Labs, Inc. (collectively, the "Asset Transfer Defendants"), shall be transferred to the Commission, as follows:

1.      Asset Transfer Defendants and iPayment, Inc., and its successors and assigns, are ordered to transfer all funds held in the name of Roca Labs Nutraceutical USA, Inc., or any other Asset Transfer Defendant, to the Commission. Such payment must be made within 15 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

2.      Asset Transfer Defendants, Jugaad Co. and its successors and assigns, and Wells Fargo Bank, N.A. and its successors and assigns, are ordered to transfer all funds held in the name of Jugaad Co. in account number ending in 2137 to the Commission. Such payment must be made within 15 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

C.      Asset Transfer Defendants relinquish dominion and all legal and equitable right, title, and interest in all Assets transferred pursuant to this Order and may not seek the return of any Assets.

D.      Asset Transfer Defendants' Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which they previously submitted to the FTC, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.      All money paid to the FTC pursuant to this Order may be deposited into a fund administered by the FTC or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the FTC may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the FTC or its representatives may take pursuant to this Subsection.

## X.      LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the asset freeze entered by this Court on September 13, 2016, (Dkt. 90), and extended on November 9, 2018, (Dkt. 245), is modified to permit the payments and transfers identified in the Monetary Judgment section of this Order, and upon completion of all such payments and transfers, the asset freeze is dissolved.

## XI.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are hereby **PERMANENTLY RESTRAINED AND ENJOINED** from directly or indirectly:

A.    Failing to provide sufficient customer information to enable the FTC to efficiently administer consumer redress.  If a representative of the FTC requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the FTC, within 14 days; and

B.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of any Covered Product;

Provided, however, that customer information may be disclosed to the extent requested by a government agency or required by law, regulation, or court order, or to the extent that such disclosure is reasonably necessary to protect the health or safety of any Person or address any billing or shipping inquiry, and that Defendants may use customer information to respond to customer-initiated support inquiries, but not to advertise or sell any good or service to, or solicit any Endorsement from, such customers.

### XII.   PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.    All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other Person not employed by the research entity;

B.    All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.    Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.    All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.    All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's

researchers.

*Provided, however*, the preceding preservation requirement does not apply to a Reliably Reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other Person or entity in active concert or participation with any Defendant; (4) any Person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "Reliably Reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Corporate Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## XIII.    ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.    Each Defendant, within 7 days of entry of this Order, must submit to the FTC an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 20 years after entry of this Order, each Individual Defendant, for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all current employees, agents, and representatives who have participated in conduct specified in Sections I through VIII; (3) all employees, agents, and representatives who participate in conduct related to the subject matter specified in Sections I through VIII, X, and XI; and (4) any business entity resulting from any change in structure as set forth in the Section entitled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the FTC:

A.      One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the FTC may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods or services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the FTC.

2.      Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email, and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such

Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 calendar days of any change in the following:

1.     Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Corporate Defendants, and any entity that either Individual Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 calendar days of its filing.

D.     Any submission to the FTC required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a FTC representative in writing, all submissions to the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Roca Labs, Inc., Matter No. X150061.

## XV.   RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, Corporate Defendants and Individual Defendants, for any business in which such Individual Defendant, either, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold;

B.     Personnel records showing, for each Person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for

termination;

C.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC;

D.     Records of all consumer complaints and refund requests concerning the subject matter of this Order, whether received directly or indirectly, such as through a third party, and any response;

E.     Records of all communications with consumers concerning the subject matter of this Order regarding any allegedly defamatory or legally actionable statement, or any alleged breach of contract;

F.     Records of all communications with consumers, or with persons making any Endorsement, regarding any Endorsement concerning the subject matter of this Order;

G.     Records of all support communications with customers who purchased a Covered Product prior to entry of this Order; and

H.     A copy of each unique advertisement or other marketing material disseminated by or on behalf of the Defendants concerning the subject matter of this Order, including any web pages, websites, videos, search ads, display banners, mobile web banners, mobile web posters, and any interstitial, email, social media site or application, short message service (SMS), and multimedia messaging service (MMS) advertisements.

## XVI.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required

by this Order:

A.    Within 14 days of receipt of a written request from a representative of the FTC, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69, except that the FTC shall not enter upon the property of any Defendant pursuant to Fed. R. Civ. P. 34(a)(2) without a specific subsequent order of the Court or stipulation, and the FTC shall have no authority under this Order under Fed. R. Civ. P. 69 without following the judicial procedures prescribed by applicable law.

B.    For matters concerning this Order, the FTC is authorized to communicate directly with each Defendant.  Defendants must permit representatives of the FTC to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview.  The Person interviewed may have counsel present.

C.    The FTC may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants, or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.     Upon written request from a representative of the FTC, any consumer reporting agency must furnish consumer reports concerning Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XVII.   RETENTION OF JURISDICTION

**IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**DONE and ORDERED** at Tampa, Florida this 4th day of January, 2019.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Any Unrepresented Party